**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

RICHARD BAYS,                                     :
                                                                    Case No. 3:08-cv-076

              Plaintiff,

      -vs-                                        District Judge Thomas M. Rose
                                                          Magistrate Judge Michael R. Merz

WARDEN,
Ohio State Penitentiary,


           Defendant.                   :

---

## REPORT AND RECOMMENDATIONS

---

This is a habeas corpus action brought by Petitioner Richard Bays pursuant to 28

U.S.C. § 2254 and seeking relief from both his conviction for aggravated murder with death

specifications and his resulting death sentence.

Mr. Bays is represented in this proceeding by appointed counsel who did not

represent him in any direct appeal proceedings.

**Statement of Facts**

The Supreme Court of Ohio described the facts and circumstances leading to Mr.

Bay's indictment, trial, convictions, and adjudged sentence of death as follows:

> On November 15, 1993, appellant, Richard Bays, robbed and
> murdered Charles Weaver. Bays was convicted of aggravated murder
> with a death specification and sentenced to death
>
> Seventy-six-year-old Charles Weaver lived in Xenia with his wife
> Rose. On November 15, 1993, Weaver's daughter, Betty Reed, went
> to her parents' house to see if they needed anything. Betty Reed and
> Rose Weaver decided to do some shopping and left the house

together sometime between noon and 12:30 p.m. Between 1:30 and 2:30 that afternoon, Iris Simms (who lived near the Weavers' house) saw a slim man in his late twenties, with shoulder-length brown hair, walk onto Weaver's porch and approach the door.[FN1]

> FN1. Simms did not identify Bays in court; however, her description of the man on the porch is consistent with Bays's appearance.

Howard Hargrave, an acquaintance of Richard Bays, was standing around with two other people on Xenia's Main Street that afternoon when Bays approached him, out of breath, and asked whether Hargrave "knew anyone that had any drugs." According to Hargrave, Bays appeared "nervous" and "kept looking around." Hargrave noticed a red stain on Bays's T-shirt that looked like blood.

Betty Reed drove her mother home at about 5:30 p.m., accompanied by her son Michael. Dusk had fallen, and Betty noticed that no lights were on in the house, not even "a flicker of a television set." This was unusual enough that she and her son decided to escort Mrs. Weaver inside.

Michael Reed went in first. Turning on a light, he saw his grandfather's wheelchair standing empty. He then entered the kitchen. There he found Mr. Weaver lying on the floor. Michael told his mother to call 911.

Paramedics arrived in response to the 911 call, found Mr. Weaver dead, and summoned Xenia police officers to the scene. Officers found a shattered plastic tape recorder and a large, square-shaped battery charger with blood on it. The bedroom was in extreme disarray-a "total shambles," Betty Reed later testified- with drawers pulled out and their contents dumped on the floor. The bedroom had not been in that condition when Betty Reed and Mrs. Weaver left the house that afternoon.

Weaver's body was taken to the Montgomery County Coroner's Office. The ensuing autopsy showed that Weaver had suffered two stab wounds to the chest and three incised wounds on the neck. He also had several contusions, abrasions, and lacerations on top of his head, consistent with blows from a square, blunt object. The deputy coroner conducting the autopsy concluded that Weaver died of "a stab wound to the chest and blunt impact injuries to the head."

2

On November 16, the day after the murder, Xenia police detective Daniel Savage decided to interview Richard Bays.

At first, Bays told Savage that he had not been at Weaver's house on the day of the murder. However, Savage told Bays that someone had seen him there and that "if his [Bays's] prints matched the ones on Mr. Weaver's front door, then I [Savage] would be asking him to explain it." Bays then admitted that he had been at Weaver's house around 2:00 p.m. on November 15. He said he had coffee with Weaver, chatted, and left by 2:15.

However, an inconsistency in Bays's statement aroused Savage's curiosity. Bays told Savage that Weaver had been sitting in his wheelchair during Bays's visit and had not taken out his wallet. Yet Bays had also said that Weaver had the wallet in his back pocket during the visit. If Weaver was sitting in the wheelchair, Savage wondered, how could Bays have known that the wallet was in Weaver's back pocket?

On November 19, an informant told Savage that Weaver's killer had dropped the wallet, along with some clothing he had worn during the crime, into a storm sewer near Bays's house. Based on this information, Savage and Detective Daniel Donahue interviewed Bays again on November 19. During this interview, Bays confessed to killing Weaver.

Bays told the detectives that he went to Weaver's house after smoking some crack. He asked Weaver to lend him $30, but Weaver said he had no money. So Bays picked up the battery charger and hit Weaver on the head with it twice. When the battery charger's handle broke off, Bays started to run away, but then Weaver shouted that he was going to call the police. Bays then picked up a portable tape recorder and went back to hit Weaver on the head with it. The blow shattered the recorder, so Bays dropped it and attacked Weaver with a sharp kitchen knife. Bays admitted that he cut Weaver's throat and thought that he stabbed him in the chest.

Weaver fell out of his wheelchair, and Bays took the wallet from Weaver's back pocket. Weaver's wallet contained $25 cash and $9 worth of food stamps. Bays then went into the bedroom and dumped out the contents of the drawers. Then he fled. He subsequently bought crack with Weaver's $25. Bays told the detectives that he threw Weaver's wallet down the storm sewer at the northwest corner of Second and Monroe Streets, along with the T-shirt and glove he had

worn during the murder. At the end of Bays's statement, Savage placed him under arrest.

When detectives searched the storm sewer at Second and Monroe, they found the T-shirt, glove, and wallet, just as Bays had said. Betty Reed, who had given that wallet to her father, identified it in court.

While held in the county jail, Bays discussed his crime with another inmate, Larry Adkins. Adkins testified that Bays had told him that he "hit [Weaver] with a battery charger" and when Weaver fell from his chair, Bays "took his wallet and * * * stabbed him in the chest. Then he was almost on his way out and he turned around and cut [Weaver's] throat * * * to make sure he wasn't alive."

The Greene County Grand Jury indicted Bays on one count of aggravated murder under former R.C. 2903.01(A) and one under former R.C. 2903.01(B). Each count carried a felony-murder death specification under R.C. 2929.04(A)(7). The indictment also charged aggravated robbery.

Bays waived a jury and was tried to a three-judge panel. On Bays's motion, with the state's acquiescence, the trial court dismissed the count charging aggravated murder under R.C. 2903.01(A). At trial, Bays offered no evidence in the guilt phase. The panel found Bays guilty of aggravated murder, R.C. 2903.01(B), and aggravated robbery. After a penalty hearing, the panel sentenced Bays to death. Bays appealed this judgment to the court of appeals, which affirmed the convictions and sentence.

*State v. Bays,* 87 Ohio St.3d 15, 15-17 (1999).

## State Court Proceedings

On or about June 14, 1994, the Greene County Grand Jury indicted Mr. Bays on one count of aggravated murder under [former] Ohio Revised Code § 2903.01(A), one count of aggravated murder under [former] Ohio Revised Code § 2903.01(B), and one count aggravated robbery under Ohio Revised Code 2911.02(A)(2).  Appendix to Return of Writ, Vol. 1 at 58-60 (Doc. 35, 36)(hereinafter "App.").   Mr. Bays waived his right to trial by jury.  App. Vol. 4 at 208; Trial Transcript Vol. 2 at 4-7 (hereinafter "Tr."), and was tried by a three-judge panel.  App. Vol.

4

4 at 209; Tr. Vol. 2 at 7.

The three-judge panel commenced the guilt phase of Mr. Bays' trial on December 6, 1995. *Id.* On Mr. Bays' motion and with the state's acquiescence, the trial court dismissed the count charging Mr. Bays with aggravated murder under Ohio Revised Code § 2903.01(A). See Tr. Vol. 3 at 361. Mr. Bays did not present any evidence during the guilt phase of his trial. Tr. Vol. 3 at 342. On December 8, 1995, the three-judge panel found Mr. Bays guilty of aggravated murder in violation of Ohio Revised Code § 2903.01(B) as charged in count one of the Indictment, guilty of the specification related thereto, and guilty of aggravated robbery in violation of Ohio Revised Code § 2911.02(A)(2) as charged in count two of the Indictment. Tr. Vol. 3 at 361-62; App. Vol. 4 at 216-17.

On December 11, 1995, the three-judge panel held the mitigation phase of Mr. Bays' trial. Tr. Vol. 3 at 364. The panel announced on December 15, 1995, that it found the aggravating circumstances in the specification in count one of the indictment outweighed the mitigating factors. *Id.* at 489. The panel then sentenced Mr. Bays to death on count one (aggravated murder) and to an indefinite term of ten to twenty-five years on count two of the indictment (aggravated robbery) with the ten-year minimum term being actual incarceration. *Id.* 489-90. Also on December 15, 1995, The panel issued its written findings of fact and conclusions of law as required by Ohio Revised Code § 2929.03(F). App. Vol. 4 at 220-27.

Mr. Bays appealed to the Green County Court of Appeals and raised the following assignments of error:

> A. THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE DO NOT SUPPORT APPELLANT'S CONVICTION FOR AGGRAVATED ROBBERY AND AGGRAVATED MURDER AS CHARGED, IN VIOLATION OF APPELLANT'S

5

CONSTITUTIONAL RIGHTS.

B.      THE TRIAL COURT VIOLATED APPELLANT'S CONSTITUTIONAL RIGHTS BY OVERRULING APPELLANT'S MOTION TO SUPPRESS STATEMENTS MADE BY APPELLANT.

C.    THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED APPELLANT'S CONSTITUTIONAL RIGHTS BY OVERRULING APPELLANT'S MOTION TO CONTINUE THE TRIAL DATE IN ORDER TO CONDUCT A SUPPLEMENTAL SUPPRESSION HEARING.

D.      THE TRIAL COURT ERRED BY ACCEPTING APPELLANT'S PURPORTED WAIVER OF HIS RIGHT TO A JURY TRIAL, IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS.

E.      THE TRIAL COURT VIOLATED APPELLANT'S CONSTITUTIONAL RIGHTS BY FAILING TO COMPEL DISCLOSURE TO APPELLANT OF THE IDENTITY OF AN INFORMANT.

F.    APPELLANT'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL WAS VIOLATED BY THE COMPOSITION AND THE BIAS OF A MEMBER OF THE THREE-JUDGE PANEL.

G.    THE INTRODUCTION OF "OTHER BAD ACTS" OF APPELLANT WAS PREJUDICIAL AND VIOLATED APPELLANT'S CONSTITUTIONAL RIGHTS.

H.      THE TRIAL COURT VIOLATED APPELLANT'S CONSTITUTIONAL RIGHTS BY IMPROPERLY FINDING THAT THE AGGRAVATING CIRCUMSTANCE OUTWEIGHED THE MITIGATING FACTORS PRESENTED BEYOND A REASONABLE DOUBT.

I.    APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF LEGAL COUNSEL IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS.

> (1) Appellant Was Denied Effective Assistance Of Counsel By Counsel's Failure To Timely Present Evidence Of Appellant's Mental Deficiencies In Relation To The

Suppression Of Appellant's Inculpatory Statements.

(2) Appellant Was Denied Effective Assistance Of Counsel By Counsel's Failure To Ensure a Knowing, Intelligent and Fully Voluntary Waiver By Appellant Of His Right To A Jury Trial.

(3) Appellant Was Denied Effective Assistance Of Counsel By Counsel's Failure To Timely Object To The Composition Of The Three-Judge Panel.

(4) Appellant Was Denied Effective Assistance Of Counsel By Counsel's Failure To Object To Highly Inflammatory Testimony Of The Murder Act.

(5) Appellant Was Denied Effective Assistance Of Counsel By Counsel's Failure to Raise The Issue Of Appellant's Competency And/Or Sanity.

(6) Appellant Was Denied Effective Assistance Of Counsel By Counsel's Failure To Obtain And Use The Services Of An Investigator.

(7) Appellant Was Denied Effective Assistance Of Counsel By Counsel's Failure To Present An Opening Statement And Any Other Evidence In The "Guilt" Phase Of The Trial.

(8) Appellant Was Denied Effective Assistance Of Counsel By Counsel's Failure To Adduce Important Evidence In The "Mitigation" Phase Of The Trial.

(9) Appellant Was Denied Effective Assistance Of Counsel By Counsel's Failure To Challenge The Constitutionality Of Ohio's Death Penalty As Applied To Appellant.

(10) Appellant Was Denied Effective Assistance O[f] Counsel By Counsel's Failure To Obtain And Adduce DNA Evidence Favorable To Appellant.

J. THE TRIAL COURT VIOLATED APPELLANT'S CONSTITUTIONAL RIGHTS BY REFUSING TO SUSTAIN APPELLANT'S RULE 29 MOTIONS.

K. THE CUMULATIVE EFFECT OF NUMEROUS ERRORS

> OCCURRING DURING THE PROCEEDINGS RESULTED IN A
> FUNDAMENTALLY UNFAIR TRIAL.
>
> L. THE DEATH PENALTY PROVISIONS OF O.R.C.. 2929.02 ET
> SEQ., 2929.03 AND 2929.04 ARE UNCONSTITUTIONAL.

App. Vol. 5 at 105-224. On its own motion, the court of appeals directed the parties to brief the

issue of the proportionality of Mr. Bays' sentence. App. Vol. 6 at 104-05. Mr. Bays filed an

addendum to his brief in which he raised this additional assignment of error:

> **ISSUE.** WHETHER THE COURT ERRED IN SENTENCING
> DEFENDANT TO DEATH WHEN THE FACTS AND
> CIRCUMSTANCES SHOW THIS TO BE A DISPROPORTIONAL
> SENTENCE TO THAT IN OTHER CAPITAL CASES IN THIS
> JURISDICTION IN VIOLATION OF DEFENDANT'S
> CONSTITUTIONAL RIGHT TO DUE PROCESS AND
> EXCESSIVE PUNISHMENT UNDER THE FIFTH, EIGHTH, AND
> FOURTEENTH AMENDMENTS OF THE UNITED STATES
> CONSTITUTION AND ARTICLE I, SECTION[S] 2, 9, 10, AND 16
> OF THE OHIO STATE CONSTITUTION.

*Id.* at 108-31. On January 30, 1998, the court of appeals affirmed the trial court's decision. *State*

*v. Bays,* No. 95-CA-118, 1998 WL 32595 (Ohio App. 2nd Dist. Jan. 30, 1998); App. Vol. 6 at 153-

223).

Mr. Bays appealed to the Ohio Supreme Court and raised the following propositions

of law:

> PROPOSITION OF LAW NO. I
>
> WHERE A CRIMINAL DEFENDANT EXPRESSES
> UNCERTAINTY AS TO HIS WAIVER OF TRIAL BY JURY AND
> THE TRIAL COURT FAILS TO FULLY INFORM THE
> DEFENDANT OF THE IMPLICATIONS OF SUCH A WAIVER,
> THERE HAS BEEN NO KNOWING, INTELLIGENT AND
> VOLUNTARY WAIVER OF THIS CONSTITUTIONAL RIGHT.
> U.S. CONST. AMENDS. VI AND XIV.
>
> PROPOSITION OF LAW NO II

8

A CONFESSION MUST BE SUPPRESSED WHEN, CONSIDERED IN THE TOTALITY OF THE CIRCUMSTANCES, IT IS COERCED, THEREBY VIOLATING THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW UNDER THE 14th AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION.

