**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

RICHARD BAYS,

                         :

        Petitioner,                       Case No. 3:08-cv-076

                         :        District Judge Thomas M. Rose
     -vs-                         Magistrate Judge Michael R. Merz

WARDEN, Ohio State Penitentiary,

                         :

        Respondent.

---

# REPORT AND RECOMMENDATIONS ON CERTIFICATE OF APPEALABILITY

---

This capital habeas corpus case is before the Court on Petitioner's Motion for a Certificate of Appealability (Doc. No. 128). The Warden has filed a Response in Opposition (Doc. No. 133) and Petitioner has filed a Reply in support (Doc. No. 135).

Bays' original Petition pled eleven Grounds for Relief. Ground Nine and portions of Ground Four were dismissed as procedurally defaulted; Ground Ten was dismissed as not yet ripe (Entry and Order, Doc. No. 34). On a Report and Recommendations to that effect (the "Report," Doc. No. 109), Judge Rose dismissed the remaining Grounds (Entry and Order, Doc. No. 134). Over the Warden's objections, Bays filed an Amended Petition on May 11, 2012, adding two lethal injection claims which have not yet been addressed on the merits (Doc. No. 122) and are not before the Court on the instant Motion.

Bays seeks a certificate of appealability on all his Grounds for Relief except Ground Ten and on the denial of his motion to reconvene the evidentiary hearing. The Warden opposes any certificate of appealability.

1

## Standard for Certificate of Appealability

As provided in 28 U.S.C. § 2253, a petitioner seeking to appeal an adverse ruling in the district court on a petition for writ of habeas corpus or on a § 2255 motion to vacate must obtain a certificate of appealability before proceeding. The statute contemplates issuance by a circuit judge, but Rule 11(a) of the Rules Governing § 2254 cases provides:

> The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. A motion to reconsider a denial does not extend the time to appeal.

The Rule codifies prior practice in the Sixth Circuit. *Lyons v. Ohio Adult Parole Authority*, 105 F.3d 1063, 1073 (6th Cir. 1997), overruled in part on other grounds by Lindh v. Murphy, 521 U.S. 320 (1997); *Kincade v. Sparkman*, 117 F.3d 949, 953 (6th Cir. 1997)(adopting analysis in *Lozada v. United States*, 107 F.3d 1011, 1017 (2nd Cir. 1997).

To obtain a certificate of appealability, a petitioner must show at least that "jurists of reason would find it debatable whether the petition states a valid claim of denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). That is, it must find that reasonable jurists would find the district court's assessment of the petitioner's constitutional claims debatable or wrong or because they warrant encouragement to proceed further. *Banks v. Dretke*, 540 U.S. 668, 705 (2004); *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003). If the district court dismisses the petition on procedural grounds without reaching the constitutional questions, the petitioner must also show that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484. The procedural issue should

be decided first so as to avoid unnecessary constitutional rulings. *Slack*, 529 U.S. at 485, citing *Ashwander v. TVA*, 297 U.S. 288, 347 (1936)(Brandeis, J., concurring). The first part of this test is equivalent to making a substantial showing of the denial of a constitutional right, including showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further." *Slack,* 529 U.S. at 484 (2000), quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 (1983). The relevant holding in *Slack* is as follows:

> [W]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue (and an appeal of the district court's order  may be taken) if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

529 U.S. at 484.

The standard is higher than the absence of frivolity required to permit an appeal to proceed in forma pauperis. *Barefoot*, 463 U.S. at 893.

> . . . [O]bviously the petitioner need not show that he should prevail on the merits... Rather, he must demonstrate that the issues are debatable among jurists of reason;  that a court could resolve the issues [in a different manner];  or that the questions are 'adequate to deserve encouragement to proceed further.'

*Id.* n.4*;  accord, Miller-El,* 537 U.S. at 330 (citations omitted). A certificate of appealability is not to be issued *pro forma* or as a matter of course. *Id.* at 337. Rather, the district and appellate courts must differentiate between those appeals deserving attention and those which plainly do not. *Id.* A blanket certificate of appealability for all claims is improper, even in a capital case. *Frazier v. Huffman*, 343 F.3d 780, 788 (6th Cir. 2003), *citing Porterfield v. Bell,* 258 F.3d 484 (6th Cir. 2001).

