# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

RICHARD BAYS,

        Petitioner,    :    Case No. 3:08-cv-076

- vs -    District Judge Thomas M. Rose
    Magistrate Judge Michael R. Merz

WARDEN, Ohio State Penitentiary,

:

        Respondent.

# DECISION AND ORDER

This capital habeas corpus case is before the Court on Petitioner's Second Motion for Leave to File an Amended Petition (Doc. No. 153). The Warden opposes the Motion (Doc. No. 157) and Petitioner has filed a Reply in support (Doc. No. 159). Motions to amend are within the decisional authority of United States Magistrate Judges.

**The Parties' Positions**

Bays moves to amend his Petition to add the following Grounds for Relief:

> **Ground Fourteen**: Richard Bays is mentally retarded, and as a result his execution is barred under *Atkins v. Virginia*, 536 U.S. 304 (2002).
>
> **Ground Fifteen:** Richard Bays was deprived of his constitutional right to the effective assistance of counsel in his post-conviction *Atkins* proceeding.

(Motion, Doc. No. 153-1, PageID 6587-88.)

1

The Warden opposes the Motion asserting the new grounds are (1) barred by the statute of limitations, (2) both unexhausted and procedurally defaulted, (3) not brought with the required diligence, and (4) a remand is inappropriate for a ground for relief previously dropped and a ground where relief is statutorily precluded.

**Relevant chronology[1]**

The murder of Charles Weaver, for which Bays stands sentenced to death, occurred November 15, 1993, when Bays was approximately 28 years old[2]. Bays was indicted June 14, 1994. The trial was completed and the three-judge trial panel sentenced Bays to death on December 15, 1995. Because the crime occurred before January 1, 1995, Bays' direct appeal was to the Ohio intermediate court of appeals for the Second District which affirmed the conviction January 30, 1998. *State v. Bays,* 1998 Ohio App. LEXIS 227 (2nd Dist. Jan. 30, 1998). The Ohio Supreme Court affirmed. *State v. Bays,* 87 Ohio St. 3d 15 (1999).

While the direct appeal was pending, Bays filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 on July 29, 1996. The trial court denied relief. However, on January 30, 1998, the same day that it affirmed the conviction and sentence, the Second District Court of Appeals remanded the post-conviction proceeding for an evidentiary hearing. *State v. Bays,* 1998 Ohio App. LEXIS 226 (2nd Dist. Jan. 30, 1998). After hearing, the trial court again denied relief and this time the court of appeals affirmed on June 20, 2003. *State v. Bays*, 2003 Ohio 3234, 2003 Ohio App. LEXIS 2897 (2nd Dist. Jun. 20, 2003).

While Bays' first post-conviction petition was pending, the United States Supreme Court

---

[1] Record references for the dates in this chronology can be found in the Magistrate Judge's Report and Recommendations on the merits (Doc. No. 109).
[2] Bays first IQ test is reported to have occurred in 1976 when he was eleven.

2

decided *Atkins v. Virginia*, 536 U.S. 304 (2002).  The Ohio Supreme Court determined *Atkins* claims on behalf of those already convicted could be brought in a new post-conviction petition, regardless of whether a defendant had previously filed such a petition, and set a deadline of June 9, 2003, for doing so.  *State v. Lott,* 97 Ohio St. 3d 303 (2002).  Bays filed an *Atkins* post-conviction petition on April 4, 2003.  It was dismissed involuntarily without hearing and the court of appeals remanded with directions to fund an expert witness on the mental retardation issue.  *State v. Bays,* 159 Ohio App. 3d 469 (2nd Dist. 2005).  The trial court obeyed the mandate, and on June 28, 2005, granted funds not to exceed $5,000 to retain Dr. David Hammer "to evaluate [Bays] and to assist his counsel in preparing evidence on the factual issue of Petit ioner's mental retardation status." (Entry, Appendix to Return of Writ, Doc. No. 151, PageID 5822).[3]  However, Bays voluntarily dismissed the *Atkins* petition on November 9, 2007, pursuant to Ohio R. Civ. P. 41(A)(Notice, Appendix to Return of Writ, Doc. No. 151, PageID 5825).  Bays was at the time represented by Assistant Ohio Public Defender Ruth Tkacz.  *Id.*