PROPOSITION OF LAW NO. III

REVERSIBLE ERROR OCCURS WHEN THE THREE-JUDGE PANEL'S SENTENCING OPINION FAILS TO WEIGH ALL OF THE MITIGATION TOGETHER AGAINST THE SINGLE AGGRAVATING CIRCUMSTANCE AND PLACES THE BURDEN ON THE DEFENDANT TO SHOW THAT THE MITIGATION OUTWEIGHS THE AGGRAVATING CIRCUMSTANCE. U.S. CONST. AMENDS. VIII AND XIV.

PROPOSITION OF LAW NO. IV

AN APPELLATE COURT DEPRIVES A DEFENDANT OF RIGHTS GUARANTEED UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN, DURING INDEPENDENT REVIEW OF STATUTORY AGGRAVATING AND MITIGATING FACTORS AS MANDATED BY R.C. § 2929.05(a), IT RELIES UPON LITERATURE OUTSIDE THE RECORD.

PROPOSITION OF LAW NO. V

THE DEATH PENALTY IS INAPPROPRIATE AND DISPROPORTIONATE WHEN THE MITIGATING FACTORS OUTWEIGH THE SINGLE AGGRAVATING CIRCUMSTANCE AND THE OFFENSE IS DISSIMILAR TO CASES INVOLVING AGGRAVATED ROBBERY WHERE THIS COURT HAS UPHELD A DEATH SENTENCE.

PROPOSITION OF LAW NO. VI

THE IDENTITY OF AN INFORMANT MUST BE REVEALED TO CRIMINAL DEFENDANT WHEN INFORMANT'S TESTIMONY IS VITAL TO ESTABLISHING ELEMENT OF CRIME OR WOULD BE HELPFUL OR BENEFICIAL TO ACCUSED IN PREPARING OR MAKING DEFENSE TO CRIMINAL

9

CHARGES. STATE V. WILLIAMS, 73 OHIO ST.3D 153, 652 N.E.2D 721(1995)(FOLLOWED). FAILURE TO DISCLOSE SUCH IDENTITY VIOLATES CRIMINAL DEFENDANTS [sic] RIGHTS TO A FAIR TRIAL AS REQUIRED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, §§ 2, 10 AND 14 OF THE OHIO CONSTITUTION.

PROPOSITION OF LAW NO. VII

A PROBATE JUDGE IS NOT QUALIFIED TO SIT ON A THREE-JUDGE PANEL PRESIDING IN A CAPITAL TRIAL. R.C. §§ 2931.02, 2949.06 [sic]. U.S. CONST. AMENDS. VI AND XIV.

PROPOSITION OF LAW NO. VIII

INFLAMMATORY TESTIMONY ABOUT OTHER "BAD ACTS" IRRELEVANT TO THE CHARGES BEFORE THE COURT VIOLATE A CAPITAL DEFENDANT'S DUE PROCESS RIGHTS. U.S. CONST. AMEND. XIV.

PROPOSITION OF LAW NO. IX

INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION OF AGGRAVATED MURDER IS PRESENTED WHERE THE STATE RELIES ENTIRELY ON THE DEFENDANT'S COERCED CONFESSION. U.S. CONST. AMEND. XIV.

PROPOSITION OF LAW NO. X

THE ACCUSED'S RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IS DENIED WHEN COUNSEL'S ERRORS AND OMISSIONS UNDERMINE CONFIDENCE IN THE RESULT OF THE TRIAL. U.S. CONT. AMEND. VI AND XIV.

PROPOSITION OF LAW NO. XI

THE CUMULATIVE EFFECT OF PROSECUTORIAL MISCONDUCT DURING THE PENALTY PHASE OF BAYS'S TRIAL VIOLATED HIS RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

PROPOSITION OF LAW NO. XII

THE APPELLANT'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION IS VIOLATED BY THE INEFFECTIVE ASSISTANCE OF COUNSEL IN THE COURT OF APPEALS.

### PROPOSITION OF LAW NO. XIII

THE ACCUSED'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION IS VIOLATED WHEN THE STATE IS PERMITTED TO CONVICT AND SENTENCE UPON A STANDARD OF PROOF BELOW PROOF BEYOND A REASONABLE DOUBT.

### PROPOSITION OF LAW NO. XIV

OHIO REVISED CODE ANN. § 2929.03(D)(1)(ANDERSON 1996) RENDERS R.C. §§ 2929.04(A) AND (B) UNCONSTITUTIONALLY VAGUE. U.S. CONST. AMEND. VIII, XIV.

### PROPOSITION OF LAW NO. XV

OHIO'S DEATH PENALTY LAWS ARE UNCONSTITUTIONAL. THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 2, 9, 10 AND 16, ARTICLE 1 OF THE OHIO CONSTITUTION ESTABLISH THE REQUIREMENTS FOR A VALID DEATH PENALTY SCHEME, OHIO REV. CODE ANN. SECTIONS 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04 AND 2020.05 (ANDERSON 1996). OHIO'S DEATH PENALTY STATUTE DOES NOT MEET THE PRESCRIBED CONSTITUTIONAL REQUIREMENTS AND IS UNCONSTITUTIONAL ON ITS FACE AND AS APPLIED TO APPELLANT BAYS.

App. Vol. 7 at 24-144. The Ohio Supreme Court affirmed Mr. Bays' conviction and sentence. *Bays,* 87 Ohio St.3d 15; App. Vol. 7 at 273-87. Mr. Bays filed a motion for reconsideration, *Id.* at 316-22, which the Ohio Supreme Court denied. *Id.* at 323; *State v. Bays,* 87 Ohio St.3d 1454 (1999)(table). The United States Supreme Court denied Mr. Bays' petition for certiorari. *Bays v. Ohio,* 529 U.S.

1090 (2000); App. Vol. 7 at 326.

On July 29, 1996, Mr. Bays filed a petition for postconviction relief in the Greene

County Common Pleas Court in which he raised nine grounds for relief:

### FIRST CAUSE OF ACTION

The conviction and sentence against the Petitioner are void or avoidable [sic] because Petitioner Bays did not knowingly, intelligently, and voluntarily waive his right to a jury trial in violation of Petitioner's rights as guaranteed by the fifth, sixth, eight [sic] and fourteenth Amendments of the United States Constitution, and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

### SECOND CAUSE OF ACTION

The conviction and sentence against the Petitioner is void or voidable because he was denied the right of effective assistance of counsel regarding his decision to waive a jury.

### THIRD CAUSE OF ACTION

The Judgments and Sentences agains Petitioner are void or voidable because Petitioner's rights were violated as guaranteed by the fifth, sixth, eighth and fourteenth Amendments of the United States Constitution, and Section[s] 2, 9, 10, and 16, Article I of the Ohio Constitution. [This claim was based on counsel's alleged failure to timely file a new motion to suppress related to Mr. Bays' alleged diminished capacity to understand].

### FOURTH CAUSE OF ACTION

Judgment against Petitioner Bays is void or voidable because he was denied his right to the effective assistance of counsel in preparing and presenting his defense, as guaranteed by the fifth, sixth, and fourteenth Amendments to the United States Constitution; Section 16, Article I of the Ohio Constitution and O.R.C. § 2929.02.2 due to the omissions of his trial counsel in not retaining the services of a private investigator.

### FIFTH CAUSE OF ACTION

Petitioner Bays was denied the effective assistance of counsel, in

12

preparing and presenting his defense, as guaranteed by the fifth, sixth, and fourteenth Amendments to the United States Constitution, Section 16, Article I of the Ohio Constitution due to the omissions of his trial counsel, in not filing a motion to determine the competence of the Defendant to stand trial.

## SIXTH CAUSE OF ACTION

The Judgments and Sentences against the Petitioner are void or voidable because Petitioner's rights were violated as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I of the Ohio Constitution, because of the omissions of trial counsel in not presenting any witnesses or evidence on behalf of the Defendant in the guilt phase.

## SEVENTH CAUSE OF ACTION

Petitioner's judgment and sentence are void or voidable because of the omissions by Defense counsel in the mitigation stage of the proceedings causing his counsel to be ineffective in violation of the Petitioner's rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Section 2, 9, 10, and 16 of Article I of the Ohio Constitution.

## EIGHTH CAUSE OF ACTION

Petitioner's conviction and sentence are void or voidable because the three judge panel consisted of a retired judge; a judge who had reassigned the case because he was too busy and the Probate Judge in Greene County, who does not experience criminal cases on a daily basis, all in violation of the Defendant's rights as guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Section[s] 2, 9. 10, and 16 of Article I of the Ohio Constitution. [In addition, Mr. Bays' lead trial counsel was not Rule 65 certified to be lead counsel and his co-counsel was not Rule 65 certified].

## NINTH CAUSE OF ACTION

Petitioner's conviction and sentence are void or voidable because of the cumulative effects of the errors and omissions as presented in this Petition in paragraphs 1 through 113. The Cumulative effect has been prejudicial to the Petitioner, and has denied the Petitioner his

13

rights as secured by the Fourth, Fifth, Sixth, Eighth, and Fourteenth
Amendments to the United States Constitution and Sections 2, 9, 10,
and 16 of Article I of the Ohio Constitution.

App. Vol. 8 at 57-80. The trial court denied Mr. Bays' petition on August 21, 1996. App. Vol. 9

at 1-10. Mr. Bays subsequently filed in the trial court a motion to amend his postconviction petition

and a motion to vacate the August 21, 1996, judgment, *Id.* at 11-26; 161-63, both of which the court

denied. *Id.* at 184-93.

Mr. Bays appealed raising the following assignments of error:

ASSIGNMENT OF ERROR NO. I

THE TRIAL COURT ERRED IN DISMISSING DEFENDANT'S
MOTION FOR POST CONVICTION RELIEF WITHOUT AN
EVIDENTIARY HEARING.

ASSIGNMENT OF ERROR NO. II

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S
FIRST CAUSE OF ACTION AS APPELLANT'S PETITION WITH
THE SUPPORTING AFFIDAVITS CONTAINED SUFFICIENT
OPERATIVE FACTS TO DEMONSTRATE THE LACK OF
VOLUNTARY, KNOWING AND INTELLIGENT WAIVER OF
JURY.

ASSIGNMENT OF ERROR NO III

THE TRIAL CORT ERRED IN RULING THERE WAS NOT
INEFFECTIVE ASSISTANCE OF COUNSEL AS APPELLANT'S
PETITION WITH THE SUPPORTING AFFIDAVITS,
CONTAINED SUFFICIENT OPERATIVE FACTS TO
DEMONSTRATE THE LACK OF COMPETENT COUNSEL AND
THAT APPELLANT WAS PREJUDICED BY COUNSEL'S
INEFFECTIVENESS.

ASSIGNMENT OF ERROR NO. IV

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING
A MOTION TO AMEND PETITION FILED BY THE
APPELLANT.

14

App. Vol 10 at 46-73.  The court of appeals sustained Mr. Bays' Assignment of Error No. III,

reversed the trial court's judgment denying Mr. Bays' petition without a hearing, and remanded the

matter to the trial court for further proceedings.  *State v. Bays*, No. 96-CA-118, 1998 WL 31514

(Ohio App. 2nd Dist. Jan. 30, 1998); App. Vol. 10 at 135-50. The state appealed to the Ohio Supreme

Court raising the following proposition of law:

<u>PROPOSITION OF LAW NO 1</u>

IN REVIEWING A CLAIM OF INEFFECTIVE ASSISTANCE OF
COUNSEL, AN APPELLATE COURT SHOULD NOT FIND
PREJUDICE ARISING FROM DEFENSE COUNSEL'S
TACTICAL DECISION NOT TO PRESENT ANY EVIDENCE,
WHERE A DEFENDANT HAS GIVEN A COMPLETE
CONFESSION, AND WHERE PHYSICAL EVIDENCE LINKS
THE DEFENDANT TO THE CRIME.

App. Vol. 11 at 5-19.  The Ohio Supreme Court dismissed the state's appeal as not involving any

substantial constitutional question.  *State v. Bays,* 82 Ohio 3d 1141 (1998); App. Vol. 11 at 63.

On October 25, 2001, the trial court held an evidentiary hearing.  See Tr. Vol. 4.[1]  In

addition to a post-hearing brief, Mr. Bays filed a motion for leave to amend his postconviction

petition which the court denied.  App. Vol. 12 at 167.  On December 12, 2002, the court denied Mr.

Bays' petition for postconviction relief.  *Id.* at 195-98.

Mr. Bays appealed the trial court's decision and raised the following assignments of

error:

**<u>ASSIGNMENTS OF ERROR PRESENTED FOR REVIEW</u>**

**<u>NO. I</u>**

THE TRIAL COURT ERRED BY NOT GRANTING RELIEF ON

---

[1]  The pages in Tr. Vol. 4 are not numbered sequentially, but a hand count indicates that the evidentiary
hearing transcript begins on the nineteenth page of the Volume.

APPELLANT'S POSTCONVICTION PETITION, WHERE THE EVIDENCE ADDUCED AT THE EVIDENTIARY HEARING, IN CONJUNCTION WITH HIS POSTCONVICTION PETITION EXHIBITS, SHOWED THAT APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

## NO. II

THE TRIAL COURT ERRED BY LIMITING THE SCOPE OF THE EVIDENTIARY HEARING AND BY NOT ALLOWING RELEVANT TESTIMONY FROM APPELLANT'S EXPERT WITNESS, WHO WOULD HAVE SUPPORTED APPELLANT'S GROUNDS FOR RELIEF, AND, FURTHER, BY ALLOWING IMPROPER IMPEACHMENT ON CROSS-EXAMINATION, THUS VIOLATING APPELLANT'S RIGHT TO AN ADEQUATE STATE CORRECTIVE PROCESS.

## NO. III

THE TRIAL COURT ABUSED ITS DISCRETION BY NOT ALLOWING PETITIONER TO CONDUCT COMPLETE DISCOVERY BEFORE THE EVIDENTIARY HEARING.

## NO. IV

THE TRIAL COURT ABUSED ITS DISCRETION BY NOT ALLOWING PETITIONER TO AMEND HIS POSTCONVICTION PETITION SO THAT IT CONFORMED TO THE EVIDENCE AFTER THE EVIDENTIARY HEARING.

## NO. V

CONSIDERED TOGETHER, THE CUMULATIVE ERRORS SET FORTH IN APPELLANT'S SUBSTANTIVE GROUNDS FOR RELIEF MERIT REVERSAL OR REMAND FOR A PROPER POSTCONVICTION PROCESS.

App. Vol. 13 at 38-79. The court of appeals affirmed the trial court's denial of Mr. Bays'

postconviction petition. *State v. Bays,* No. 2003 CA 4, 2003 WL 21419173 (Ohio App. 2nd Dist.