**Ground One**

In his first Ground for Relief, Bays claimed he received ineffective assistance of trial counsel in several respects in the way his counsel handled the motion to suppress his confession. The Report recommended rejecting this claim because the underlying substantive claim, raised as Ground Five for Relief, had no merit and Bays could therefore not show prejudice resulting from his counsels' conduct as require by *Strickland v. Washington*, 499 U.S. 688 (1984)(Report, Doc. No. 109, PageID 1576).

Bays objected to that recommendation (Objections, Doc. No. 127, PageID 2081-2082) and incorporates his objections in his Motion for Certificate of Appealability (Doc. No. 128, PageID 2132-2133). One of those objections is that the "Magistrate Judge failed to consider all of the evidence that was submitted in the state post-conviction proceedings in support of this claim and instead limited his inquiry to the record that was before the Ohio Supreme Court on direct review." (Motion, Doc. No. 128, PageID 2132). That is inaccurate. In the Report, the Magistrate Judge quoted at length the summary of the post-conviction evidence as reported in the court of appeals' opinion affirming denial of post-conviction relief. (See Report, Doc. No. 109, PageID 1575-1576, quoting *State v. Bays*, No. 2003 CA 4, 2003 WL 21419173 at ¶ 2 (Ohio App. 2nd Dist. June 20, 2003)).

The second objection is that "AEDPA is inapplicable to *Strickland's* prejudice requirement in Bays' case because no Ohio state court has ever considered the cumulative prejudice resulting from all of trial counsel's errors." (Motion, Doc. No. 128, PageID 2132-2133.) As authority for the proposition that the state courts must consider cumulative prejudice resulting from all of trial counsels' errors, Bays cites *Cargle v. Mullin*, 317 F.3d 1196, 1212 (10th

Cir. 2003), which in turn relies on *Strickland's* "repeatedly stating prejudice inquiry in aggregate terms." The full opinion of the Second District Court of Appeals on the ineffective assistance claim is as follows:

> Bays claims that trial counsel was ineffective in addressing several issues at his suppression hearing and at trial: his drug use and borderline intellect as affecting the voluntariness of his confession, his drug use shortly before his confession, coercion of his wife to get him to confess, and the credibility of an inmate who testified against him. General evidence regarding Bays' drug use and borderline intellect has been thoroughly addressed in prior proceedings. We will briefly address each of the other issues raised under this assignment of error.

> At the hearing on the petition for postconviction relief, Bays' stepson, Ryan Scott Pleukharp, testified that he had seen Bays using crack cocaine in the bathroom at their house just before the police arrived to take him in for questioning on November 19, 1993. Bays confessed to Weaver's murder a short time later. Bays' wife partially corroborated Pleukharp's testimony by testifying that Pleukharp had told her of his observation the next day. Martha Bays also testified that she had later found drug paraphernalia on the ledge above the bathroom door. Martha Bays claimed that she had relayed all of this information to Bays' attorney at their first meeting but that he had not used it at the suppression hearing.

> The trial court found the testimony of Pleukharp and Martha Bays to be lacking in credibility, and, in our view, this conclusion was a reasonable one. On cross-examination, Martha Bays appeared to concede that, in an unrelated case, she had encouraged her son to deny involvement in a crime to which he had already confessed. Moreover, it had been determined in earlier proceedings in this case that the police had not engaged in coercive conduct and that any alleged impairment on Bays' part was not apparent to the officers. *See Bays*, 87 Ohio St.3d 15, 23, 1999–Ohio–216. Even if Bays had used crack cocaine at the time alleged, the voluntariness of his confession was not implicated if the police officers did not know of and take advantage of that fact. *State v. Smith,* 80 Ohio St.3d 89, 112, 1997–Ohio–355, citing *Colorado v. Connelly* (1986), 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473.