Under Ohio law a plaintiff can dismiss a civil complaint without stating a reason, without prejudice, and without the consent of either the opposing party or the court until the first witness is sworn in a non-jury proceeding.  Thus Ms. Tkacz stated no reason for the dismissal in the Notice.  However, when she filed Bays' Notice of Intention to File Habeas Corpus Petition in this Court, she stated the dismissal was done "after being evaluated for his mental retardation status." (Doc. No. 3, PageID 14.)  That Notice was also signed by Assistant Ohio Public Defender Melissa Callais.  *Id.*  Both women were then appointed as counsel for Bays in this proceeding under 21 U.S.C. § 848(q)(4)(B), the then-authorizing statute (Order of March 17, 2008, Doc. No. 6).  Sometime between then and September 30, 2008, Ms. Callais left the Ohio

---

[3] On March 6, 2013, the State of Ohio refiled the Appendix in this case electronically (Doc. Nos. 10, 151).  All references to the Appendix herein are to the electronic version.

3

Public Defender's Office and became employed by Steven Nolder, the Federal Defender for this judicial district, in the Capital Habeas Unit. On that date, the Court formally substituted Mr. Nolder for Ms. Callais with Mr. Nolder's designation of her "as responsible for litigating this case" and with Ms. Tkacz continuing as the trial attorney (Motion, Doc. No. 14, and notation order granting; Doc. No. 15). On November 16, 2008, Ms. Tkacz and Ms. Callais filed the Petition the only mention of mental retardation therein is a repetition of the statement "[o]n November 9, 2007, after being evaluated for his mental retardation status, Bays voluntarily withdrew his *Atkins* petition." (Petition, Doc. No. 16, PageID 67.) The Petition further avers "Bays functions at the borderline level of intelligence, with an I.Q. of 74. *Id.* at ¶ 66, PageID 93.

On July 27, 2010, the Court granted Ms. Tkacz's Motion to Withdraw for medical reasons (Doc. No. 62 and notation order granting). On the same day the Court granted Ms. Callais'[4] Motion to be appointed trial attorney and appointed Carol Wright, supervisor of the Federal Defender's Capital Habeas Unit, as co-counsel (Doc. No. 63 and notation order granting). On March 7, 2012, Carol Wright filed a Notice substituting herself as trial attorney for Ms. Jackson and designating Assistant Federal Defender Sharon A. Hicks as co-counsel. It was represented to the Court that Ms. Jackson was "no longer assigned to the above styled case." (Doc. No. 113, PageID 1625.) Shortly thereafter Ms. Jackson left the Federal Defender's Office and withdrew altogether (Doc. No. 117 and notation order granting). On the same day, Ms. Hicks withdrew as co-counsel and Ms. Barnhart, also an Assistant Federal Defender, entered her appearance (Doc. Nos. 118, 119). Ms. Wright as trial attorney and Ms. Barnhart as co-counsel continue to represent Bays as of the date of this Order.[5]

---

[4] By then Meliaa Callais was known as Melissa Jackson.
[5] Mr. Nolder has left the Federal Defender's Office, but has not withdrawn from this case, nor has his successor, Dennis Terez, whom the Magistrate Judge understands is designated Interim Federal Defender, entered an appearance. Given that Ms. Wright has now substituted as trial attorney, these facts have no significance from the

4

**The Standard for Motions to Amend**

28 U.S.C. § 2242 provides in pertinent part "[i]t [the application for a writ of habeas corpus] may be amended or supplemented as provided in the rules of civil procedure applicable to civil actions." The general standard for considering a motion to amend under Fed. R. Civ. P. 15(a) was enunciated by the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of any allowance of the amendment, futility of amendment, etc.
> -- the leave sought should, as the rules require, be "freely given."