June 20, 2003); App. Vol. 13 at 176-84. Mr. Bays appealed to the Ohio Supreme Court and raised

16

the following propositions of law:

## PROPOSITION OF LAW NO. 1

WHEN A PETITIONER PRESENTS UNCONTRADICTED EVIDENCE OF HIS TRIAL COUNSEL'S PREJUDICIAL INEFFECTIVENESS THROUGH AFFIDAVITS AND TESTIMONY AT THE EVIDENTIARY HEARING, HE IS ENTITLED TO RELIEF FOR THE VIOLATION OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

## PROPOSITION OF LAW NO. 2

AN EVIDENTIARY HEARING MUST ENCOMPASS ALL RELEVANT ISSUES AND ALLOW FOR THE PRESENTATION OF ALL RELEVANT EVIDENCE IF IT IS TO MEET THE REQUIREMENTS OF DUE PROCESS TO WHICH THE PETITIONER IS ENTITLED. THE TRIAL COURT ERRED BY LIMITING THE SCOPE OF THE EVIDENTIARY HEARING AND BY NOT ALLOWING RELEVANT TESTIMONY FROM APPELLANT'S EXPERT WITNESS, WHO WOULD HAVE SUPPORTED APPELLANT'S GROUNDS FOR RELIEF, AND, FURTHER, BY ALLOWING IMPROPER IMPEACHMENT ON CROSS-EXAMINATION, THUS VIOLATING APPELLANT'S RIGHT TO AN ADEQUATE STATE CORRECTIVE PROCESS.

## PROPOSITION OF LAW NO. 3

THE LOWER COURTS ERRED BY DISMISSING APPELLANT'S OTHER POSTCONVICTION PETITION CLAIMS, WHERE HE PRESENTED SUFFICIENT OPERATIVE FACTS AND SUPPORTING EXHIBITS TO MERIT AN EVIDENTIARY HEARING AND DISCOVERY.

## PROPOSITION OF LAW NO. 4

A STATE POSTCONVICTION PROCEEDING THAT DOES NOT ALLOW FOR NECESSARY DISCOVERY PROVIDES AN INADEQUATE CORRECTIVE PROCESS AND VIOLATED THE FOURTEENTH AMENDMENT'S DUE PROCESS CLAUSE.

## PROPOSITION OF LAW NO. 5

THE CIVIL RULES OF PROCEDURE APPLY TO POSTCONVICTION PROCEEDINGS, THUS, THE TRIAL COURT ABUSED ITS DISCRETION BY NOT ALLOWING PETITIONER TO AMEND HIS POSTCONVICTION PETITION SO THAT IT CONFORMED TO THE EVIDENCE AFTER THE EVIDENTIARY HEARING.

## PROPOSITION OF LAW NO. 6

CONSIDERED TOGETHER, THE CUMULATIVE ERRORS SET FORTH IN APPELLANT'S SUBSTANTIVE GROUNDS FOR RELIEF MERIT REVERSAL OR REMAND FOR A PROPER POSTCONVICTION PROCESS.

App. Vol. 14 at 7-55.   The Ohio Supreme Court declined jurisdiction and dismissed Mr. Bays'

appeal.  *State v. Bays,* 100 Ohio St.3d 1433 (2003) (table); App. Vol. 14 at 108.

On April 4, 2003, while he was litigating his original postconviction petition, Mr.

Bays filed a successive postconviction petition pursuant to *Atkins v. Virginia,* 536 U.S. 304 (2002)

which the trial court dismissed.  App. Vol. 15 at 57-63; 143-47.  Mr. Bays appealed the trial court's

decision and raised the following assignment of error:

## ASSIGNMENT OF ERROR NO. I

THE TRIAL COURT ERRED BY DENYING FUNDS FOR EXPERT SERVICES TO AN INDIGENT CAPITAL PETITIONER WHO PRESENTED PRIMA FACIE EVIDENCE OF HIS MENTAL RETARDATION.

App. Vol. 16 at 26-44. The court of appeals reversed the trial court for abusing its discretion in

denying funding for an expert on mental retardation and remanded the matter for further

proceedings.  *State v. Bays,* 159 Ohio App.3d 469 (2nd Dist. 2005); App. Vol. 16 at 151-60.

On remand, the trial court granted funds for Mr. Bays to retain a mental retardation

expert.  App. Vo. 17 at 58.  However, on November 9, 2007, Mr. Bays voluntarily dismissed his

*Atkins* petition.  *Id.* at 61.

**Proceedings in this Court**

On March 6, 2008, Mr. Bays filed a Motion for Leave to Proceed in Forma Pauperis, a Motion to Appoint Counsel, and Notice of Intention to file Habeas Petition (Doc. 6).  On November 6, 2008, Mr. Bays filed his Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 in which he raised the following claims:

**First Ground for Relief**

**Defense counsel violated Bays's Sixth Amendment right to effective assistance of counsel when he failed to present cogent evidence to support a motion to suppress Bays's inculpatory statement to the police.**

**A.  Defense counsel failed to conduct a timely and reasonable investigation into relevant issues surrounding Bays's involuntary waiver of his Fifth Amendment rights**

**B.  The evidence adduced at the state-court evidentiary hearing shows that Bays did not make a knowing, intelligent, or voluntary waiver of his rights and, thus, was prejudiced by his defense counsel's failure to present the trial court with relevant and available evidence on the motion to suppress.**

**C.  Police detectives used coercive tactics to pressure Bays into making an incriminating statement.**

**Second Ground for Relief**

**Trial counsel violated Bays's Sixth Amendment right to effective assistance of counsel by advising him to waive a jury trial and then failing to ensure that his waiver was made knowingly, intelligently, and voluntarily.**

**Third Ground for Relief**

**Trial counsel failed to present a defense on behalf of Bays, violating his Sixth Amendment right to effective assistance of counsel.**

19

**A.  Defense counsel failed to rebut the testimony of the State's jailhouse informant, which would have cast doubt on Bays's alleged jailhouse confession.**

**B.  Defense counsel failed to present available witnesses who would have raised reasonable doubt over Bays's alleged involvement in the crime.**

### Fourth Ground for Relief
[limited to alleged failure to investigate family
history for purposes of mitigation; see Doc. 34]

**Trial counsel violated Bays's Sixth Amendment right to effective assistance of counsel at the penalty phase. Counsel's mitigation presentation was deficient and deprived the three-judge panel of evidence that was worthy of weight and effect.**

### Fifth Ground for Relief

**When a capital defendant has cognitive deficits and is coerced by police into making an inculpatory statement, the trial court errs under the Fifth and Fourteenth Amendments when it rules the statement admissible at trial.  Further, a trial court must consider all relevant evidence and the totality of the circumstances before determining whether the statement was made voluntarily.**

**A.  The trial court violated due process of law when it failed to suppress a confession obtained from Bays that was coerced by promises of lenient treatment.**

**B.  Promises of lenient treatment render a confession coerced and thus inadmissible against a defendant.**

**C.  The trial court denied Bays his right to due process when, after evidence of his mental disabilities was presented to the court, the judge refused to reopen the suppression hearing.**

**D.  Under the totality of the circumstances, when a confession is obtained from a defendant like Bays, who has mental disabilities, and is based on promises of lenient treatment, the confession must be suppressed, and a conviction stemming from the State's use of that**

20

confession at trial must be set aside.

## Sixth Ground for Relief

A capital defendant such as Bays cannot make an intelligent, knowing, and voluntary waiver of his Sixth Amendment right to a trial by jury when he expresses to the court his uncertainty over the waiver and is not fully informed of the consequences of it. Accepting a waiver under those circumstances violated Bays's right to due process under the Fourteenth Amendment.

## Seventh Ground for Relief

The trial court violated Bays's Fourteenth Amendment right to due process when it sustained his conviction on evidence that was insufficient to prove his guilt beyond all reasonable doubt.

## Eighth Ground for Relief

The trial court violated Bays's Sixth and Fourteenth Amendment right to a fair trial when it denied his motion to disclose the identity of the police informant used against him.

## Ninth Ground for Relief
[dismissed; see Doc. 34]

The state appellate courts' arbitrary refusal to review life sentences imposed in similar cases as a part of a statutorily mandated proportionality review denied Bays due process of law under the Fourteenth Amendment.

## Tenth Ground for Relief
[dismissed; see Doc. 34]

Bays's execution will violate the eighth and Fourteenth Amendments because he will be unable to rationally understand the connection between his acts and the punishment to be inflicted.

## Eleventh Ground for Relief

Petitioner Bays's convictions and death sentence are invalid because the cumulative effect of the constitutional errors set forth in this Habeas Corpus Petition violated his rights under the Fifth,

21

**Sixth, Eighth, and Fourteenth Amendments.**

(Doc. 16).

In his Petition, Mr. Bays included a "Notice of Intention to Challenge Presumption of Correctness of All State Court Fact-Findings." PageID 113. However, Mr. Bays does not raise in his Petition any specific arguments as to any alleged incorrectness of the state court's findings of facts although in his Traverse, (Doc. 108), he does challenge some factual findings.

On January 5, 2009, the Respondent filed a Motion to Dismiss Procedurally Defaulted Claims in which he sought dismissal of part of Mr. Bays' Fourth Ground for Relief and all of Grounds Nine and Ten. (Doc. 19). After the parties briefed the issues, I issued a Report and Recommendations, (Doc. 23), and after the parties filed and briefed Objections to that Report, I issued a Supplemental Report and Recommendations, (Doc. 30), to which the parties filed Objections. On June 9, 2009, District Judge Thomas Rose adopted in part my Report and adopted my Supplemental Report. (Doc. 34). As a result, Mr. Bays' failure to investigate claim in his Fourth Ground is limited to his claim that his counsel were ineffective for failure to investigate family history for mitigating evidence, his Ninth Ground is dismissed because it is procedurally defaulted, and his Tenth Ground is dismissed without prejudice to renewal after exhaustion in state court. *Id.*

After granting in part and denying in part Mr. Bays' motion for discovery, (Doc. 41), this Court held an evidentiary hearing on January 20 and 21, 2011. (Doc. 91, 92). On April 4, 2011, the United States Supreme Court decided *Cullen v. Pinholster,* 563 U.S. ___, 131 S.Ct. 1388 (2011), and the parties subsequently briefed the effect of *Pinholster* on the present case. On July 6, 2011, this Court issued a Decision and Order granting Respondent's April 8, 2011, Motion to Vacate the Pending Evidentiary Hearing and Discovery, to Reconsider its Prior Grant of an Evidentiary Hearing

22

and Discovery, in light of *Cullen v. Pinholster,* 563 U.S. ___ (2011) [ ] and Decide this Case Based

Solely on the State Court Record.  (Doc. 93; 103).

**Standard of Review**

**I.  Antiterrorism and Effective Death Penalty Act of 1996**

        The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110

Stat. 1214 (Apr. 24, 1996) ("AEDPA") applies to all habeas cases filed after April 24, 1996.

*Herbert v. Billy,* 160 F.3d 1131 (6th Cir. 1998), *citing, Lindh v. Murphy,* 521 U.S. 320 (1997).  Since

Mr. Bays  filed his Petition well after the AEDPA's effective date, the amendments to 28 U.S.C. §

2254 embodied in the AEDPA are applicable to his Petition.

        Title 28 U.S.C. § 2254, as amended by the AEDPA, provides:

> ...
> (d) An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim –
>
>     (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
>     (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254.

        The AEDPA also provides that a factual finding by a state court is presumed to be

correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e).   In addition, pursuant to the AEDPA, before a writ may issue on a claim that

was evaluated by the state courts, the federal court must conclude that the state court's adjudication

23

of a question of law or mixed question of law and fact was "contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

A state court's decision is contrary to the Supreme Court's clearly-established precedent if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law; or (2) the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000). A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal rule [from Supreme Court cases] but unreasonably applies it to the facts of the particular state prisoner's case", "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply[,] or [if the state court] unreasonably refuses to extend that principle to a new context where it should apply." *Williams,* 529 U.S. at 407-08. For a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court's decision must have been more than incorrect or erroneous; it must have been "objectively unreasonable." *Wiggins v. Smith,* 539 U.S. 510, 520-21 (2003); *Williams,* 529 U.S. at 407, 409. An *unreasonable* application of federal law is different from an *incorrect* application of federal law. *Id.* at 410 (emphasis in original). In sum, Section 2254(d)(1) places a new constraint on the power of a federal court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. *Id.* at 412 (Justice O'Connor, concurring).

A state court decision is not "contrary to" Supreme Court law simply because it does

not specifically cite Supreme Court cases. *Early v. Packer,* 537 U.S. 3 (2002). Indeed, "contrary to" does not even require awareness of Supreme Court cases, so long as neither the reasoning nor the result of the state-court decision contradicts them. *Id.* at 8. The AEDPA prohibits the overturning of state decisions simply because the federal court believes that the state courts incorrectly denied the petitioner relief:

> By mistakenly making the "contrary to" determination and then proceeding to a simple "error" inquiry, the Ninth Circuit evaded Section 2244(d)'s requirement that decisions which are not "contrary to" clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but "an unreasonable application" of clearly established federal law, or based on "an unreasonable determination of the facts".

*Id.* at 11.

For the purposes of the AEDPA, the court reviews the last state court decision on the merits. *Howard v. Bouchard,* 405 F.3d 459, 469 (6th Cir. 2005), *cert. denied,* 546 U.S. 1100 (2006).

The AEDPA standard of review applies only to "any claim that was adjudicated on the merits in State court proceedings." *Danner v. Motley,* 448 F.3d 372, 376 (6th Cir. 2006). A state court's failure to articulate reasons to support its decision is not grounds for reversal under the AEDPA. *Williams v. Anderson,* 460 F.3d 789, 796 (6th Cir. 2006), *citing, Harris v. Stovall,* 212 F.3d 940 (6th Cir. 2000), *cert. denied,* 432 U.S. 947 (2001). Where the state court fails to adjudicate a claim on the merits, the habeas court conducts an independent review of a petitioner's claims. *Williams*, *supra.* That independent review, however, is not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *Williams, supra.*

## II. <u>Procedural Default</u>

The standard for evaluating a procedural default defense is as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 749 (1991); *see also, Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982).   Absent cause and prejudice, a federal habeas petitioner who fails to comply with a state's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F. 3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478 (1986);  *Engle v. Isaac*, 456 U.S. 107 (1982);  *Wainwright,*  433 U.S. at 87.

The Sixth Circuit Court of Appeals requires a four-part analysis when determining whether a habeas claim is barred  by procedural default.  *Reynolds v. Berry*, 146 F. 3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F. 2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F. 3d 594 (6th Cir. 2001), *cert. denied,* 534 U.S. 1147 (2002).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>  . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

26

> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F. 2d at 138.

## Analysis

Mr. Bays' First, Second, Third, and Fourth Grounds for Relief are claims of ineffective assistance of counsel which are generally governed by *Strickland v. Washington*, 499 U.S. 688 (1984).

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, (1970) (citations omitted). "The Supreme Court set forth the test for ineffective assistance of counsel in *Strickland* ... ". *Eley v. Bagley,* 604 F.3d 958, 968 (2010).

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that the counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland,* 466 U.S. at 687. In other words, "[t]o establish ineffective assistance, a defendant 'must show both deficient performance and prejudice.' " *Berghuis v. Thompkis,* ___ U.S. ___, ___, 130 S.Ct. 2250, 2255 (2010), *quoting, Knowles v. Mirzayance,* 556 U.S. ___, ___, 129 S. Ct. 1411, 1413

27

(2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland,* 466 U.S at 689, *quoting, Michel v. State of Louisiana,* 350 U.S. 91, 101 (1955).