> Bays also offered testimony from his wife that police officers had encouraged her to convince Bays to confess in exchange for an eight-year sentence. As discussed supra, the trial court could have

reasonably concluded that Martha Bays' testimony lacked credibility. However, even if her testimony had been credible, Martha Bays conceded that, although she had told her husband to tell the police the truth, she had never told him of the alleged offer of leniency prior to his confession. As such, there is no likelihood that this evidence would have affected the outcome of a suppression hearing on the voluntariness of Bays' confession, and counsel was not ineffective in failing to present it.

Finally, Bays contends that his attorney was ineffective in failing to present the testimony of Richard Henson, Jr. about a fellow inmate, Larry Adkins. Adkins had testified at Bays' trial that Bays had admitted to Adkins his involvement in Weaver's murder. At the evidentiary hearing, Henson testified that Adkins had talked with him about his plan to get a deal from the state in exchange for testifying against Bays. Henson further testified that he had not been interviewed by Bays' attorney prior to trial and, although present at the courthouse, had not been called to testify on Bays' behalf. Even if we assume, for the sake of argument, that Bays' attorney should have interviewed Henson and did not do so, we would nonetheless conclude that counsel did not act ineffectively. Henson's testimony did not suggest that Adkins' statements were untruthful, only that he hoped to get a favorable deal from revealing his conversations with Bays. In other words, Henson's testimony related to Adkins' motivation in coming forward but not the truthfulness of his statements. As such, we are confident that Henson's testimony would not have affected the outcome of the trial.

The first assignment of error is overruled.

*Bays,* 2003 WL 2141913, ¶¶ 7-12. To summarize, the court of appeals found no deficient performance in failing to offer Martha Bays and Ryan Pleukarp's testimony because it was not credible and no prejudice from failing to offer Richard Henson's testimony because it would not have affect the outcome, assuming it was deficient performance not to interview Henson. The court of appeals found it unnecessary to re-discuss claims of ineffective assistance of trial counsel raised on direct appeal, but were clearly aware of them and rendered a final decision on the merits of the ineffective assistance of trial counsel claim taken as a whole.

Bays cites only Tenth Circuit law for the proposition that prejudice from counsels'

deficiencies must be considered cumulatively. Assuming that the Sixth Circuit would apply the same standard, there is no reason to issue a certificate of appealability on the First Ground for Relief because a fair reading of the Second District Court of Appeals opinion shows that it did consider all the claims of ineffective assistance of trial counsel together.

## Ground Six[1]

In his Sixth Ground for Relief, Bays contends his jury waiver was constitutionally invalid because it was not knowing, intelligent, and voluntary. In recommending dismissal of this claim, the Report notes that it was raised on direct appeal and rejected by the Ohio Supreme Court in a decision which the Report found was neither contrary to nor an objectively unreasonable application of clearly established Supreme Court precedent (Report, Doc. No. 109, PageID 1601-1610.)

Bays objected to this conclusion on two bases which are incorporated in his Motion (Doc. No. 128, PageID 2133-2134). His first objection is that the Report only addressed the jury waiver decision of the Ohio Supreme Court and not the separate decision made by the court of appeals on post-conviction (Objections, Doc. No. 127, PageID 2089-2091.)

It is correct that Bays raised his jury waiver claim in his petition for post-conviction relief. On appeal from dismissal of that claim, the court of appeals held:

> We note that Bays advances this same argument in his Fourth Assignment of Error in his direct appeal from his conviction and sentence-Montgomery App. No. 96-CA-118. Virtually his entire argument relies on evidence in the record, which permits this court to decide the issue in the direct appeal. The only evidence *dehors* the record regarding this matter is an affidavit signed by Bays

---

[1] Petitioner's Grounds for Relief are addressed in the order which Petitioner uses in his Motion for Certificate of Appealbility.

attached to his motion to amend the petition for post-conviction relief.