371 U.S. at 182. In considering whether to grant motions to amend under Rule 15, a court should consider whether the amendment would be futile, i.e., if it could withstand a motion to dismiss under Rule 12(b)(6). *Hoover v. Langston Equip. Assocs.*, 958 F.2d 742, 745 (6th Cir. 1992); *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986); *Marx v. Centran Corp.*, 747 F.2d 1536 (6th Cir. 1984); *Communications Systems, Inc., v. City of Danville*, 880 F.2d 887 (6th Cir. 1989). *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983); *Neighborhood Development Corp. v. Advisory Council*, 632 F.2d 21, 23 (6th Cir. 1980). Likewise, a motion to amend may be denied if it is brought after undue delay

---

Court's perspective, as it is the trial attorney who has ultimate responsibility. S. D. Ohio Civ. R. 83.4(a).

or with dilatory motive. *Foman v. Davis*, 371 U.S. 178 (1962)*; Prather v. Dayton Power & Light Co.*, 918 F.2d 1255, 1259 (6th Cir. 1990).

**Standard for Stay and Abeyance**

The United States Supreme Court has decided that district courts have authority to grant stays in habeas corpus cases to permit exhaustion of state court remedies in consideration of the AEDPA's preference for state court initial resolution of claims. It cautioned, however,

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). . . .
> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.

*Rhines v. Weber*, 544 U.S. 269, 277-278 (2005). It also directed district courts to place reasonable time limits on the petitioner's trip to state court and back.

## Analysis

**Ground Fifteen Does Not State a Claim Upon Which Habeas Corpus Relief Can Be Granted**

In his proposed Fifteenth Ground for Relief Bays asserts he was deprived of his constitutional right to the effective assistance of counsel in his post-conviction *Atkins* proceeding.

The Warden argues relief on this claim is barred by 28 U.S.C. § 2254(i) which provides "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  (Opposition, Doc. No. 157, PageID 7389.)

Bays responds that persons tried after the *Atkins* decision – after June 20, 2002 – "have the right to effective assistance regarding their *Atkins* claims from their *trial* counsel. . . . Equal Protection demands that petitioners asserting a retroactively available *Atkins* claim, like Bays, have the same constitutional rights as those defendants who were tried after *Atkins*. " (Reply, Doc. No. 159, PageID 7414.)

The United States Supreme Court has held that the constitutional right to appointed counsel extends to the first appeal of right and no further. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600 (1974). There is, for example, no constitutional right to appointed counsel in habeas cases. *McCleskey v. Zant,* 499 U.S. 467 (1991). Post-conviction state collateral review is not a constitutional right, even in capital cases. *Murray v. Giarratano*, 492 U.S. 1 (1989); *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Estelle v. Dorrough*, 420 U.S. 534, 536 (1975); *Kirby v. Dutton,* 794 F.2d 245 (6th Cir. 1986)(claims of denial of due process

and equal protection in collateral proceedings are not cognizable in federal habeas because not constitutionally mandated). *Accord, Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir. 2001); *Johnson v. Collins,* 1998 WL 228029, 1998 U.S. App. LEXIS 8462 (6th Cir. 1998); *Trevino v. Johnson*, 168 F.3d 173 (5th Cir. 1999); *Zuern v. Tate*, 101 F. Supp. 2d 948 (S.D. Ohio 2000), *aff'd.*, 336 F.3d 478 (6th Cir. 2003). Because there is no constitutional right to an attorney in post-conviction proceedings, a habeas petitioner cannot claim unconstitutional deprivation of effective assistance of counsel in such proceedings. *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 425 (6th Cir. 2003), *citing Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991).