As to the second prong, the Supreme Court said:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

*Strickland,* 466 U.S. at 694; *see also*, *Darden v. Wainwright,* 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998).


**Ground One**


In his First Ground for Relief, Mr. Bays argues that his trial counsel were ineffective for failing to present cogent evidence to support his motion to suppress his confession. In Subclaim A, Mr. Bays alleges that his counsel failed to conduct a timely and reasonable investigation into relevant issues surrounding his involuntary waiver of his Fifth Amendment rights. In Subclaim B,

Mr. Bays alleges that his counsel failed to present the trial court with relevant and available evidence which would establish that he did not make a knowing, intelligent, or voluntary waiver of his rights. In Subclaim C, Mr. Bays claims that detectives used coercive tactics to pressure him into making an incriminating statement and his counsel failed to provide the court with sufficient evidence to assess the impact of the police coercion.

Mr. Bays raised this claim in his postconviction petition and the court of appeals rejected it as follows:

> Bays claims that trial counsel was ineffective in addressing several issues at his suppression hearing and at trial: his drug use and borderline intellect as affecting the voluntariness of his confession, his drug use shortly before his confession, coercion of his wife to get him to confess, and the credibility of an inmate who testified against him. General evidence regarding Bays' drug use and borderline intellect has been thoroughly addressed in prior proceedings. We will briefly address each of the other issues raised under this assignment of error.
>
> At the hearing on the petition for postconviction relief, Bays' stepson, Ryan Scott Pleukharp, testified that he had seen Bays using crack cocaine in the bathroom at their house just before the police arrived to take him in for questioning on November 19, 1993. Bays confessed to Weaver's murder a short time later. Bays' wife partially corroborated Pleukharp's testimony by testifying that Pleukharp had told her of his observation the next day. Martha Bays also testified that she had later found drug paraphernalia on the ledge above the bathroom door. Martha Bays claimed that she had relayed all of this information to Bays' attorney at their first meeting but that he had not used it at the suppression hearing.
>
> The trial court found the testimony of Pleukharp and Martha Bays to be lacking in credibility, and, in our view, this conclusion was a reasonable one. On cross-examination, Martha Bays appeared to concede that, in an unrelated case, she had encouraged her son to deny involvement in a crime to which he had already confessed. Moreover, it had been determined in earlier proceedings in this case that the police had not engaged in coercive conduct and that any alleged impairment on Bays' part was not apparent to the officers. See

29

> *Bays,* 87 Ohio St.3d 15, 23, 1999-Ohio-216. Even if Bays had used crack cocaine at the time alleged, the voluntariness of his confession was not implicated if the police officers did not know of and take advantage of that fact. *State v. Smith,* 80 Ohio St.3d 89, 112, 1997-Ohio-335, citing *Colorado v. Connelly* (1986), 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473.

*Bays,* 2003 WL 21419173 at *2.

In addressing his Fifth Ground for Relief, *infra,* this Report recommends rejecting Mr. Bays' substantive claims with respect to his confession and its admission into evidence. Briefly, the Court has determined that Mr. Bays' confession was not coerced, the investigating officers did not make offers of leniency in exchange for his confession, Mr. Bays' confession was voluntary, and that the at the time of the hearing on Mr. Bays' motion to suppress, the trial court was aware of Mr. Bays' drug use. Because Mr. Bays' underlying claim related to this claim of ineffective assistance of counsel is meritless, his ineffective assistance of counsel claim is meritless as well. In other words, even assuming that Mr. Bays' counsel's representation was deficient, Mr. Bays is not able to establish prejudice as required by *Strickland.*

Mr. Bays' First Ground for Relief is without merit and should be rejected.

### Ground Two

In his Second Ground for Relief, Mr. Bays argues that his trial counsel were ineffective by advising him to waive his right to a jury trial and then failing to ensure that he made that waiver knowingly, intelligently, and voluntarily.

Mr. Bays brought this claim in his postconviction petition (See App. Vol. 8 at 57-80) and pursued it on appeal of the trial court's denial of that petition (App. Vol. 9 at 46-73). The court

30

of appeals noted that Mr. Bays had raised the same claim on direct appeal and that it would address the claim in that direct appeal. *Bays,* 1998 WL 31514 at *5. The court of appeals did so and subsequently, Mr. Bays raised the claim on direct appeal in the Ohio Supreme Court.

The Ohio Supreme Court addressed Mr. Bays claim and rejected it as follows:

> In his tenth proposition, Bays claims that his trial counsel rendered ineffective assistance. To demonstrate ineffective assistance, Bays must show that, in light of all circumstances, counsel's performance fell below an objective standard of reasonable representation. He must also show prejudice, *i.e.*, a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. See *Strickland v. Washington* (1984), 466 U.S. 668, 687-694, 104 S.Ct. 2052, 2064-2068, 80 L.Ed.2d 674, 693-698; *State v. Bradley* (1989), 42 Ohio St.ed 136, 142-143, 538 N.E.2d 373, 380, and paragraphs two and three of the syllabus.
>
> Bays cites six instances of allegedly ineffective assistance.
>
> (1) When the trial court asked Bays why he wanted to waive the jury, Bays said, "My Counsel feels it's best." On being asked whether he waived jury trial of his own free will, Bays replied, "I don't know which way I want to go really. With the Jury, I don't figure it was a fair pick."
>
> Bays contends that "[i]f counsel had advised Bays to waive his rights because of perceived bias by the jury, counsel had a duty to raise an objection with the court." However, the record does not show whether this was counsel's reason for advising Bays to waive a jury. What the record does show is that counsel *did* "raise an objection with the court"; on December 6, 1995, counsel filed a motion to dismiss the venire, alleging that it was not randomly selected. (Bays waived jury trial later that day, rendering the motion moot.)
>
> Bays notes that the record does not reflect that counsel advised him of the consequences of waiving the jury. However, it is Bays's burden to show that counsel rendered ineffective assistance. *Strickland*; *Bradley, supra*. The fact that counsel did not advise Bays on the record hardly suggests that counsel failed to advise him at all. It is a normal practice for lawyers to advise their clients in private, rather

> than on the record. Bays has failed to affirmatively show that his
> lawyer did not advise him.
>
> Bays further contends that his counsel had a duty to ensure that the
> trial court advised him of the consequences of waiver, inquired more
> deeply into the voluntariness of his waiver, and used simpler
> language. However, such a colloquy is not required for a valid jury
> waiver. *State v. Jells, supra,* 53 Ohio St.3d at 25-26, 559 N.E.2d at
> 468.

*Bays,* 87 Ohio St.3d at 27-28.

In addressing Mr. Bays' Sixth Ground for Relief, *infra,* this Report recommends concluding that the state court properly determined that Mr. Bays knowingly, intelligently, and voluntarily waived his Sixth Amendment right to a jury trial.  In support of his Sixth Ground, Mr. Bays raised essentially the same arguments that he raises in support of the present ground for relief that his counsel were ineffective with respect to his jury trial waiver.  However, since his underlying claim is meritless, his claim that his counsel were ineffective with respect to his jury waiver is also meritless.  Stated differently, even if Mr. Bays' counsel's performance was deficient, he is not able to establish prejudice as *Strickland* requires.

Accordingly, the Ohio Supreme Court's finding that Mr. Bays failed to establish that his trial counsel were ineffective with respect to his jury waiver is not contrary to nor unreasonable application of, clearly established federal law.  Therefore, Mr. Bays' Second Ground for Relief should be rejected.

**Ground Three**

In his Third Ground for Relief, Mr. Bays first alleges that his trial counsel were

ineffective because of their alleged failures to introduce evidence to rebut the testimony of the

jailhouse informant. Mr. Bays raised this claim in his postconviction petition and the Ohio appeals

court rejected it as follows:

> ... Bays contends that his attorney was ineffective in failing to present the testimony of Richard Henson, Jr. about a fellow inmate, Larry Adkins. Adkins had testified at Bays' trial that Bays had admitted to Adkins his involvement in Weaver's murder. At the evidentiary hearing, Henson testified that Adkins had talked with him about his plan to get a deal from the state in exchange for testifying against Bays. Henson further testified that he had not been interviewed by Bays' attorney prior to trial and, although present at the courthouse, had not been called to testify on Bays' behalf. Even if we assume for the sake of argument that Bays' attorney should have interviewed Hanson and did not do so, we would nonetheless conclude that counsel did not act ineffectively. Henson's testimony did not suggest that Adkins' statements were untruthful, only that he hoped to get a favorable deal from revealing his conversations with Bays. In other words, Henson's testimony related to Adkins' motivation in coming forward but not the truthfulness of his statements. As such, we are confident that Henson's testimony would not have affected the outcome of the trial.

> The first assignment of error is overruled.

*Bays,* 2003 WL 21419173 at * 2-3.

Larry Adkins testified at Mr. Bays' trial that he became acquainted with Mr. Bays

when they were in the Greene County Jail in November, 1993, they were in the same cell block and

were right next to each other, and that each day he was there, Mr. Bays went on a little bit more

about the crime with which he was charged. Tr. Vol. 2 at 88-90. Mr. Adkins testified further:

> He [Mr. Bays] had told how he thought about doing it and — how he had thought about doing it. He wanted — he told me that he wanted his step-son to help him at first, because he didn't have nobody to help him really, and then he had told me at one time he was mad because he got ripped off on a drug deal on the street and he went there to get money. ...

> [H]e knocked on the door.  Mr. Weaver had answered the door.  He asked him ife could borrow some money.  Mr. Weaver told him no. He more or less was moving to shut the door, and Bays said that's when he hit him, hit him with a battery charger and then, you know, had a scuffle with him and did what de did. ...
>
> He told me that he had hit him with a battery charger, and more or less, he fell out of the chair, he was in a wheelchair. ...
>
> And he had took his wallet and he had stabbed him in the chest. Then he was almost on his way out and he turned around and cut his throat. ...

*Id.* at 90-91.  Mr. Adkins also testified that nobody connected with the courts or law enforcement told him that if he cooperated and helped out with this case he would get any kind of benefit.  *Id.* at 92.

On cross-examination, Mr. Adkins testified that at the time he was initially incarcerated, his bond was $5,000, and two days after he spoke with Det. Savage about Mr. Bays, his bond was reduced to an O.R. bond.  *Id.* at 98-99.  Mr. Adkins testified further that although the prosecutor recommended that he serve a prison term for the offense with which he was charged, he did not go to prison but went to a behavior modification program, he violated his probation twice, did not go to prison for the violations, and that he served one month in jail, one year on house arrest, and attended the Monday Program.  *Id.* at 99-100.

Richard Henson, Jr. testified at Mr. Bays' October 25, 2001, postconviction evidentiary hearing that he was an inmate in the Greene County jail during April, 1994, at which time he met Larry Adkins who was also an inmate.  Tr. Vol. 4 at 52-53.[2]  Mr. Henson also testified that in April or May, 1994, he had a conversation with Mr. Adkins and Mr. Henson described the

---

[2] As previously noted in n.1, the pages in Tr. Vol. 4 are not numbered sequentially.  The transcript of the October, 2001, postconviction hearing begins after the page identified as "Bays Apx. Vol. 12 Page 147".  The pages of the hearing transcript are sequentially numbered.

conversation as follows:

> I was sitting on a bench in the rec area, the range, and he come up and asked me, you know, what was I in for and I had told him and then, you know, I asked him what he was in for and he stated he was in for counterfeiting off of the computer, and we started talking and then the Defendant come out of his cell as he said, "You see that guy right there?" I said, "Yeah." And he said, "Do you know him?" And I said, "Yes." He said, "Well, I'm going to tell on him to get my sentence knocked out." And I just said, you know, "Do what?" And he said, "Yeah. I'm going to tell on this guy right here to get me out of trouble."

*Id.* at 54.  Mr. Henson testified further that he received a subpoena to testify at Mr. Bays' trial, he sat outside the courtroom for four or five hours waiting to testify, and that eventually, one of Mr. Bays' lawyers told him, "I don't need you." and he did not testify.  *Id.* at 55-56.

The decision to call or not to call certain witnesses is exactly the type of strategic decision that the courts expect attorneys to make.  *Boykin v. Webb,* 541 F.3d 638, 649 (6th Cir. 2008).

As noted above, when Mr. Adkins testified at Mr. Bays' trial, Mr. Bays' counsel cross-examined him about his motivation for testifying against Mr. Bays.  Specifically, although Mr. Adkins testified on direct examination that he did not ask for any favors in exchange for his testimony and that  that nobody connected with the courts or law enforcement told him that if he cooperated and helped out with this case he would get any kind of benefit, he admitted on cross-examination that following his meeting with Det. Savage, his $5000 bond was reduced to an O.R. bond.  Mr. Adkins also testified that he did not receive a prison sentence and  although he violated his probation twice he was never sent to prison.  This testimony certainly raises suspicions as to Mr. Adkins' reasons for testifying against Mr. Bays.  In other words, this testimony undermines the validity of Mr. Adkins' stated reason for testifying against Mr. Bays, to wit: that he was morally outraged at Mr. Bays, and raises the suspicion that Mr. Adkins testified in exchange for receiving

preferential treatment from law enforcement.  Mr. Henson's postconviction hearing testimony does

little more than raise the issues of Mr. Adkins' credibility and motive for testifying.  Mr. Bays'

counsel put those issue before the three-judge panel during his cross-examination of Mr. Adkins.

Mr. Henson's testimony does not in any way suggest that Mr. Adkins' testimony was not truthful.

Because Mr. Henson's testimony does not raise a question as to the truthfulness of

Mr. Adkins' testimony and because the three-judge panel already had evidence before it that put Mr.

Adkins' credibility and motivation for testifying into question, Mr. Bays is unable to establish that

his counsel were ineffective for failing to call Mr. Henson to testify at trial.

Mr. Bays also argues in his Third Ground for Relief that his counsel were ineffective

for failing to call witnesses who allegedly had information implicating a man named Terry Byrd in

the killing of Mr. Weaver.

Mr. Bays raised this claim in his postconviction petition and the court of appeals

rejected it saying:

> Bays's final allegation supported by evidence *dehors* the record is his
> contention that his trial counsel was ineffective in failing to present
> witnesses and other evidence during the defendant's case-in-chief. In
> support of this contention, Bays attached two affidavits to his petition
> for post-conviction relief. The first affidavit was of Bays's wife,
> Martha. Martha Bays stated, in relevant part, as follows:
>
>> 38. During the course of the trial there were several witnesses
>> who were prepared to testify and waiting outside in the Court
>> Room hall. The witnesses were as follows: There was Pluma
>> Thomas, who is a character witness. There was James Dalton
>> who would testify about seeing a man who he knew come
>> (*sic.*) out of the victim's house later in the afternoon after Rick
>> had left. There was Richard Neil Hanson who would testify
>> that Adkins (who testified about the alleged jailhouse
>> confession) said he would do anything to get out of trouble.
>> Henson was in jail with Adkins and Rick. There was also
>> Cindy Nelson who was a character witness. There was Hope

36

Purdue, who had heard Terry Bird, the man that James Dalton had seen, tell her that Bays got busted for something that he did. There was also Carrie Moore who would testify about a confession from Terry Bird.