*State v. Bays*, No. 96-CA-118, 1998 WL 31514 *3 (Ohio App. 2nd Dist. Jan. 30, 1998). Bays asserts this was an unreasonable determination of the facts because Bays also relied on the affidavit of his wife Martha to support his jury waiver claim. The referenced affidavit is six pages single-spaced and covers topics from Martha Bays' mother's emotional problems (Bays Apx. Vol. 8, page 125, ¶ 7) to her own adultery with Bays while she was still married to her first husband (*Id.* at ¶ 15) to her interaction with the detectives when they first came to question Bays about the instant murder (*Id.* at ¶ 33). Out of these six pages, the sole paragraph which Bays now contends should have resulted in an evidentiary hearing on his post-conviction petition is ¶ 29:

> I talked to Rick's lawyer and told Rick's lawyer at the beginning that Rick was very slow. This occurred after Rick would call me after his lawyer had talked to him, and didn't understand what his lawyer was saying. I would have to try to explain to Rick what it was his lawyer was saying. When I explained this to Mr. Keller, Mr. Keller seemed only irritated at the fact that Rick needed to be explained something when he had tried to explain something to Rick on several occasions.

(Bays Apx. Vol. 8, page 127.) Bays' counsel interpret this paragraph as "clearly call[ing] the legitimacy of Bays' jury waiver into question . . ." (Traverse, Doc. No. 108, PageID 1529). This Court disagress with that characterization. Nothing in this paragraph or elsewhere in the Martha Bays' Affidavit discusses the jury waiver or the jury trial right at all. While Martha Bays' observations about her husband's slowness might be relevant to whether he understood the jury waiver, nothing in the Affidavit suggests ¶ 29 was offered for that purpose. Therefore the determination of the Second District Court of Appeals that this was not evidence on the jury waiver validity question is not an unreasonable determination of the facts in light of the evidence

presented. While the Report should have contained the analysis just offered, reasonable jurists would not find the dismissal of the Sixth Ground for Relief debatable either because the analysis was omitted from the Report as adopted or on the merits of this claim.

Bays also argues (Motion, Doc. No. 128, PageID 2134, n. 2) that the Ohio Supreme Court's disposition of the jury waiver claim on direct appeal was both an objectively unreasonable application of Supreme Court precedent and based on an unreasonable determination of the facts. He cites no authority, but references his argument in the Traverse, Doc. No. 108, at PageID 1523-1527. At those pages of the Traverse, Bays cites *Adams v. United States ex rel McCann*, 317 U.S. 269 (1942); and *Irvin v. Dowd*, 366 U.S. 717 (1961).[2]

*Irvin v. Dowd* is cited for the general proposition that "[i]mpartiality is central to the right of trial by jury." In asserting his jury waiver was not knowing and intelligent, Bays had claimed that he did not understand he was entitled to a fair and impartial jury and the Ohio Supreme Court, in rejecting this claim, had held he did not have a right to be specifically told that he had a right to an impartial jury. *Irvin* did not involve a jury waiver[3] and the Supreme Court offered no opinion therein about what was required for a valid jury waiver. In *Adams* the Supreme Court upheld the defendant's uncounseled jury waiver. While asserting the general rule that a waiver had to be "freely and intelligently made," the Court made no ruling on what must be shown to establish those facts. The holding of Adams is that a layman can validly waive a jury without the assistance of counsel and Bays has made no argument about how the Ohio Supreme Court decision in this case is an unreasonable application of that holding.

As best this Court understands it, Bays' argument that the Ohio Supreme Court made an

---

[2] He also cites *Williams v. Taylor*, 529 U.S. 362, 410-11 (2000), for the general law on the meaning of "unreasonable application" in 28 U.S.C. § 2254(d).

[3] *Irvin's* central ruling was that adverse publicity could be sufficiently great to require a change of venue to insure impartiality.

unreasonable determination of the facts from the evidence is directed to that court's conclusion that Bays' following his attorneys' advice to waive a jury somehow proves the act was involuntary (See Traverse, Doc. No. 108, PageID 1523-1524). The Ohio Supreme Court quite reasonably concluded that following an experienced attorney's advice does not prove one is acting involuntarily. There was no evidence that the attorneys made any threats or promises to Bays to get him to waive a jury.

Regarding whether the waiver was knowing and intelligent, Bays argues "[a] jury waiver obviously cannot be knowing and intelligent if the defendant believes that the state is free to try him before a panel of jurors who are predisposed to convict." (Traverse, Doc. No. 108, PageID 1524-1525). But where is the proof that Bays believed a jury could be biased? Refusing to make that finding on the record before them was not an objectively unreasonable determination of the facts by the Ohio Supreme Court.