The equal protection argument is not elaborated at all.[6] Presumably Bays is adverting to the so-called equal protection component of the Fifth Amendment, since the Equal Protection Clause itself does not govern conduct of the federal government. *See Bolling v. Sharpe,* 347 U.S. 497 (1954). Bays offers no Supreme Court or Sixth Circuit authority even analogously supporting this claim. Most recently in deciding *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), the Supreme Court refused to extend the constitutional right to effective assistance of counsel to post-conviction proceedings even in those States where the only way to raise **any** post-judgment *Strickland* claim was by collateral attack. In fact the same equal protection argument made here was urged on the Court in *Martinez* and rejected. Brief for Petitioner in *Martinez* at p. 14, et seq. (available at www.supremecourtreview.org).

Nor did the Supreme Court in deciding *Atkins* even suggest that persons already convicted but who had a colorable *Atkins* claim had a right to a new trial on the *Atkins* claim. In fact, when this Court attempted in a post-*Atkins* proceeding to hold against the State of Ohio a

---

[6] "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument.'" *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

8

mental retardation finding made at trial, the Supreme Court unanimously rejected that approach and held:

> Our opinion did not provide definitive procedural or substantive guides for determining when a person who claims mental retardation "will be so impaired as to fall within [*Atkins* compass]."  We le[ft] to the States the task of developing appropriate ways to enforce the constitutional restriction."

*Bobby v. Bies*, 556 U.S. 825, 831, *quoting Atkins, supra,* at 317.  The Court implicitly approved of the process adopted in *State v. Lott*, 97 Ohio St. 3d 303 (2002).  *Id.* There was no hint that an *Atkins* claimant is entitled to a new trial or that effective assistance of counsel in a post-conviction proceeding to litigate the retroactive applicability of *Atkins* is a constitutional trial right.  Before *Atkins*, of course, it would not have been ineffective assistance of trial counsel to fail to make an *Atkins* claim, since the Supreme Court had previously rejected the right upheld in *Atkins*.  *Penry v. Lynaugh,* 492 U.S. 302 (1989).

The Court concludes the proposed Fifteenth Ground for Relief does not state a claim upon which federal habeas corpus relief can be granted.  The Motion to Amend to add that Ground is DENIED on that basis.

**Both Proposed Grounds for Relief Are Barred by the Statute of Limitations**

The one-year statute of limitations for habeas corpus claims adopted by the AEDPA runs from the latest of one of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244 (d)(1).

Bays asserts his claim is timely when measured under § 2244(d)(1)(D) because, he says, exercising due diligence, he discovered his present *Atkins* claim less than one year before he filed the instant Motion. The relevant factual discovery is claimed to be Bays' learning that he did not, as he had been told, score 78 on his IQ test in 2007. Instead, he learned this from Dr. Gale Roid that the 2007 test was invalid. Bays counsel refers the Court to Dr. Roid's Affidavit dated January 28, 2013 (Doc. No. 153-4, PageID 6780-98). Dr. Roid reports that:

> the test results for Richard Bays, a 42 year old inmate on death row in Ohio were referred to me for review by Dr. Kevin McGrew of Minnesota, and the Office of the Federal Public Defender for the Southern District of Ohio, Capital Habeas Unit (Attorneys, Carol Wright and Erin Gallagher Barnhart, Counsel for Mr. Bays).

*Id.* at 6781. He does not aver when or how the question was referred to him. He concludes:

> After a careful study of the SB5 Record Form, as detailed in this report, I found sufficient evidence of scoring errors to conclude, in my scientific, professional, and expert opinion, with a reasonable degree of scientific certainty, that a reasonable estimate of the IQ of Mr. Bays is a score at or below an IQ of 70, qualifying as Intellectual Deficiency.