39. All of the above, except Hope Purdue, were ready to testify and were released by [Bays's trial counsel].

40. When I asked [Bays's trial counsel] why he didn't put on a defense, his explanation was that the Judges didn't want to hear it.

In addition to Martha Bays's affidavit, Bays attached an affidavit from James Dalton, which stated as follows:

On November 15th 1993, I James Dalton was sitting on the porch when Richard Bays come (*sic.*) out at about 2:15 pm afternoon & walked Corrier with no blood or anything else that looked unusual about Richard Bays[.] *[A]bout* 30 min. after Richard Bays came out of Mr. Weaver's house, I saw Teri Byrd come out & he looked around & then ran down Hiveling & cut through the alley next to the house I was at. That's what I saw. /s/ James Dalton.

On the basis of these affidavits, the panel should have held an evidentiary hearing at which Bays would have had the opportunity to prove his allegation that his trial counsel erroneously failed to call witnesses that were crucial to his defense. The Dalton and Martha Bays affidavits indicate that several exculpatory witnesses were available to testify that Bays may not have committed the crimes charged or did not commit the crimes alone, raising the possibility that he was not the principal offender. Although it would have been for the panel to determine, following a hearing, what weight and credibility to assign the testimony of these witnesses, it was error for the panel to dismiss Bays's allegation without an evidentiary hearing in light of the affidavits attached to the petition. In fact, after reviewing the panel's decision, we note that the panel did not expressly address the averments contained in the Martha Bays and James Dalton affidavits, but instead focused on the affidavits pertaining to the impeachment of Larry Adkins. The record corroborates Martha Bays's claim that Carrie Moore and James Dalton were subpoenaed and were prepared to testify at trial, but were not called by Bays's counsel. Accordingly, the record does not rebut Bay's claims, and an evidentiary hearing was the proper forum

37

> in which to consider those claims, pursuant to R.C. 2953.21(C).  See
> *Williams,* 8 Ohio App.2d, at paragraph one of the syllabus.

*Bays,* 1998 WL 31514 at *7.  The court of appeals then remanded the case to the trial court for a

hearing.  However, at the hearing, Mr. Bays did not introduce any evidence related to James Dalton,

Hope Purdue, Carrie Moore, or Terry Byrd.  See Tr. Vol. 4 at 1-109.  In appealing the trial court's

denial of his postconviction petition after hearing, Mr. Bays did not raise any claims related to James

Dalton, Hope Purdue, Carrie Moore, or Terry Byrd.  See App. Vol. 13 at 38-79; see also, *Bays,* 2003

WL 21419173.  Similarly, when Mr. Bays appealed to the Ohio Supreme Court, he failed to raise

any claims as to any of those individuals.  See App. Vol. 14 at 7-55.

On these facts, Respondent could have advanced a claim of procedural default, but

has not done so.  Therefore, this Court addresses the claim *de novo.*

Mr. Bays' argument is that his counsel were ineffective because they failed to call

witnesses whose testimony would have created reasonable doubt about who killed Mr. Weaver.

Allegedly, Mr. Dalton would have testified that he saw Mr. Bays come out of Mr. Weaver's house

at about 2:15 p.m. and that he did not see any blood on Mr. Bays.  Mr. Dalton would have allegedly

testified further that he saw Terry Byrd come out of Mr. Weaver's house about thirty minutes after

Mr. Bays came out.  Carrie Moore would have allegedly testified about hearing Mr. Byrd "confess"

to killing Mr. Weaver.  Finally, although it is not clear that she was "ready" to testify, Hope Purdue

would allegedly have testified that Mr. Byrd told her that Mr. Bays "got busted" for something Mr.

Byrd had done.

Even assuming that the testimony referenced above was admissible, this Court cannot

say that it would have led to a different result in this case.  First and foremost, Mr. Bays gave a

38

detailed confession to the investigating detectives which was properly obtained and introduced at trial. See, *infra.* Second, included in Mr. Bays' confession was information about where he disposed of Mr. Weaver's wallet as well as the tee shirt and glove he had worn during the murder. Based on that information, the detectives found those items precisely where Mr. Bays said he had dumped them. Third, Mr. Bays discussed with Mr. Adkins the details of how he had killed Mr. Weaver and taken his wallet. Finally, Cindy Dean, a forensic chemist, testified that hairs retrieved from Mr. Weaver's hand were microscopically indistinguishable from known hairs taken from Mr. Bays. *Id.* at 216-37.

In view of this overwhelming evidence of Mr. Bays' guilt, even assuming that Mr. Bays' counsel should have called Mr. Dalton, Ms. Moore, and Ms. Purdue to testify, their failure to do so did not result in prejudice to Mr. Bays because there is not a reasonable probability that their testimony would not have let the three-judge panel to reach a different result.

The Ohio Supreme Court's decision finding that Mr. Bays' trial counsel were not ineffective for failing to call Mr. Henson to testify is not contrary to nor an unreasonable application of clearly established federal law. In addition, Mr. Bays' claim that his counsel were ineffective for calling certain witnesses whose testimony would have allegedly raised reasonable doubt over his (Mr. Bays') involvement in Mr. Watson's killing is meritless. Accordingly, Mr. Bays' Third Ground for Relief should be denied.

**Ground Four**

39

In his Fourth Ground for Relief, Mr. Bays alleges that his trial counsel were ineffective in their presentation during the mitigation phase of his trial.  As noted, this Court has previously limited this claim to the failure to investigate Mr. Bays' family history and background for mitigation evidence.  See Doc. 34.

Mr. Bays raised this claim on direct appeal and both the court of appeals and the Ohio Supreme Court rejected the claim. *Bays,* 1998 WL 31595 at 30-31; *Bays,* 87 Ohio St.3d at 29. Nevertheless, Mr. Bays raised the claim again during postconviction and the state courts addressed the claim on the merits.  The last reasoned state court decision on this claim was issued by the first postconviction court of appeals which rejected it as follows:

> Second, Bays claims that his trial counsel was ineffective in failing to investigate fully his family history for mitigating factors that might have persuaded the panel not to impose the death penalty.  As evidence, Bays attached an affidavit from his father, Virgil Bays, to his petition for post-conviction relief.  In the affidavit, Virgil Bays describes his personal family history leading up to the birth of his son, Richard.  Virgil also states that neither he nor his wife ever abused their children.  With respect to Bays, Virgil states that his son had difficulty learning as a child, particularly in school. and that Bays quit school around the age of fifteen.  Finally, Virgil states that while Bays was growing up, he worked from 1:00 p.m. until 11:30 p.m. and was not aware of what Bays was doing during that time.
>
> Virgil Bays testified during the mitigation phase of trial.  At trial Virgil testified that Bays had academic problems during school.  Virgil stated that he worked from 2:30 p.m. until 10:30 p.m. while Bays was growing up. Virgil also testified that neither he nor his wife ever struck Bays and they had a good relationship.
>
> Based on Virgil Bays's testimony at trial, the panel could properly conclude that the affidavit attached to Bays's petition for post-conviction relief did not contain sufficient operative facts to warrant an evidentiary hearing.  Virgil Bays's affidavit was substantially duplicative of his testimony at trial.  Moreover, there is little if any additional information provided in the affidavit that would qualify as mitigating circumstances–certainly not enough to suggest substantive grounds for relief based upon ineffective assistance of trial counsel.

40

> See *Scott,* 63 Ohio Ap..3d at 307, 578 N.E.2d 841.  Accordingly, the panel properly denied Bays's request for an evidentiary hearing on this issue.

*Bays,* 1998 WL 31514 at *6.

 Virgil Bays, Petitioner's father, testified during the mitigation phase of Mr. Bays' trial  that there were some complications with Mr. Bays' birth, during his childhood he had some falls, he had problems academically in school and was in some individual special classes, and that Mr. Bays treated him (Virgil) and his (Mr. Bays') mother just fine.  Tr. Vol. 3 at 429-32.  Virgil Bays also testified that neither he nor Mr. Bays' mother ever struck Mr. Bays and that after his mother died, Mr. Bays was "a little different" and "kind of lost".  *Id.* at 432-33.

Mr. Bays submitted Virgil Bays' July 28, 1996, affidavit in support of his postconviction petition.  App. Vol. 8 at 179-81.  In that affidavit, Virgil Bays testified that Mr. Bays "had a lot of problems as a baby", apparently also had some brain damage, had a very hard time learning, did not want to do his homework or go to school, quit school around the age of fifteen, and that on the day of Mr. Weaver's killing, he (Virgil Bays) had given Mr. Bays $50.00.  *Id.*

Virgil Bays' affidavit testimony is essentially the same as his trial testimony.  The three-judge panel heard  Virgil Bays' testimony that there were some complications with Mr. Bays' birth, during his childhood he had some falls, he had problems academically and was in some individual special classes,  that Mr. Bays treated him well and that. after his mother died, Mr. Bays was "a little different" and "kind of lost".  Virgil Bays' affidavit testimony that  Mr. Bays  had difficulties (undefined or explained) as a baby, allegedly had some brain damage, that he had a  hard time learning, did not want to do his homework, and did not want go to school, does not add

anything substantive to his trial testimony.  In other words, Virgil Bays' affidavit does not support Mr. Bays' claim that his counsel were ineffective for failing to investigate his family history and background for mitigation evidence.

Mr. Bays also points to his wife's affidavit in support of his allegation that his counsel failed to investigate his family history and background for mitigation evidence.

Mr. Bays submitted his wife's July 28, 1996, affidavit in support of his postconviction petition.  App. Vol. 8 at 124-29.  In that affidavit, Martha Bays testified to a number of arguably mitigating factors about Mr. Bays.  These include Mr. Bays' getting drunk and high because he wanted to be accepted by his peers, others making fun of and ridiculing Mr. Bays because he was "slow", Mr. Bays being easily influenced by others, Mr. Bays having difficulty getting and keeping a job because he "was really too slow to really become involved in any long time employment", and Mr. Bays using alcohol and marijuana as a way to fit in with other people. *Id.*  Mrs. Bays also testified that she "had explained all of this to Rick's attorney...".  *Id.*

While Mrs. Bays' affidavit references what could be described as mitigating factors, it also makes it clear that she gave that information to Mr. Bays' trial counsel.  Accordingly, that affidavit does not support Mr. Bays' position that his counsel failed to investigate his family history.

A review of the transcript of the mitigation phase of Mr. Bays' trial reveals that the three-judge panel heard substantial evidence about Mr. Bays' family history.  Dr. Kathleen Burch, a clinical psychologist who had interviewed and examined Mr. Bays, testified about Mr. Bays as follows: overall, his test results were strongly consistent with the presence of a moderate level of neuropsychological dysfunction; at birth, he had an absent Moro reflex, irregular respirations, and a coarse tremor which are suggestive of some brain damage; at age six, he displayed certain

42

neurological signs that would be indicative of cerebral concussion; his parents' marriage was intact and there was no significant family disharmony while he was growing up; he denied that his parents abused substances; his parents were not abusive to him or his sisters; he presented no evidence that there was family discord; there were no problems in the home environment while he was growing up; he did not express any negative feelings or attitudes about any of his immediate family; he inferred he thought his parents cared less about him than his two sisters; he did well in school until about age ten when he started using substances; he married at the age of twenty and quit drinking when his wife threatened to end the marriage; his employment has been extremely limited; his marriage was stable; and he was in the borderline range of intellectual functioning. Tr. Vol. 3 at 368-401. In addition to Dr. Burch's testimony, the three-judge panel admitted into evidence her report which reflects her testimony. App. Vol. 18 at 146-51.

Another psychologist, Dr. Harvey Siegal, a substance abuse specialist, testified at the mitigation phase of Mr. Bays' trial. Tr. Vol. 3 at 402-28. Dr. Siegal testified that Mr. Bays began using marijuana at the age of nine, by age twelve or thirteen, he was drinking alcohol consistently, and that the age of about twenty-seven, which was about the time his mother died, he began using crack cocaine. *Id.* Dr. Siegal also testified that Mr. Bays was dependent on several different drugs, perhaps at different times. *Id.*

A third psychologist, Dr. Newton Jackson, testified during the mitigation phase of Mr. Bays' trial that Mr. Bays began to abuse marijuana at a very early age, probably somewhere around the age of nine, it wasn't until his fourth grade year in school that he started to be referred for special assistance in the schools, he had a history of early trauma all the way back to birth, and that there was no information Dr. Burch reported about Mr. Bays' background that was contrary

to his findings.  Tr. Vol. 3 at 430-40; 464; 466.

The above cited testimony placed before the three-judge panel information about Mr. Bays' upbringing as well as his: family of origin; relationships with his parents; early childhood physical traumas; stable marriage; substance abuse issues; intellectual deficits; and his neuropsychological impairments.  While some of that evidence was introduced by way of Virgil Bays, other evidence was introduced by way of the psychologists who examined and tested Mr. Bays.   With this review of the mitigation phase testimony in mind, this Court concludes that Mr. Bays' counsel investigated Mr. Bays' family history for mitigation evidence and that Mr. Bays simply has not established that they were constitutionally ineffective for failing to do so.

The Ohio court's decision that Mr. Bays' counsel were not ineffective for failing to investigate his family background is not contrary to nor an unreasonable application of, clearly established federal law.  Therefore, Mr.  Bays' Fourth Ground for Relief should be rejected.

**Ground Five**

In Subclaims A, B, and D of his Fifth Ground for Relief, Mr. Bays challenges the admissibility of his confession.  Mr. Bays' position is that the trial court erred by finding that his confession was voluntary.  Mr. Bays raised this claim on direct appeal and the Ohio Supreme Court rejected it as follows:

> In his second proposition of law, Bays asserts that the trial court
> should have suppressed his November 19 confession to Detective
> Savage as involuntary. He contends that his will was overborne

44

and the confession extracted by deceit, intimidation, and implied promises of leniency.

Findings of Fact

In ruling on the motion, the trial court made detailed findings of fact, in accordance with Crim.R. 12(E).  Since the record supports those findings, they bind us. See, *e.g.*, *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 981.  Hence, we set them forth here, along with the supporting testimony.

The trial court found that, on November 19, 1993, Savage received an anonymous call. The caller knew details of the murder that had not been released to the press, and he implicated Bays in the crime. "The police returned to Mr. Bays's home [the trial court found] and he again voluntarily accompanied the police to the police station. At the station Detective Donahue read Mr. Bays his rights and he again initialed the Pre-Interview form [acknowledging that he understood his rights]."

The trial court found that Bays signed the form at 7:08 p.m. and gave the detectives a taped statement at 7:20 p.m. During the intervening twelve minutes, the detectives told Bays that they knew he committed the murder. Detective Savage stated that "withholding the truth could only hurt [Bays] and not benefit him." Then the detectives told Bays how the murder happened. Bays admitted that the detectives' scenario was correct, then went over the details with them and reenacted the murder on videotape.

The trial court further found that, during the interrogation, Savage "stated the different penalties for different crimes including the death sentence." At the hearing, Savage testified that he told Bays, "[I]t looked like a death penalty case." Savage then recited to Bays the possible penalties for aggravated murder, murder, manslaughter, and involuntary manslaughter.