Bays has not demonstrated that reasonable jurists would disagree with this Court's decision on the Sixth Ground for Relief and he should be denied a certificate of appealability on Ground Six.


**Ground Two**


In his Second Ground for Relief, Bays claims his attorneys provided ineffective assistance of trial counsel when they advised him to waive a jury trial and then failed to ensure that the waiver was knowing, intelligent, and voluntary. The Report recommended denial of this Ground for Relief on the basis that there was no prejudice from the advice, if it was deficient, because the waiver itself was knowing, intelligent, and voluntary as held with respect to Ground

Six.

In his Motion, Bays notes that the Report applied "Strickland's traditional prejudice inquiry to this claim," in contrast to the standards applied in *Miller v. Dormine*, 310 F.3d 600 (8th Cir. 2002), and *Torres v. Small*, No. 00-10388, 2008 WL 1817243 (C.D. Cal. Apr. 21, 2008)(Doc. No. 128, PageID 2134). He further notes that the Sixth Circuit has applied the *Strickland* prejudice standard to similar claims, but asserts the decisions do not squarely address the issue and thus *en banc* review would not be required. *Id.* at PageID 2135. In *Miller*, the Eighth Circuit found a structural error occurred when the petitioner was tried without a jury as a result of an attorney's constitutionally deficient performance. *Miller* is inapposite because in that case the jury waiver was based entirely on statements by counsel and without any colloquy with the defendant; Miller's assent to the waiver was presumed from his silence.

In *Spytma v. Howes*, 313 F.3d 363, 372 (6th Cir. 2002), the court held that an attorney's performance in failing to raise a jury waiver issue on appeal was subject to harmless error analysis. In *Jells v. Mitchell*, 538 F.3d 478 (6th Cir. 2008), the Sixth Circuit found that there was no deficient performance in advising a capital defendant to waive a jury and that even if the performance had been deficient, petitioner would have to show prejudice as required by *Strickland*, i.e., that there was a reasonable probability the outcome would have been different. *Id.* at 510-511. *Jells* appears to this Court to be directly on point and controlling precedent against Bays' position. Therefore reasonable jurists would not disagree with this Court's disposition of Ground Two. The Court of Appeals, should it wish to consider reversing *Jells* on this point, is itself empowered to issue a certificate of appealability, but this Court should not do so.

Bays' counsel assert that it would not be ethically improper for them to seek reversal of

*Jells* on appeal. The Magistrate Judge takes no position on that point, but notes that it does not constitute any part of the standard for granting a certificate of appealability.

## Ground Three

In his Third Ground for Relief, Bays claims his trial counsel were ineffective for (1) failure to introduce testimony of Richard Henson, Jr., to rebut the testimony of jailhouse informant Larry Adkins and (2) failure to introduce testimony from James Dalton, Hope Purdue, and Carrie Moore. This claim was raised in post conviction and the court of appeals remanded for an evidentiary hearing on this evidence. *Bays*, 1998 WL 31514 at *7. As the Report notes, Bays failed to introduce any evidence regarding Dalton, Purdue, or Moore on remand and also did not raise any claims relating to them on appeal to either the court of appeals or the Ohio Supreme Court. Because respondent had not raised a procedural default defense on this sub-claim, the Report reviewed it *de novo*.

As to the omitted Richard Henson testimony, the court of appeals held, on the second post-conviction appeal, that it was not deficient performance to fail to call Henson. *Bays*, 2003 WL 21419173 at *2-3. Given the content of what Henson would have testified to, the decision of the court of appeals was not an objectively unreasonable application of *Strickland*. Bays has offered no authority for the proposition that reasonable jurists would disagree with this conclusion.

As with Ground One, Bays asserts that the Report applies the wrong standard in failing to consider the cumulative prejudice from all of counsel's errors. For the reasons given with respect to the First Ground for Relief, that standard has not been adopted by the Sixth Circuit as yet and,

in any event, the Ohio Court of Appeals' decision on the second post-conviction relief appeal is correctly read as evaluating all the prejudice cumulatively, to the extent any errors of counsel were found.

Bays should be denied a certificate of appealability on his Third Ground for Relief.