*Id.* Dr. Roid concludes further:

10

> The errors of scoring detailed above result in a reduction of the FSIQ score to a corrected observed score of 73, which must be further adjusted downward by 2 points to correct for norm obsolesce [sic], resulting in a final FSIQ score of 71. The confidence interval for this score is 66 to 76.
>
> Several reasons exist to assess the true IQ score for Mr. Bays at the low end of this confidence interval.
>
> * * * *
>
> For these multiple reasons, the conclusion can be drawn. The combination of the evidence from the reliable ABIQ, the failure to employ the drop-back rule, the possible 66 in FSIQ, and the presence of multiple scoring and administration errors, lead me to my scientific, professional, and expert opinion that there is a reasonable degree of scientific certainty that Mr. Bays; IQ is at or below 70, indicating intellectual deficiency.

*Id.* at 6791-92.

Counsel admit they had reason to "question the expert evaluations and conclusion from his initial *Atkins* proceedings," "[b]ut their client's *Atkins* claim did not become indisputable until they learned from Dr. Roid of the significant scoring errors that had incorrectly inflated the 2007 IQ score." (Reply Memo, Doc. No. 159, PageID 7416.) Counsel do not tell the Court when they had reason to question the prior evaluations or when they referred the matter to Dr. Roid.

Dr. Kevin McGrew's Affidavit dated March 15, 2013, concludes:

> I, Dr. Kevin S. McGrew, have reviewed Mr. Bays' complete set of intelligence test results (spanning 31 years) in the context of accepted scientific principles, clinical and professional methods and standards, and reliable principles of science. As a result of this process and the scientific information and professional principles outlined in this statement, it is my scientific, professional and expert opinion, that I provide with a reasonable degree of scientific certainty, that the best estimate of Mr. Bays' true general intelligence IQ score falls within the range of 65 to 75 IQ points, with the mid-point "average" for Mr. Bays being an IQ of 70. This

11

> range of scores is consistent with, and satisfies the diagnosis requirements of, the AAIDD's first prong of its mental retardation (MR) / intellectual disability (ID) test as it represents a score range that is at or below two standard deviations from the mean when compared to the general population. It is also my opinion that Mr. Bays' special education school records are consistent with placement in a program for individuals with mild MR/ID before the age of 18.

(Motion for Leave to Amend, Doc. No. 153, PageID 6703.) Dr. Roid's Affidavit was among the materials reviewed by Dr. McGrew. *Id.* at PageID 6702. Dr. McGrew reports that he is responding to a request from Carol Wright, but he does not say when that request was made. Counsel indicate they retained Dr. McGrew sometime before November 2012 and he then "alerted Bays that he found himself questioning some of the scoring [for Bays' 2007 test.]" (Reply Memo, Doc. No. 159, PageID 7419.) It is apparently on the basis of this questioning from Dr. McGrew of the 2007 scoring that counsel believe the statute runs from November 2012.

To establish that the referral to Dr. McGrew sometime before November 2012 constitutes due diligence, Bays relies on *Helmig v. Kemna*, 2005 WL 2346954 (E.D. Mo. 2005) for the proposition that a habeas petitioner does not have to "'scorch the earth' for any and all possible habeas grounds" and *Gapen v. Bobby,* Case No. 3:08-cv-280, unreported decision of March 8,2012, of Judge Walter Rice of this Court, for the proposition that a habeas petitioner "is not required to look for evidence he has no reason to know about." *Id.* at PageID 3052. Bays then notes that the newly-discovered evidence in *Helmig* was information given to the jury that had not been introduced in evidence (Reply, Doc. No. 159, PageID 7417). Similarly, on a knowing use of perjured testimony claim, there was no reason to know until the witness sent a recanting affidavit. *Id.* at PageID 7418, *citing Rivera v. Nolan*, 538 F. Supp. 2d 429 (D. Mass. 2008).