The trial court found that Savage had "raised the volume of his voice," but "[t]here was no evidence of screaming or of threats being made." Donahue testified that Savage raised his voice "a couple of times where Mr. Savage would say something to him and [Bays] would deny it, and he would say Ricky, we know better than that, you know, the lab has the results * * * or something like that."

Savage testified that he "may have" struck the table with his hand, but he couldn't recall. He also testified that he told Bays that "his hair was at the scene in Mr. Weaver's hand [and] that somebody had seen him up on the porch that day and confirmed that he was there." These statements exaggerated the strength of the evidence against Bays, since the witness did not identify Bays on the porch and the hairs

45

were never conclusively matched to Bays.

The trial court found that "Mr. Bays is 28 years old, he has a tenth grade education and has demonstrated that he can read and write. Mr. Bays has prior criminal experience * * * ."

The trial court concluded that Detective Savage's statements regarding the different penalties for different levels of homicide did not constitute a promise of leniency, nor did his statement that withholding the truth could only hurt Bays and not benefit him. Accordingly, the court found Bays's confession voluntary and overruled his motion to suppress it.

Analysis

"In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances * * *." *State v. Edwards* (1976), 49 Ohio St.2d 31, 3 O.O.3d 18, 358 N.E.2d 1051, paragraph two of the syllabus, judgment vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155. Circumstances to be considered include "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement."

Several circumstances militate strongly in favor of finding the confession voluntary. Bays went to the station voluntarily. He was interrogated for only twelve minutes before confessing. He was in his late twenties and had been arrested before. There was no evidence of physical abuse or deprivation. Savage did raise his voice when he thought Bays was lying and may have hit the table as well, but there was no evidence of any direct threats. Bays heard his *Miranda* rights, acknowledged that he understood them, and signed a waiver, the validity of which is not challenged here. Savage testified that Bays was calm and did not seem nervous.

Savage did mislead Bays as to the strength of the evidence against him. See *Frazier v. Cupp* (1969), 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684; *State v. Wiles* (1991), 59 Ohio St.3d 71, 81, 571 N.E.2d 97, 112. However, "[a] defendant's will is not overborne simply because he is led to believe that the government's knowledge of his guilt is greater than it actually is." *Ledbetter v. Edwards,* (C.A.6, 1994), 35 F.3d 1062, 1070.

Bays also points to his low IQ and childhood head injuries. Although this was not raised in the suppression hearing (see discussion below), the penalty-phase record shows that Bays's IQ was seventy-four, placing him in the least intelligent five percent of the population. On the other hand, Bays had a tenth grade education, and the record

46

indicates that he "did well in school" until he began engaging in substance abuse. There was no evidence that he was under the influence of any substances during the interrogation.

We think that the factors pointing to voluntariness far outweigh those negating voluntariness. We therefore conclude that, under the totality of the circumstances, Bays's statement was voluntary.

However, Bays also contends that, whatever the totality-of-the-circumstances analysis may show, his confession was involuntary because (as the trial court found) Savage informed him of the penalties for various degrees of homicide. According to Bays, these statements rendered his confession inadmissible, because they amounted to an implied promise of leniency.

We cannot agree. A promise of leniency, while relevant to the totality-of-the-circumstances analysis, does not require that the confession be automatically suppressed. *Edwards,* 49 Ohio St.2d at 40-41, 3 O.O.3d at 23-24, 358 N.E.2d at 1058-1059.

Moreover, Savage's recitation did not constitute a promise of leniency. All Savage did was to state the penalties for the various levels of homicide. An interrogator may inform the suspect of the penalties for the offense of which he is suspected. *State v. Arrington* (1984), 14 Ohio App.3d 111, 115, 14 OBR 125, 130, 470 N.E.2d 211, 216, citing *United States v. Ballard* (C.A.5, 1978), 586 F.2d 1060, 1063, and *United States v. Bera* (C.A. 11, 1983), 701 F.2d 1349, 1364. We therefore reject Bays's contention that Savage, by informing him of the possible penalties he faced, rendered Bays's otherwise voluntary confession inadmissible.

*Bays,* 87 Ohio St.3d at 21-23.

The issue of "voluntariness" of a confession is a legal question for federal court, not a factual question on which state conclusion is presumed to be correct. See *Miller v. Fenton*, 474 U.S. 104, 110 (1985)(citations omitted). Apart from being voluntary, the *Miranda* [*v. Arizona*, 384 U.S. 436 (1966)] waiver must also be "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Smith v. Mitchell*, 567 F.3d 246, 257 (6th Cir. 2009), quoting *Colorado v. Spring,* 479 U.S. 564, 573 (1987).

In *Garner v. Mitchell*, the Sixth Circuit summarized the federal law governing federal habeas corpus claims arising out of the United States Supreme Court's decision in *Miranda* as follows:

> [A habeas petitioner] has the burden of establishing that, under the totality of the circumstances, he did not knowingly and intelligently waive his rights before speaking to the police. *Clark v. Mitchell*, 425 F.3d 270, 283 (6th Cir. 2005). "We are also mindful that in a habeas proceeding the petitioner 'has the burden of establishing his right to federal habeas relief . . . .'" *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003) (quoting *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001)). Under this inquiry, we examine "the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *see also Edwards v. Arizona*, 451 U.S. 477, 482 (1981). The relevant question is not whether the "criminal suspect [knew] and [understood] every possible consequence of a waiver of the Fifth Amendment privilege," but rather whether the "suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Colorado v. Spring*, 479 U.S. 564, 574 (1987).
> . . .
> It is well-established [sic], in this circuit and others, that mental capacity is one of many factors to be considered in the totality of the circumstances analysis regarding whether a *Miranda* waiver was knowing and intelligent. Thus, diminished mental capacity alone does not prevent a defendant from validly waiving his or her *Miranda* rights. [Citations omitted.] Rather, that factor must be viewed alongside other factors, including evidence of the defendant's conduct during, and leading up to the interrogation.

*Garner v. Mitchell*, 557 F.3d 257, 260-61, 264-65 (6th Cir. 2009). The court explained that the original purpose of the *Miranda* decision was to "'reduce the likelihood that the suspects would fall victim to constitutionally impermissible practices of police interrogation.'" *Id.* at 262, *quoting New York v. Quarles*, 467 U.S. 649, 656 (1984). As the Seventh Circuit Court of Appeals has explained:

> The relevant constitutional principles are aimed not at protecting people from themselves but at curbing the abusive practices by public officers . . . . [T]he knowledge of the police is vital. If they have no

48

>reason . . . to think that the suspect doesn't understand them, there is nothing that smacks of abusive behavior.  It would seem to follow that the question is not whether if [a defendant] were more intelligent, informed, balanced, and so forth he would not have waived his Miranda rights, but whether the police believed he understood their explanation of those rights; more precisely, whether a reasonable state court judge could have found that the police believed this.

*Rice v. Cooper*, 148 F.3d 747, 750-51 (7th Cir. 1998), *citing  Connelly*, 479 U.S.  at 161-62.  The Sixth Circuit has softened the harshness of *Connelly*, however, suggesting that if it is apparent that because of illness, insanity, or mental retardation a suspect is incapable of rationally waiving his *Miranda* rights, an officer's calculated, conscious effort to extract a waiver from him would be an abusive practice.  *Garner*, 557 F.3d at 263 n.1.  However, "[t]he underlying police-regulatory purpose of *Miranda* compels that [the] circumstances [surrounding the waiver of rights] be examined, in their totality, primarily from the perspective of the police."  *Garner*, 557 F.3d at 263.

The fact that police misrepresent evidence against a defendant, while relevant to the totality of the circumstances test, is insufficient to make an otherwise voluntary confession inadmissible.  *Frazier v. Cupp.* 394 U.S. 731, 739 (1969).   Under some circumstances, promises of leniency may be coercive.  See *United States v. Johnson,* 351 F.3d 254, 261 (6th Cir. 2003).

Mr. Bays challenges the admissibility of his confession on essentially two grounds: first, that it was coerced by promises of lenient treatment and second, that he has mental disabilities which interfered with his ability to voluntarily waive his rights.  However, the transcript of the suppression hearing and the recordings of Detective Savage's interviews of Mr. Bays do not support Mr. Bays' arguments.  Indeed, when the totality of the circumstances are considered, it is clear that Mr. Bays voluntarily waived his *Miranda* rights and voluntarily confessed to killing Mr. Weaver.

Det. Savage testified at the February 24, 1994, motion to suppress hearing as follows.

49

On November 16, 1993, he went to Mr. Bays' home to ask him to come to the police department to answer questions about Mr. Weaver's death and he transported Mr. Bays to the department in a police car.  Tr. Vol. 1 at 4-5.  Det. Savage did not place Mr. Bays under arrest, he did not put handcuffs on Mr. Bays, Mr. Bays willingly went to the department, and Mr. Bays was free to leave at any time.  *Id.*  Prior to questioning Mr. Bays, Det. Savage advised Mr. Bays of his rights, Mr. Bays said that he understood his rights, and Mr. Bays signed a Constitutional Pre-Interview Form.  *Id.* at 5-6; App. Vol. 18 at 2.  At that time, Mr. Bays told Det. Savage that he had been at Mr. Weaver's home, had smoked a couple of cigarettes, had a cup of coffee, and left.  Tr. Vol. 1 at 7.  After Mr. Bays spoke to other officers about working with a task force on drug cases, Det. Savage took Mr. Bays home.  *Id.*

On November 19, 1993, after receiving a tip from an anonymous source about Mr. Bays' involvement in Mr. Weaver's murder, Det. Savage and Det. Daniel Donahue went to Mr. Bays' home to speak with him and bring him to the police station.  *Id.* at 8. Det. Donahue informed Mr. Bays of his *Miranda* rights which Mr. Bays stated he understood.  *Id.* at 9-10.  At 7:09 p.m., Mr. Bays signed a Constitutional Rights Pre-Interview Form on which he indicated he understood and waived his rights, that he was able to read and write, and that he had a tenth grade education.  *Id.* at 10; App. Vol. 18 at 3, 108 [duplicate]; see also, App. Vol. 18 at 4.  Det. Savage then told Mr. Bays that he knew that Mr. Bays had committed a murder but that he did not want Mr. Bays to confess to anything that he didn't do and that withholding the truth could only hurt him and not benefit him.  Tr. Vol. 1 at 10-11.  During the interrogation, Det. Savage described to Mr. Bays the possible penalties for different crimes such as aggravated murder, murder, manslaughter, and involuntary manslaughter.  Tr. Vol. 1 at 10-11; 23-24.  Det. Savage  did not tell Mr. Bays that if he cooperated

and confessed he would not face the death penalty or that he could possibly get parole after serving eight years. *Id.* at 24-25.

Det. Donahue testified at the suppression hearing as follows. Det. Donahue participated in the November 19, 1993, interrogation of Mr. Bays, that prior to interrogating Mr. Bays he advised Mr. Bays of his rights which Mr. Bays stated he understood and waived, and that Mr. Bays signed the Constitutional Rights Pre-Interview Form. *Id.* at 42-44. Mr. Bays signed the Form at 7:08 p.m. and he and Det. Savage recorded Mr. Bays confession beginning at 7:20 p.m. *Id.* at 45; see also, App. Vol. 18 at 4. Neither Det. Donahue nor Det. Savage promised Mr. Bays anything if he confessed or cooperated and neither of them threatened Mr. Bays if he did not cooperate. Tr. Vol. 1 at 46-47. Det. Savage raised his voice and slammed his had on the table while interrogating Mr. Bays, but he did not yell at Mr. Bays or threaten him. *Id.* at 47-48. Det. Savage did discuss with Mr. Bays the different levels or degrees of homicide. *Id.* at 50.

At the time Dets. Savage and Donahue interrogated him, Mr. Bays was twenty-eight years old, had a tenth grade education, and had prior experience with the police because he had been arrested on previous occasions, *Id.* at 16, 18. In addition, Mr. Bays did not exhibit any signs that he was under the influence of alcohol, depressants, or any type of drug or any signs that he was impaired whatsoever, and he was able to articulate the facts of the crime. *Id.* at 20.

Mr. Bays, who had prior involvement with the police, stated that he understood his *Miranda* rights and waived them both verbally and in writing on two occasions during the investigation of Mr. Weaver's murder, but more importantly, on November 19, 1993, prior to his interrogation and subsequent confession. The length of the interrogation that led to Mr. Bays' confession was very short—about twelve minutes—as reflected by the facts that Mr. Bays signed

the Constitutional Rights Pre-Interview Form at 7:08 p.m. and began his taped confession at 7:20

p.m.. During the interrogation, neither Det. Savage or Det. Donahue used any methods of coercion

and neither of them threatened Mr. Bays. Although Det. Savage admittedly reviewed with Mr. Bays

the penalties for the various types of homicides, neither he nor Det. Donahue made any promises

of leniency in exchange for Mr. Bays' confession. Although Mr. Bays' IQ is in the borderline

intellectual functioning range, see, *e.g.,* Tr. Vol. 3 at 381; App. Vol. 18 at 151, as noted above, he

stated on the Pre-Interview Form that he is able to read and write and that he has a tenth grade

education. Additionally, Mr. Bays did not appear to be under the influence of any substances, did

not exhibit any signs of being impaired, and was articulate. Assuming *arguendo* that Det. Savage

misrepresented to Mr. Bays the evidence that the police had against him, that fact is relevant only

for purposes of evaluating the totality of the circumstances and does not in and of itself make Mr.

Bays' confession involuntary.

This Court concludes that the totality of the circumstances establishes that Mr Bays

November 19, 1993, confession was voluntary.

In Subclaim C of his Fifth Ground for Relief, Mr. Bays argues that the trial court

denied his right to due process when it refused to reopen the suppression hearing. The Ohio

Supreme Court rejected this claim on direct appeal as follows:

### Motion for New Suppression Hearing

Bays also argues under his second proposition that the trial court denied him due process by denying his request for a *second* suppression hearing at which he could present evidence of his mental deficits.

Eighteen months after the trial court denied the motion to suppress, and less than a week before the scheduled trial date, the defense filed a renewed motion to suppress the confession. The motion requested

52

a new hearing at which defense experts could testify on Bays's cocaine dependency, intellectual capacity, possible brain damage, and the effect of these things on the voluntariness of his confession. The defense also filed a motion for continuance grounded in the need to reopen the suppression hearing. (The defense had already requested and received two continuances.) On November 29, the court denied a continuance and a new hearing.

We do not find that the trial court abused its discretion in denying Bays a second chance to litigate the voluntariness of his confession. We therefore overrule Bays's second proposition of law.

*Bays,* 87 Ohio St.3d at 23-24.

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and an opportunity for hearing appropriate to the nature of the case.'" *Cleveland Board of Education v. Loudermill,* 470 U .S. 532, 542 (1985), citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950). The process due at a suppression hearing may be less demanding and elaborate than the protections accorded the defendant at the trial itself. *United States v. Raddatz,* 447 U.S. 667, 679 (1980). A court's authority to consider anew a suppression motion previously denied is within its sound judicial discretion. See *Raddatz,* 447 U.S. at 678 n. 6, citing, *Gouled v. United States,* 255 U.S. 298, 312 (1921), abrogated on other grounds, *Warden, Md. Penitentiary v. Hayden,* 387 U.S. 294 (1967); *Rouse v. United States,* 123 U.S.App.D.C. 348, 359 F.2d 1014 (1966).