## Ground Four

In his Fourth Ground for Relief, Bays asserts his trial counsel were ineffective in their conduct of the mitigation phase of the trial.

The Magistrate Judge found all of this claim procedurally defaulted except for the claim of failure adequately to investigate Bays' family history and background (Report and Recommendations, Doc. No. 23). Judge Rose adopted this Report over Petitioner's objections (Entry and Order, Doc. No. 34).

On the merits of the remaining failure to investigate claim, the Report concluded that the decision of the Ohio Court of Appeals on the first post-conviction relief appeal finding no deficient performance in this regard was neither contrary to nor an objectively unreasonable application of clearly established federal law (Report, Doc. No. 109, PageID 1590). As noted in the Report, the three-judge panel heard the substance of all the mitigation evidence which Bays claimed in post-conviction had been omitted; most of the mitigation evidence was presented by way of expert testimony of three psychologists who were able to interpret for the panel the "raw data" of facts about Bays' childhood injuries and limited learning ability. Bays has not shown how reasonable jurists could differ with the conclusion that presenting the evidence in this way was a prudent strategic choice. No certificate of appealability should issue on the Fourth Ground for Relief.

## Ground Five

In his Fifth Ground for Relief, Bays claims his constitutional rights were violated when his inculpatory statements to the police were admitted against him at trial. The Report recommended finding that the Ohio Supreme Court's decision on this ground for Relief was entitled to deference under 28 U.S.C. § 2254(d)(l)(Report, Doc. No. 109, PageID 1590-1601.)

While the Magistrate Judge remains persuaded that the analysis by the trial judge and the Ohio Supreme Court is correct, reasonable jurists could disagree and a certificate of appealability should issue on the Fifth Ground for Relief.

## Ground Seven

In his Seventh Ground for Relief, Bays contends that, if his confession is found to be inadmissible (Ground Five), then the remaining evidence is constitutionally insufficient for conviction under *Jackson v. Virginia*, 443 U.S. 307 (1979). The Ohio Supreme Court declined to consider this question, raised as the ninth proposition of law, on grounds of mootness, since it had held the confession was admissible. *State v. Bays*, 87 Ohio St. 3d 15,24 (1999).

In his Motion for Certificate of Appealability, Bays acknowledges Supreme Court precedent establishing that inadmissible evidence must be considered in determining whether the *Jackson* standard has been satisfied (Motion, Doc. No. 128, PageID 2139, citing *McDaniel v. Brown,* 568 U.S. 20 (2010), and *Lockhart v. Nelson,* 488 U.S. 33 (1988)). Bays' counsel believe *McDaniel* and *Lockhart* should be overruled and assert they have a good faith basis within the bounds of required professional conduct to make that argument, based on Justice Marshall's

dissent in *Nelson* (Objections, Doc. No. 127, PageID 2116; Motion, Doc. No. 128, PageID 2139).

Reasonable jurists could not disagree that, if the confession is admissible, there is sufficient evidence to convict. Reasonable jurists also could not disagree that courts are to apply *Jackson* considering evidence ruled inadmissible, as held in *McDaniel* and *Nelson*. If the Sixth Circuit finds the confession inadmissible, it can itself conduct the *Jackson* analysis under the *McDaniel* and *Nelson* standards. This will leave the case in a posture such that, if the United States Supreme Court grants certiorari on the confession issue, it can also reconsider *McDaniel* and *Nelson*. But reasonable jurists could not disagree with this Court's disposition of the Seventh Ground for Relief on the law as it now stands, so no certificate of appealability should issue on this Ground for Relief.

## Ground Eight

In his Eighth Ground for Relief, Bays asserts he was denied his right to a fair trial when the trial court refused to compel disclosure of the confidential informant who told police where Bays had discarded evidence. The Ohio Supreme Court rejected this claim on the merits when it was raised on direct appeal as the sixth proposition of law. *State v. Bays*, 87 Ohio St. 3d 15, 24-26 (1999). The Report recommended dismissing the claim because the Ohio Supreme Court decision was neither contrary to nor an objectively unreasonable application of clearly established federal law, particularly *Roviaro v. United States*, 353 U.S. 53 (1957).