There is a profound difference between "scorching the earth" for all possible habeas claims and recognizing the possibility of a possible *Atkins* claim in this case. Bays' possible

mental retardation[7] was an issue at trial in 1995 and some of the evidence evaluated by Dr. McNew was introduced at trial along with expert testimony.  It was the issue in Bays' first *Atkins* post-conviction proceeding and the evaluations by Drs. Hammer and Bergman were generated as part of that proceeding in 2007.  Dr. Bergman was called as a witness by the State at the evidentiary hearing held in this case before *Cullen v. Pinholster,* 563 U.S. ___, 131 S. Ct. 1388 (2011), made it impossible to consider her testimony; she was extensively cross-examined by current counsel in 2011   on her mental retardation evaluation made of Bays in 2007. Bays' mental retardation *vel non* has been a potential habeas corpus claim of his since *Atkins* was decided over eleven years ago.  There is a large conceptual distance between claims one has had to "scorch the earth" to find and ones which have been in a case for many years on which new evidence is uncovered once an investigation has been done.  And in any event, Dr. Roid's opinion does not make Bays' *Atkins* claim "indisputable":  reviewing all the evidence, including the Roid Affidavit, Dr. McNew rates his IQ as 70, presumptively not mentally retarded under *Lott*.

Any suggestion that delay is excused by the fact that Ms. Tkacz could not be expected to raise her own ineffectiveness is belied by the fact that an attorney with the Capital Habeas Unit of the Federal Defender's Office has represented Bays in a conflict-free status since Ms. Callais/Jackson left the Ohio Public Defender's Office and joined the Federal Defender, to wit, September 30, 2008, before the Petition was filed.

Counsel have not shown they exercised due diligence in investigating Bays' *Atkins* claim.

---

[7] The Magistrate Judge understands that there is now a consensus among psychologists that the term "mental retardation" should be avoided as a category and "intellectual disability" is now the preferred term.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 31 (5th Ed. 2013); American Association on Intellectual and Developmental Disabilities, Intellectual Disabilities; Definition, Classification, and Systems of Support, 3, 6, (11th Ed. 2010).  This opinion continues to use the term "mental retardation" because that term is given legal significance by *Atkins*.

13

In any event, Dr. Roid's opinion on the scoring of the 2007 test is not the factual predicate for Bays' *Atkins* claim.  Rather, the predicate for the Fourteenth Ground for Relief must be that Bays is mentally retarded.

Nor is Dr. Roid's opinion the factual predicate for the claim that Ms. Tkacz provided ineffective assistance in the *Atkins* post-conviction proceeding, the Fifteenth Ground for Relief. Present counsel asserts that ineffectiveness because Ms. Tkacz "did not determine that Bays' score needed to be adjusted to account for norm obsolesce [sic] (i.e. the Flynn Effect) and because she based her decision to voluntary [sic] dismiss the *Atkins* petition in part on an experienced expert's use of an inappropriate instrument to assess the adaptive-deficits prong." (Reply, Doc. No. 159, PageID 7416.)  This begs the question of when present counsel learned about the Flynn Effect and examined the record with that problem in mind.  Further, present counsel knew about Dr. Bergman's assessment and indeed cross-examined her about it in this Court on January 21, 2011 (Transcript, Doc. No. 92), more than two years before the instant Motion was filed.

The Motion to Amend is denied on the additional ground that both new Grounds for Relief are barred by the statute of limitations and would be subject to dismissal on that basis.

**Bays' Dilatory Motive Also Bars the Amendment**

The underlying merits of this case have already been decided by Judge Rose.  Without the Second Motion to Amend, the only remaining matter would be the lethal injection claims added by the First Motion to Amend.  Because a claim that Bays is mentally retarded could have been made as soon as the Capital Habeas Unit began representing Bays, the Court finds that

waiting from September 30, 2008, until May 24, 2013, to attempt to add the *Atkins* claims evinces a dilatory motive on the part of Bays' counsel and the Motion to Amend is denied on that basis as well.

**Bays Has Not Established That He Is Actually "Innocent of the Death Penalty"**

Bays asserts that, even if his new Grounds for Relief are untimely, he qualifies for the actual innocence exception to the statute of limitations (Reply, Doc. No. 159, PageID 7421-22). The Court acknowledges that, if Bays proves he is mentally retarded, he cannot lawfully be executed, a legal condition referred to infelicitously as being "innocent of the death penalty," as opposed to being actually innocent of the underlying crime. *See Sawyer v. Whitley,* 505 U.S. 333 (1992).