The trial court held the hearing on Mr. Bay's motion to suppress on February 24, 1994, and on May 23, 1994, the court issued its decision denying Mr. Bays' motion. Tr. Vol. 1 at 2; App. Vol. 1 at 126-28. Some eighteen months later, on November 28, 1995, Mr. Bays moved the court to reopen the supression hearing for the purpose of introducing "new evidence" about his dependence on alcohol, marijuana, and crack cocaine and its effect on his ability to make a knowing,

voluntary, and intelligent waiver of his rights during his confession. App. Vol. 4 at 162-64. The court denied Mr. Bays' motion on November 29, 1995.  Tr. Vol. 1, Transcript of Nov. 29, 1995, hearing.

   As noted above, at the February 24, 1994, hearing, the evidence established that Mr. Bays has a tenth grade education, is able to read and write, verbally waived his *Miranda* rights, and signed a waiver form on November 16, 1993, and again on November 19, 1993.

   At the time of the supression hearing, the trial court was aware of the fact that Mr. Bays was involved in drug use.  Specifically, Det. Savage testified at the hearing that on November 16, 1993, Mr. Bays was at the police station for awhile after the interview because "[h]e spoke to another detective from the task force about working for them because he said he knew a good amount of people selling drugs." Tr. Vol. 1 at 7.  However, the undisputed evidence established that at the time Dets. Savage and Donahue interrogated Mr. Bays  and Mr. Bays confessed to killing Mr. Weaver, Mr. Bays did not appear to be under the influence of any drug or other substance, was articulate, and did not exhibit any impairment.   Moreover, at the hearing on his motion to suppress, Mr. Bays had to opportunity to cross-examine both Det. Savage and Det. Donahue at length. *Id.* at 15-37; 38; 47-53

   Contrary to Mr. Bays' argument in his Traverse that the Ohio Supreme Court unreasonably determined the facts in light of the evidence presented, (Doc. 108), this Court concludes that on February 24, 1994, Mr. Bays received a full and fair hearing on his motion to suppress.  Accordingly, the trial court did not violate Mr. Bays' due process rights when it declined to reopen the suppression hearing.

   The Ohio Supreme Court's finding that the trial court did not err by failing to

suppress Mr. Bays' confession or by declining to reopen the suppression hearing  is not contrary to

nor an unreasonable application of, clearly established federal law.  Therefore, Mr.  Bays' Fifth

Ground for Relief should be overruled.

### Ground Six

Mr. Bays argues in his Sixth Ground for Relief that the trial court erred when it

accepted his waiver of his right to a jury trial.  Mr. Bays' position is that he did not waive his right

knowingly, intelligently, and voluntarily.  Mr. Bays raised this claim on direct appeal and the Ohio

Supreme Court rejected it as follows:

> Bays signed a written jury waiver pursuant to R.C. 2945.05.  After
> his counsel submitted the waiver to the trial court, the trial judge had
> the following exchange with Bays:
>
> "JUDGE GRIGSBY: Now, Mr. Bays, I want to explain to you, you
> have a right to a Jury Trial of 12 people. That is your Constitutional
> right. If you sign this waiver of Jury Trial and begin the trial, there is
> no changing. You understand after a trial is begun, then you cannot
> go back and ask for a Jury?
>
> "THE DEFENDANT: Yes.
>
> "JUDGE GRIGSBY: Do you understand that?
>
> "THE DEFENDANT: Yes.
>
> "JUDGE GRIGSBY: Now, I want to ask you, you are not under any
> drugs or alcohol or anything like that this morning, are you?
>
> "THE DEFENDANT: No.
>
> "JUDGE GRIGSBY: This waiver must be made knowingly, and by
> that, I mean, you understand what you are doing. You are giving up
> your right to a Jury, and in a case like this, a Jury's verdict must be

unanimous. In other words, if you convince, or your Counsel convinces one Juror not to convict you, there will at least be a mistrial and retrial.

"Do you understand you are giving up that right of the Jury?

"THE DEFENDANT: Yes, I understand that.

"JUDGE GRIGSBY: And is there any-well, just tell me why you want to give up the Jury.

"THE DEFENDANT: My Counsel feels it's best.

"JUDGE GRIGSBY: Now, are you doing this voluntarily, of your own free will?

"THE DEFENDANT: I don't know which way I want to go really. With the Jury, I don't figure it was a fair pick.

"JUDGE GRIGSBY: Well, regardless of whether you waive a Jury, whether it's this panel or another panel, are you giving up that right to a Jury Trial by your own volition?

"THE DEFENDANT: Yes.

"JUDGE GRIGSBY: Then the rule says you must sign that in open Court. I'm going to give you an unsigned copy and I want you to read it. If you have any questions, now is the time to ask them."

Bays then signed another waiver, and the judge accepted it.

In his first proposition of law, Bays contends that his waiver of trial by jury was not voluntary, knowing, and intelligent, and was therefore invalid.

A jury waiver must be voluntary, knowing, and intelligent. *State v. Ruppert* (1978), 54 Ohio St.2d 263, 271, 8 O.O.3d 232. 236, 375 N.E.2d 1250, 1255. Waiver may not be presumed from a silent record; however, if the record shows a jury waiver, the verdict will not be set aside except on a plain showing that the waiver was not freely and intelligently made. *Adams v. United States ex rel McCann* (1942) 317 U.S. 269, 281, 63 S.Ct. 236, 242-43, 87 L.Ed. 268, 275-76. Moreover, a written waiver is presumptively voluntary, knowing, and intelligent. *United States v. Sammons* (C.A.6, 1990), 918 F.2d

56

592, 597 cf. *United States v. Martin* (C.A. 6 1983), 704 F.2d 267, 274, fn.8.

Voluntariness

Arguing that his waiver was not voluntary, Bays points out that he told the trial judge he was waiving because "[m]y counsel feels it's best," and that he did not "know which way [he] want[ed] to go." However, that Bays cited counsel's advice as a reason for waiving a jury does not suggest involuntariness. If anything, having the advice of counsel would enhance the voluntariness of his decision.

Bays cites his own statement that he did not really know what he wanted as casting doubt on the voluntariness of his decision. Nevertheless, when asked if he was giving up his right to trial by jury "by your own volition," Bays said, "Yes." Bays asks us to discount this answer because, with an IQ of seventy-four, he could not be expected to know what "volition" meant. We are not persuaded. In context the word "volition" was comprehensible, coming (as it did) immediately after the preceding question: "Now, are you doing this voluntarily, of your own free will?"

Bays has not shown that his jury waiver was not voluntary.

Knowingness and Intelligence

Bays contends that his waiver was not knowing and intelligent, in that he did not understand the nature of the jury trial right and consequences of waiving it. During the colloquy, he stated: "With the Jury, I don't figure it was a fair pick." Bays argues that he was waiving a jury that he believed would be unfair, and thus did not understand that he was actually waiving the right to trial by a *fair* jury.

A waiver is the intentional relinquishment of a known right or privilege. *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466. Hence, a defendant must have some knowledge of the nature of the jury trial right to make a valid waiver. *Martin, supra,* 704 F.2d at 273.

However, a defendant need not have a complete or technical understanding of the jury trial right in order to knowingly and intelligently waive it. *Id.* For instance, the United States Court of Appeals for the Sixth Circuit has said: "A defendant is sufficiently informed to make an intelligent waiver if he was aware that a jury is

57

composed of 12 members of the community, he may participate in the selection of the jurors, the verdict of the jury must be unanimous, and * * * a judge alone will decide guilt or innocence should he waive his jury trial right." *Id.*, 704 F.2d at 273. Indeed, that may be more than the Constitution requires to render a waiver knowing and intelligent. See *United States v. Sammons, supra*, 918 F.2d at 597. At any rate, a defendant need not be specifically told that he has a right to an *impartial* jury before his jury waiver can be deemed knowing and intelligent.

Similarly, Bays also contends that his waiver was not knowing and intelligent because the trial court did not explain that a single juror can block a death recommendation, see *State v. Springer* (1992), 63 Ohio St.2d 167, 586 N.E.2d 96, and that a death sentence recommended by a jury could not be reimposed if reversed on appeal (as was then the case; see *State v. Penix* [1988], 32 Ohio St.3d 369, 513 N.E.2d 744, and R.C. 2929.06[B]). Again, however, these are not aspects of the jury trial right that a defendant must know about before he can knowingly and intelligently waive a jury trial. *Martin, supra*. The trial court is not required to inform the defendant of all the possible implications of waiver. See *State v. Jells* (1990), 53 Ohio St.3d 22, 559 N.E.2d 464, paragraph one of the syllabus.

Bays further contends that his waiver was not knowing because the trial judge misinformed him as to the burden of persuasion in a jury trial. In explaining to Bays that "a Jury's verdict must be unanimous," the judge stated: "In other words, if you convince, or your Counsel convinces one Juror not to convict you, there would at least be a mistrial and a retrial."

According to Bays, the trial judge's words implied that, if Bays asked for a jury trial, he would have to persuade the jurors of his innocence. Thus, he contends that the trial court affirmatively misinformed him about the nature of the jury trial right, a circumstance that generally invalidates a jury waiver. See *State v. Ruppert, supra*; *State v. Haight* (1994), 98 Ohio App.3d 639, 649 N.E.2d 294.

However, the topic the judge was talking about here was the unanimity required for a jury verdict, not the allocation of the burden of proof. One could draw an incorrect inference about the burden of proof by minutely parsing the trial judge's words, but we find it hard to believe that a defendant would draw any inference at all about the burden of proof from hearing these particular words spoken, in a context where the burden of proof was not the subject under

discussion. Thus, we do not find that the trial court affirmatively misinformed Bays about the nature of the jury trial right.

It does not plainly appear from the record that Bays's jury waiver was anything less than voluntary, knowing, and intelligent. Consequently, his first proposition of law fails.

*Bays,* 87 Ohio St.3d at 18-21.

Trial by jury is fundamental to American criminal jurisprudence.  See *Duncan v. Louisiana,* 391 U.S. 145, 149 (1968).  The purpose of the jury trial is to prevent governmental oppression and arbitrary law enforcement. *Id.* at 155.  The jury trial gives the defendant "an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge." *Apprendi v. New Jersey,* 530 U.S. 466, 548 (2000), *citing, Duncan,* 391 U.S. at 156.  Trial by jury may be waived only where the defendant's waiver is voluntary, knowing, and intelligent.  See *Patton v. United States,* 281 U.S. 276 (1930), abrogated on other grounds, *Williams v. Florida,* 399 U.S. 78 (1970).

A jury trial may be waived upon the express and intelligent consent of the defendant.  *Sowell v. Bradshaw*, 372 F.3d 821, 831 (6th Cir. 2004), citing *Patton,* 281 U.S. at 312-13. The waiver of this important right is effective only where it is not a product of duress or coercion. *United States v. Martin,* 704 F.2d 267, 273 (6th Cir. 1983)(citations omitted).  Although the courts will not presume a waiver from a silent record, the burden of demonstrating that a waiver was not valid lies with the defendant who made the waiver.  *Id.*, *citing Adams v. United States ex rel. McCann,* 317 U.S. 269, 281 (1942).  A colloquy regarding the waiver is not constitutionally required.  *Sowell,* 372 F.3d at 832, citing *United States v. Martin,* 704 F.2d 267 (6th Cir. 1983).  Similarly, a written waiver is not constitutionally required.  *Fitzgerald v. Withrow,* 292 F.3d 500, 504 (6th Cir. 2002)(citation omitted).  However, a written waiver is presumptively voluntary, intelligent, and knowing.  *State*

*v. Fitzpatrick*, 102 Ohio St. 3d 321, 326 (2004), citing *United States v. Sammons,* 918 F.2d 592, 597 (6th Cir. 1990).

Under Ohio law, the waiver must be in writing and made in open court; there must be some evidence in the record that the defendant while in the courtroom acknowledged the jury waiver to the trial court. *State v. Lomax,* 114 Ohio St. 3d 350 (2007)( interpreting Ohio Revised Code § 2945.04). In the absence of a valid waiver, a three-judge panel lacks jurisdiction to try a capital case. *State v. Pless,* 74 Ohio St. 3d 333, 339 (1996).

This Court's review of the record in this case reveals that the Ohio Supreme Court accurately described the facts surrounding Mr. Bays' jury trial waiver.

First, Mr. Bays signed a jury trial waiver. In fact, the record indicates that Mr. Bays signed two waivers, one prior to the commencement of open court proceedings and the second in open court after engaging in a dialogue with the court. Tr. Vol. 2 at 4-5; App. Vol. 4 at 208.

The trial court explained to Mr. Bays that he had a constitutional right to a jury trial and Mr. Bays verbalized his understanding of that right. Tr. Vol. 2 at 5. In addition, Mr. Bays denied that he was under the influence of any drugs or alcohol, verbalized his understanding of the requirement that a jury's verdict must be unanimous, acknowledged that he had discussed the waiver with counsel, and acknowledged that he was giving up his jury trial right voluntarily. *Id.* at 5-6.

Mr. Bays argues that the trial court erred when it accepted his waiver because he had expressed some uncertainty about waiving a jury trial. After it explained his jury trial right to Mr. Bays, the court asked Mr. Bays why he was giving up his right to a jury and Mr. Bays essentially responded that he was following the advice of his counsel. *Id.* at 6. The court then asked Mr. Bays

if he was waiving his right "voluntarily, of your own free will?" and although Mr. Bays initially

responded that he didn't "know which way I want to go really", he subsequently told the court that

he was voluntarily waiving a jury trial. *Id.*

Mr. Bays also argues that his waiver was not valid because the court's use of the

word "volition" was confusing. While it is true that the trial court did ask Mr. Bays if is was "giving

up that right to a Jury Trial by your own volition?", *Id.*, the court asked that question only after it

had asked Mr. Bays if he understood his right to a jury trial, if he understood that he was giving up

that right, and whether he was doing so voluntarily. When reviewed in the entire context of its

dialogue with Mr. Bays, the court's use of the word "volition" was understandable and not a cause

of confusion.

Mr. Bays argues that his waiver was invalid because the trial court misled him as to

the burden of proof in a criminal trial. Mr. Bays points to the following language the court used:

> This waiver must be made knowingly, and by that, I mean, you
> understand what you are doing. You are giving up your right to a
> Jury, and in a case like this, a Jury's verdict must be unanimous. In
> other words, if you convince, or your Counsel convinces one Juror
> not to convict you, there would at least be a mistrial and a retrial.
>
> Do you understand you are giving up that right of the Jury?

*Id.* Mr. Bays claims that the court misstated the burden of proof implying that he had to convince

the jurors that he was innocent rather than the state having to prove that he was guilty beyond a

reasonable doubt. In the context of its dialogue with Mr. Bays, the court was explaining to him the

unanimity requirement—that is, in order to return a verdict, all of the jurors had to agree with the

verdict and if only one juror did not agree, the jury could not return a verdict and the court would

declare a mistrial. Contrary to Mr. Bays' argument, the court was not discussing with him the

burden of proof in a criminal trial.