The informant in question made an anonymous call to Detective Savage, the investigator who also took Bays' inculpatory statement. Bays alleged that the information given was so

detailed that the informant must have been an accomplice or eyewitness, but the Ohio Supreme Court noted that in neither his statement to Detective Savage or to the jailhouse informant, Larry Adkins, had Bays ever mentioned an accomplice and the crime took place inside Mr. Weaver's home where he and Bays were alone.

Bays also speculated that the information may have come from a family member, but since all the Bays family were collaborating in the defense, receipt of such information by the police would be "the functional equivalent of a state agent infiltrating the defense team." (Objections, Doc. No. 127, PageID 2120). This is, of course, rank speculation.

Bays argues this Court's conclusion on this Ground for Relief is debatable among reasonable jurists on the basis of *Wilson v. O'Dea*, 1994 U.S. App. LEXIS 673 (6th Cir. Jan. 10, 1994). In that case, the circuit court explained:

> The Supreme Court has held that the government has a "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States,* 353 U.S. 53, 59, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957). The privilege furthers the public interest in effective law enforcement, recognizes the obligations of citizens to communicate knowledge of the commission of crimes to law enforcement officials, and encourages such obligations by preserving the anonymity of such informants. *United States v. Whitley,* 734 F.2d 1129, 1137 (6th Cir. 1984). The privilege is not absolute, however. It "'is limited where the disclosure of an informer's identity, or of the contents of [an informer's] communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause.'" *Id.* (quoting *Roviaro*, 353 U.S. at 60).
>
> There is no fixed rule regarding disclosure. *United States v. Moore,* 954 F.2d 379, 381 (6th Cir. 1992). Rather, on a case-by-case basis, the courts must "'balance the public interest in protecting the flow of information against the individual's right to prepare a defense.'" Id. (quoting *Roviaro*, 353 U.S. at 62). "In balancing those competing interests in the context of a criminal case, courts must consider 'the crime charged, the possible defenses, the possible

significance of the informer's testimony, and other relevant factors."' *Holman v. Cayce,* 873 F.2d 944, 946 (6th Cir. 1989) (quoting Roviaro, 353 U.S. at 62).

The identity of "an informant must be disclosed only upon a showing by the defendant that disclosure is essential to a fair trial." *Moore*, 954 F.2d at 381. Where the informant is not a participant or witness to the events underlying the defendant's potential criminal liability, the balance is heavily in favor of nondisclosure. *Holman*, 873 F.2d at 946 (citing *United States v. Sharp*, 778 F.2d 1182, 1186 n.2 (6th Cir. 1985), *cert. denied,* 475 U.S. 1030, 89 L. Ed. 2d 342, 106 S. Ct. 1234 (1986)). In cases involving "tipsters" who merely convey information to the government but neither witness nor participate in the offense, disclosure is generally not material to the outcome of the case and is therefore not required. *United States v. Harrington*, 951 F.2d 876, 878 (8th Cir. 1991); *Phillips v. Cardwell,* 482 F.2d 1348, 1349-50 (6th Cir. 1973)(*per curiam*). Where the informant is not a participant or witness to the offense, disclosure occurs only in exceptional circumstances where the defendant demonstrates "some concrete circumstance that might justify overriding both the public interest in encouraging the flow of information, and the informant's private interest in his or her own safety." *United States v. Martinez*, 922 F.2d 914, 921 (1st Cir. 1991).

*Id.* at *9-12. In *Wilson,* the Sixth Circuit reversed the trial court based on a failure to disclose where the informant had important exculpatory testimony to give. There is no such showing in this case. A certificate of appealability should be denied on the Eighth Ground for Relief.


## Ground Nine


In his Ninth Ground for Relief, Bays asserts that "[t]he state appellate courts' arbitrary refusal to review life sentences imposed in similar cases as part of a statutorily mandated proportionality review denied Bays due process of law under the Fourteenth Amendment." (Petition, Doc. No. 16.) On the Warden's Motion, the Magistrate Judge recommended that this Ground for Relief be dismissed as procedurally defaulted (Report, Doc. No. 23, PageID 245-

247). District Judge Rose adopted this recommendation over Bays' objections (Doc. No. 34). Because the law on what is required to "fairly present" a claim to the state courts is not rigidly established, the Magistrate Judges agrees that reasonable jurists could dispute whether that standard was met in this case.