Bays argues that the Supreme Court has recognized actual innocence as an exception to the statute of limitations, rather than as a basis for equitable tolling of the statute. The controlling precedent on this point is now the Supreme Court's decision in *McQuiggin v. Perkins*, 569 U.S. ___, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013).

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence"

> purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.
>
> * * *
>
> [A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.

*McQuiggin v. Perkins*, 569 U.S. ___, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019, 1035 (2013).

Bays asserts that if he can show mental retardation by clear and convincing evidence he will have satisfied the *Sawyer* test. In one portion of his Reply, he says this should be decided "after the factual record is fully developed in the pending state-court proceedings." (Reply, Doc. No. 159, PageID 7422.) In a later portion, he claims he has already shown his mental retardation. This Court agrees with the first position taken by Bays: nothing in this Decision should be seen as in any way impinging on the authority of the Greene County Common Pleas Court to decide the matter now pending before it, to wit, Bays' effort to reopen/refile his *Atkins* post-conviction action.

**Bays' Asserted Mental Incompetence Is Not an "Extraordinary Circumstance" Warranting Tolling of the Limitations Period**

Bays asserts that his mental incompetence qualifies him for equitable tolling of the statute of limitations, relying on *Ata v. Scutt*, 662 F.3d 736 (6th Cir. 2011)(Reply, Doc. No. 159, PageID 7523). *Ata* is inapposite. Muzaffer Aza was without counsel at the time he should have filed his habeas corpus petition. *Ata*, 662 F.3d at 740. Bays, in contrast, has been represented by experience habeas corpus counsel continuously since early 1998. His own mental incompetence, supposing it had been proved, would not excuse his delay.

16

**Decision on Respondent's Procedural Default Defense Would Be Premature**

The Warden asserts that Bays' proposed added Grounds for Relief are both unexhausted and procedurally defaulted. As the Magistrate Judge reads the motion papers, Bays is attempting to exhaust by moving to withdraw his voluntary dismissal or to file a successive Ohio Revised Code § 2953.23 petition. Since those proceedings have not yet been completed, the Court agrees that whatever remedy the Ohio courts might provide has not yet been exhausted.

With respect to procedural default, the Sixth Circuit requires that such a defense be shown by demonstrating that the state courts have actually enforced a procedural rule which bars their consideration on the merits of a habeas petitioner's claim. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), *citing County Court of Ulster County v. Allen*, 442 U.S. 140, 149, (1979). This requirement may be relaxed when it is very clear from past practice that an Ohio procedural rule would be enforced against a petitioner, but here the question is posed for decision by the Greene County Common Pleas Court, and it would hardly be an exercise in comity for this Court to presuppose what that court will do with the pending motion to strike or otherwise in the case.

**Certification to the Ohio Supreme Court Would Not Likely Be Useful**

Bays asserts "it is unclear if the State of Ohio provides a corrective process for claims of ineffective assistance of post-conviction *Atkins* counsel." (Motion, Doc. No. 153, PageID 6583.) If this Court decides that there is no such corrective process, Bays asks the Court to go ahead and decide the claim. In the alternative, Bays asks this Court to "stay these proceedings and certify

this question to the Ohio Supreme Court under Ohio S. Ct. R. Prac. 18.1.  *Id.*

To the extent Bays proposes to assert a federal constitutional claim that he has a right to the effective assistance of counsel in post-conviction *Atkins* proceedings, the Court has decided that no such right exists as a predicate to deciding that an amendment to plead a ground for relief (Fifteen) based on such a right would be futile.  To the extent Bays may wish to assert a non-federal right to such assistance, that it no concern of this federal habeas court and the Court should decline to certify any relevant question to the Ohio Supreme Court.

August 22, 2013.

s/ *Michael R. Merz*<br>United States Magistrate Judge