Mr. Bays also argues that his waiver was invalid because the trial court failed to inform him that he had a right to a fair jury, that a single juror could prevent a recommendation for death, and that a sentence of death that is reversed on appeal could not be reinstated. First, as noted above, a colloquy regarding the waiver is not constitutionally required. Second, Mr. Bays has not cited, nor has this Court found, any federal law, let alone any that is firmly established by Supreme Court precedent, that stands for the proposition that a trial court is required to inform a defendant of all possible implications of a jury trial waiver.

Mr. Bays argues further that the trial court knew that his jury waiver was not valid and that the court's knowledge is reflected by the fact that it hurried to swear in the first witness so that the trial would officially begin and he could not change his mind about his waiver. That assertion is simply not supported by the record. First, as noted, Mr. Bays signed two waivers, the first prior  prior to the commencement of open court proceedings and the second in open court after engaging in a dialogue with the court. Second, Mr. Bays advised the trial court that he had consulted with counsel about the jury waiver. Third, the court engaged in a dialogue with Mr. Bays during which the court explained to him his right to a jury trial and inquired as to his understanding of that right as well as the voluntariness of his waiver. Finally, Mr. Bays signed the waiver in open court at 10:50 a.m. and court recessed for forty minutes, until 11:30 a.m., at which time the court swore-in the first witness. Tr. Vol. 2 at 7-8. Those factors do not support Mr. Bays' claim that the court hurried to begin the trial so that he could not withdraw his jury waiver.

A review of the transcript reveals that after Mr. Bays signed the jury waiver in open court, the prosecutor requested that the court not discharge the jury panel until the trial began "in

case there is a difficulty" and that once the trial began, "the Jury could be brought in and they could be told that their being here was not in vain." *Id.* at 7.  The court responded:

> What I was going to suggest, when the other Judge – the other Judges get here, we take the Bench, we waive – reserve your opening statement until this afternoon.  You, too, can reserve your opening statement until this afternoon. They can swear and put on a witness, if they ask no more than their name and where they live and so forth. The trial will have begun, so there will be no backing out of your waiver of the Jury.

> Okay. So we shall recess until the panel can meet.

*Id.*

First, it is clear from the context of the court's comments that the purpose of waiving the opening statements and swearing in a witness was so that the trial would begin and the court could then release the jury.  Its purpose was not to prevent Mr. Bays from changing his mind about waiving his jury trial right.  More importantly, however, the court made it clear that once the trial started, Mr. Bays would not be able to withdraw his jury waiver.  Nevertheless, in spite of the court's advising Mr. Bays about the implication of starting the trial as well as the forty-minute recess, Mr. Bays made no attempt to withdraw his waiver nor did he object to the trial commencing at the end of that recess.

Finally, Mr. Bays argues in his Traverse, (Doc. 108), that the decisions of the Ohio courts which rejected his jury waiver claim were objectively unreasonable and therefore *Cullen, supra,* does not bar this Court from considering the testimony taken during the evidentiary hearing before this Court. However, based on the colloquy which the trial court held with Mr. Bays as well as the fact that Mr. Bays signed a waiver of his jury trial right (twice) with the advice of counsel, this Court concludes that the Ohio court's findings as to Mr. Bays' jury waiver are not objectively unreasonable.

The Ohio Supreme Court's finding that Mr. Bays' waiver of his jury trial was knowing, intelligent, and voluntary is not contrary to nor an unreasonable application of, clearly established federal law.  Therefore, Mr. Bays' Sixth Ground for Relief should be rejected.

## Ground Seven

Mr. Bays essentially argues in support of his Seventh Ground for Relief that the trial court should have suppressed his November 19, 1993, confession and that without his confession and the evidence discovered as a result of his confession, there was insufficient evidence to convict him of aggravated murder.  Mr. Bays raised this claim on direct appeal and the Ohio Supreme Court rejected it stating:

> In his ninth proposition, Bays contends that, if we find his confession inadmissible, we must find that the *remaining* evidence is legally insufficient to sustain his conviction. Because we have found the confession admissible, this proposition of law is overruled as moot.

*Bays,* 87 Ohio St.3d at 24.

Mootness is "the doctrine of standing set in a time frame."  *Diaz v. Kinkela*, 253 F.3d 241, 243 (6th Cir. 2001), quoting *Arizonians for Official English v. Arizona,* 520 U.S. 43, 68 n. 22 (1997).  Therefore, for a case to continue through the judicial system, it must continually possess what was required for the case to begin — a justiciable case or controversy. See *Kinkela*, *supra*, citing *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990).

"Moot questions require no answer." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971), quoting *Missouri, Kansas & Texas R. Co. v. Ferris*, 179 U.S. 602, 606 (1900). Mootness is a jurisdictional question because the Court is not empowered to decide moot questions or abstract

propositions. *Rice, supra,* citing *United States v. Alaska S.S. Co.*, 253 U.S. 113, 116 (1920), quoting *California v. San Pablo & Tulare R. Co.*, 149 U.S. 308, 314 (1893).

Mr. Bays' Seventh Ground for Relief relies entirely on the premise that the trial court should have suppressed his November 19, 1993, confession.  However, this Court determined in its analysis of Mr. Bays' Fifth Ground for Relief that the trial court did not err by failing to suppress his confession.  Therefore, because the trial court properly admitted Mr. Bays' confession, his argument that in the absence of his confession there was insufficient evidence to sustain his conviction of aggravated murder is moot.   In other words, the question of whether, in the absence of his confession, there was sufficient evidence to convict Mr. Bays of aggravated murder is a question that does not require an answer.  Therefore, the Ohio Supreme Court properly determined that Mr. Bays' claim that, if  his confession was inadmissible, the remaining evidence is legally insufficient to sustain his conviction, was moot.

The Ohio Supreme Court's decision is not contrary to nor an unreasonable application of, clearly established federal law and Mr. Bays' Seventh Ground for Relief should be overruled.

**Ground Eight**

In his Eighth Ground for Relief, Mr. Bays argues that the trial court violated his Sixth Amendment right to a fair trial when it denied his motion to disclose the identity of the police informant.  Mr. Bays raised this claim on direct appeal and the Ohio Supreme Court rejected it as follows:

In his sixth proposition of law, Bays contends that the trial court should have ordered the state to disclose the identity of the informant who told Savage where Bays had discarded the shirt, glove, and wallet.

At the suppression hearing Savage testified that, on November 19, "I received a phone call * * * from an anonymous caller who had described the homicide to me. They [*sic*] described how Mr. Weaver was killed, what instruments were used to murder him, who had done the killing, where evidence was from the scene that had been removed and where the clothing that Mr. Bays had worn were [*sic*] placed.."

Bays filed a motion for disclosure of the caller's identity, based on *Roviaro v. United States* (1975), 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639. (Although the call to Savage was anonymous, Bays asserted that a deputy sheriff knew how to contact the caller.) The trial court denied disclosure.

Bays contends that the trial court should have ordered disclosure, or at least held an *in camera* review to determine whether the informant had information helpful to Bays's defense.

The state has a privilege to withhold from disclosure the identities of those who give information to the police about crimes. *State v. Beck* (1963), 175 Ohio St.73, 76-77, 23 O.O.2d 377, 379, 191 N.E.2d 825, 828, reversed on other grounds (1964), 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142. However, the privilege must give way where disclosure of the informant's identity would be helpful to the accused in making a defense to a criminal charge. *Id.* at paragraph two of the syllabus; see, also, *Roviaro,* 353 U.S. at 60-61, 77 S.Ct. at 628, 1 L.Ed.2d at 645.

In general, courts have compelled disclosure in cases involving "an informer who helped to set up the commission of the crime and who was present at its occurrence" whenever the informer's testimony may be helpful to the defense *Id.* at 61, 77 S.Ct. at 628, 1 L.Ed.2d at 645-646. For instance, *Roviaro* itself involved a controlled drug transaction between the defendant and the informant. See, also, *State v. Butler* (1984), 9 Ohio St.3d 156, 9 OBR 445, 459 N.E.2d 536; *State v. Williams* (1903), 4 Ohio St.3d 74, 4 OBR 196, 446 N.E.2d 779; *State v. Phillips* (1971), 27 Ohio St.2d 294, 56 O.O.2d 174, 272 N.E.2d 347.

In contrast, "where the informant merely provided information concerning the offense," the courts "have quite consistently held that disclosure is not required."  3 LaFave & Israel, Criminal Procedure (1984) 19, Section 23.3. Cf.  *Beck,* 175 Ohio St. at 77, 23 O.O.2d at 379, 191 N.E.2d at 828 (distinguishing *Roviaro* ) with *Phillips,* 27 Ohio St.2d at 299-300, 56 O.O.2d at 177, 272 N.E.2d at 350-351(distinguishing *Beck* ).

Bays suggests that this case falls within the former category rather than the latter. His argument is that the informant must have been either a witness, the perpetrator, or an accomplice because he gave such detailed information; moreover, the informant must have been "more than just an observer" because he knew exactly what items Bays had thrown down the sewer, even though Bays did this at night.

We are not persuaded by this speculation. The facts Bays cites are entirely consistent with the inference that the informant learned about the crime from the killer. See *State v. Williams* (1995), 73 Ohio St.3d 153, 172, 652 N.E.2d 721, 736-737.  In fact, that is the likelier scenario: Bays's statements to Detective Savage and to Larry Adkins mention no accomplice. So far as the record shows, Bays and Weaver appear to have been alone in the house.

Bays has not shown that the informant did anything more than provide information concerning the offense. Hence, the trial court did not abuse its discretion by denying disclosure.

Alternatively, Bays argues that the trial court should have conducted an *in camera* review to determine whether the informant's identity would have been helpful. See *United States v. Sharp* (C.A. 6, 1985), 778 F.2d 1182, 1187. FN2. We disagree. "An in camera hearing is necessary only when 'the defendant makes an initial showing that the confidential informant may have evidence that would be relevant to the defendant's innocence.' " *State v. Allen* (1990), 27 Wash. App. 41, 48, 615 P.2d 526, 531, quoting *State v. Potter* (1980), 25 Wash.App. 624, 628, 611 P.2d 1282, 1284. Bays made no such showing here.

> FN2  At a November 29, 1995 hearing, one of the trial judges said that he would speak *in camera* with the deputy who allegedly knew the informant's identity, but there is no record of any such *in camera* interview.

Bays's sixth proposition is overruled.

67

*Bays,* 87 Ohio St.3d at 24-26.

In *Roviaro v. United States*, 353 U.S. 53 (1957), the Court held, after discussing the history of the confidential informer privilege, that "[w]here the disclosure of an informer's identity ... is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60. A court faced with the issue must "balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62.

In  *McCray v. Illinois*, 386 U.S. 300, 311 (1967), the Court observed:

> What *Roviaro* thus makes clear is that this court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even in formulating evidentiary rules for federal criminal trials. Much less has the Court ever approached the formulation of a federal evidentiary rule of compulsory disclosure where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake.

Although there is no fixed rule about disclosure of an informant's identity, as *Roviaro* makes clear, there may be some instances where the Constitution requires disclosure.  For example, disclosure has generally been required when "the informer was an active 'participant in the events underlying the defendant's potential criminal liability'".  *United States v. Sharp*, 778 F.2d 1182, 1186 n.2 (6th Cir. 1985).  Mr. Bays couches his "informant disclosure" claim in terms of his Sixth Amendment right to confront witnesses against him.

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. Here, the Confrontation Clause is not implicated because the informant did not testify at trial. By its terms the Confrontation Clause applies only to the witnesses, and "a defendant has

no right to confront an informant who provides no evidence at trial." *United States v. Francesco*, 725 F.2d 817, 822 (1st Cir.1984); accord *Cooper v. California*, 386 U.S. 58, 62 n. 2, (1967) ("Petitioner also presents the contention here that he was unconstitutionally deprived of the right to confront the witnesses against him, because the State did not produce the informant to testify against him. This contention we consider absolutely devoid of merit."); *United States v. Porter*, 764 F.2d 1, 9 (1st Cir.1985); *United States v. Morgan*, 757 F.2d 1074, 1076 (10th Cir.1985); *McAllister v. Brown*, 555 F.2d 1277, 1278 (5th Cir.1977) (per curiam).

It is true that the introduction of testimonial hearsay by a witness not testifying at trial may amount to a denial of the right to confront the witnesses against a defendant. *See Crawford v. Washington*, 541 U.S. 36, 68-69 (2004). However, petitioner has identified no hearsay statements made by the confidential informant that were introduced at trial. The mere fact that Det. Savage received a telephone call from an anonymous caller who described how Mr. Bays killed Mr. Weaver and what Mr. Bays had done with certain items did not place before the three-judge panel "testimony" by the informant in Mr. Bays' case within the meaning of the Sixth Amendment. Because the informant did not testify at Mr. Bays' trial, and because none of the informant's out-of-court statements were admitted at trial, (see Tr. Vol. 3 at 239-327), the informant was not a "witness against him" under the Sixth Amendment, and Mr. Bays was not denied his Confrontation Clause rights by the trial court's failure to order disclosure of the confidential informant.

Aside from his Sixth Amendment Confrontation claim, Mr. Bays seems to argue that the identity of the informant was crucial to his defense because he could only have come by the information he gave Det. Savage if he was involved in the crime or if he witnessed the crime. However, mere speculation that a witness may have evidence that is helpful to the defendant's case

69

does not warrant disclosure under *Roviaro*. *Sharp*, 778 F.2d at 1186 (citation omitted).

The Ohio Supreme Court's finding that Mr. Bays was not entitled to disclosure of the anonymous caller's identity is not contrary to nor an unreasonable application of, clearly established federal law. Therefore, Mr. Bays' Eighth Ground for Relief should be rejected.

## Ground Eleven

In his eleventh ground for relief, Mr. Bays argues that the cumulative effect of the constitutional errors he has set forth in this Petition violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments.

The Constitution entitles a criminal defendant to a fair trial, not a perfect one. *Delaware v. VanArsdall*, 475 U.S. 673, 681 (1986). Indeed, there can be no such thing as an error-free, perfect trial. *United States v. Hastings,* 461 U.S. 499, 508-09 (1983).

The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief. *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.2002). "[W]e have held that, post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief." *Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied. sub nom. Moore v. Simpson,* 549 U.S. 1027 (2006), citing *Scott v. Elo,* 302 F.3d 598, 607 (6th Cir. 2002), *cert. denied,* 537 U.S. 1192 (2003) and *Lorraine, supra.*

First, there were no errors of a constitutional magnitude which can be accumulated. for purposes of this Ground. Moreover, Mr. Bays' "cumulative error" is not cognizable in federal habeas. Therefore, his Eleventh Ground for Relief should be rejected.

70

## Conclusion

Mr. Bays' Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, (Doc. 16), should be denied. It is therefore respectfully recommended that judgment be entered in favor of the Respondent and against the Petitioner dismissing the Petition with prejudice.

February 18, 2012.

s/ **Michael R. Merz**
United States Magistrate Judge


### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), ©), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\Death Penalty\Bays\Bays Merits R&R.wpd