However, reasonable jurists would not dispute that Bays is not entitled to relief on the merits of this claim. State courts are not constitutionally required to conduct a proportionality analysis when imposing or affirming a capital sentence. *Pulley v. Harris*, 465 U.S. 37, 45 (1984).

Therefore no certificate of appealability should be issued on the Ninth Ground for Relief.

**Ground Eleven**

In his Eleventh Ground for Relief, Bays argues that the cumulative effect of the constitutional errors shown in this case violated his constitutional rights. The Report recommended denial of this Ground because there were no constitutional errors to accumulate and the Sixth Circuit has not recognized this cumulative error claim for relief (Report, Doc. No. 109, PageID 1616).

In seeking a certificate of appealability on this Ground for Relief, Petitioner argues that other circuits have recognized such a claim which must mean that reasonable jurists disagree. He also asserts that "a certificate of appealability must be granted if other federal courts have accepted the legal argument advocated by the petitioner." (Motion, Doc. No. 128, PageID 2146, citing *Lave v. Dretke*, 416 F.3d 372 (5th Cir. 2005). Petitioner's argument substantially overstates the holding in Lave. There the Fifth Circuit found that three circuits had declined to hold *Crawford v. Washington*, 541 U.S. 36 (2004), applied retroactively while one (the Ninth) had

found the case retroactively applicable. The Fifth Circuit was considering the question of appealability without the benefit of a lower court opinion and held merely that, on this particular issue, reasonable jurists had disagreed. It did not purport to interpret the AEDPA to the effect that a district court "must grant" appealability where there is a circuit split. This was in a case where the Fifth Circuit had not yet decided the underlying issue.

In the instant case, the Sixth Circuit has decided the underlying issue. This Court should therefore deny a certificate of appealability on Ground Eleven. The Sixth Circuit will of course be at liberty to grant the certificate if it wishes to reconsider its position in light of that taken by other circuits, but our duty is to follow the circuit precedent.

## Denial of Reopening the Evidentiary Hearing

The Court had granted an evidentiary hearing on the First, Second, and Sixth Grounds for Relief. The hearing commenced on January 20, 2011, and was recessed to allow Petitioner to depose Dr. Barbara Bergman, a psychologist. Before the hearing could be reconvened, the Supreme Court decided *Cullen v. Pinholster*, 563 U.S. _ , 131 S.Ct. 1388 (2011), in which it held that a federal court's review of a state court decision under 28 U.S.C. § 2254(d)(l) is strictly limited to "review of the state court record," and that evidence acquired through use of an evidentiary hearing may not be considered. *Id*. at 1399. Based on *Pinholster*, the Court declined to consider any evidence already taken at the evidentiary hearing and refused to reconvene the hearing.

Petitioner seeks a certificate of appealability on whether that ruling was in error. He asserts that this Court's determination that the state court decisions on Grounds One, Two, and

Six were not objectively unreasonable applications of Supreme Court law is erroneous and therefore *Pinholster* does not bar an evidentiary hearing. The Magistrate Judge agrees that if the Sixth Circuit grants a certificate of appealability on any of these three Grounds for Relief and reverses the 2254(d)(1) holding, it should also allow an appeal on the *Pinholster* question. It will then be in a position to weigh the evidence itself or remand for consideration by this Court.

The Magistrate Judge does not agree, however, with Bays' assertion that "*Pinholster* is only applicable to claims under § 22554(d)(l); [and] the decision does not preclude an evidentiary hearing when a petitioner is challenging a state court's subsidiary factual findings under§ 2254(d)(2)" (Motion, Doc. No. 128, PageID 2147). In *Pinholster* itself, the Court made clear that review under § 2254( d)(2) is limited to the evidence presented in the state court proceedings. *Pinholster*, 131 S. Ct. 1388, 1419, n. 7. Bays points to no post-*Pinholster* "reasonable jurist" who disputes this point.

## Conclusion

In accordance with the foregoing analysis, it is respectfully recommended that a certificate of appealability be issued on Ground Five but otherwise denied.

October 31, 2012.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service

listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).