IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

RICHARD BAYS,

          Petitioner,    :    Case No. 3:08-cv-076

  - vs -                           District Judge Thomas M. Rose
                                       Magistrate Judge Michael R. Merz

WARDEN, Chillicothe Correctional
  Institution,
                                      :
         Respondent.

# DECISION AND ORDER

This capital habeas corpus case is before the Court on Petitioner's Renewed Motion for Leave to File a Second Amended and Supplemental Petition for Writ of Habeas Corpus (Renewed Motion, ECF No. 232). The Warden opposes the Motion (Opposition, ECF No. 233) and Mr. Bays has filed a Reply in Support (Reply, ECF No. 234).

**Procedural History**

On November 15, 1993, Petitioner Richard Bays robbed and murdered Charles Weaver. He was indicted by the Greene County grand jury on one count of aggravated murder under [former] Ohio Revised Code § 2903.01(A), one count of aggravated murder under [former] Ohio Revised Code § 2903.01(B), and one count aggravated robbery under Ohio Revised Code 2911.02(A)(2). Having waived his right to trial by jury, Bays was tried by a three-judge panel and convicted of aggravated murder with a capital specification and aggravated robbery and

1

sentenced to be executed. Since the murder happened before January 1, 1995, Mr. Bays appealed to the second District Court of Appeals which affirmed the conviction and sentence. *State v. Bays*, No. 95-CA-118, 1998 WL 32595 (2nd Dist. Jan. 30, 1998). On appeal of right to the Ohio Supreme Court, the conviction and sentence were affirmed. *State v. Bays*, 87 Ohio St. 3d 15 (1999) cert. den. 529 U.S. 1090 (2000).

Mr. Bays filed for post-conviction relief under Ohio Revised Code § 2953.21. Although initially unsuccessful, he obtained a reversal in the Second District which remanded for a hearing. On December 12, 2002, the trial court again denied relief. Mr. Bays appealed unsuccessfully to the Second District and Ohio Supreme Court. Bays filed a successive petition under Ohio Revised Code § 2953.21 making a claim under *Atkins v. Virginia*, 536 U.S. 304 (2002). That petition was voluntarily dismissed November 9, 2007, and the Petition in this case was filed November 6, 2008.

On February 21, 2012, the Magistrate Judge filed a Report and Recommendations recommending the Petition be dismissed with prejudice (Report, ECF No. 109). Over the Warden's objections, Mr. Bays was permitted to file an Amended Petition on May 11, 2012, which pleaded two new Grounds for Relief alleging respectively that Bays' execution by lethal injection would subject him to cruel and unusual punishment (Ground 12) and would deny him equal protection of the law (Ground 13)(ECF No. 122, PageID 1672).

On August 6, 2012, District Judge Rose adopted the Report (ECF No. 134). On January 29, 2013, he adopted the Magistrate Judge's recommendations on a certificate of appealability (ECF No. 148). Then on May 24, 2013, Mr. Bays moved again to amend to raise *Atkins* claims and to hold the case in abeyance while he returned to state court to litigate those claims (ECF No. 153). Judge Rose affirmed the Magistrate Judge's denial of the motion to amend and stay

(ECF No. 173).

On January 22, 2014, the Magistrate Judge *sua sponte* raised the question whether the Twelfth and Thirteenth Grounds for Relief were moot because they were directed at an Ohio Protocol that had been superseded (Order to Show Cause, ECF No. 174). After some delay occasioned by the execution of Dennis McGuire, Mr. Bays filed again for leave to amend (ECF No. 198). Eventually Bays was given leave to move to amend within thirty days of the mandate in the Stanley Adams habeas corpus litigation (ECF No. 225). The instant renewed Motion was filed in accordance with that schedule.

**Bays' Proposed Second Amended Petition**

Bays preserves his original claims for appeal by incorporating his Petition and Amended Petition by reference (ECF No. 232-1, PageID 8583) He proposes four new Grounds for Relief to replace Grounds Twelve and Thirteen, as follows:

> **FIRST GROUND FOR RELIEF:** The State of Ohio cannot constitutionally execute Petitioner because the only manner available under the law to execute him violates his Eighth Amendment rights.
>
> **SECOND GROUND FOR RELIEF:** The State of Ohio cannot constitutionally execute Petitioner because the only manner available for execution violates the Due Process Clause or the Privileges or Immunities Clause of the Fourteenth Amendment.
>
> **THIRD GROUND FOR RELIEF:** The State of Ohio cannot constitutionally execute Petitioner because the only manner of execution available for execution under Ohio law violates the Equal Protection Clause of the Fourteenth Amendment.
>
> **FOURTH GROUND FOR RELIEF:** The State of Ohio cannot constitutionally execute Petitioner because Ohio's violations of federal law constitute a fundamental defect in the execution

3

>   process, and the only manner of execution available for execution depends on state execution laws that are preempted by federal law.

*Id.*

Bays' Renewed Motion focuses principally on the cognizability of his lethal injection claims in habeas corpus in light of *Adams v. Bradshaw*, 826 F.3d 306 (6th Cir. 2016)(*Adams III*). He asserts that it is not the same as an attack on the current lethal injection protocol such as might be made in an action under 42 U.S.C. § 1983 because it "attacks the validity of Bays' death sentence judgment. . ." (ECF No. 232, PageID 8580). Nonetheless, it "will necessarily encompass the facts relevant to what the State intends to do under the current execution protocol. . ." *Id*. Bays notes that Ohio adopted a new protocol October 7, 2016, and asserts "[t]he current protocol gives rise to new claims arising from differences between it and the superseded protocol underlying Bays's prior claims, as well as making Bays's prior claims newly ripe in accordance with the new protocol." *Id*. Conversely, Bays says, his claims are not so broad as to be claims that lethal injection is per se unconstitutional. *Id.* at PageID 8581. Finally, he notes that his claims will include his own health characteristics, showing why lethal injection is unconstitutional as applied to him. *Id*. at PageID 8582

His habeas corpus lethal injection claims are different from possible § 1983 claims, Bays asserts, because success in a civil rights case would only relate to a particular method of lethal injunction and would not declare his death sentence unconstitutional and therefore invalid, relief which can only be obtained in habeas corpus. *Id.* at PageID 8583.

The Warden opposes amendment on the grounds the amendment is untimely under the AEDPA statute of limitations and futility because the proposed grounds for relief are not cognizable in habeas corpus (Opposition, ECF No. 233, PageID 8703).

Bays' Reply argues at some length how his habeas lethal injection claims fit into the window

4

recognized by *Adams III* -- not so broad as to be per se challenges, not so narrow as to challenge only a particular protocol (Reply, ECF No. 234, PageID 8705-11). He relies on *Adams III*, but also *In re: Lawrence Landrum*, Case No. 16-3151 (6th Cir. Feb. 13, 2017)(unreported Order; copy at Case No. 1:00-cv-767, ECF No. 274-1, PageID 3961, et seq.)

# Analysis

Richard Bays is a plaintiff in *In re: Ohio Execution Protocol Litig.*, Case No. 2:11-cv-1016. That case seeks to permanently enjoin Ohio from executing him and most other Ohio death row inmates under the current lethal injection protocol, which was adopted October 7, 2016. That protocol has already been the subject of extensive litigation, resulting in an order preliminarily enjoining its intended use in the executions of Ronald Phillips, Raymond Tibbetts, and Gary Otte. *In re: Ohio Execution Protocol Litig. (Phillips, Tibbetts, & Otte)*, 2017 U.S. Dist. LEXIS 11019 (S.D. Ohio Jan 26, 2017), aff'd., ___ F.3d ___, 2017 U.S. App. LEXIS 5946 (6th Cir. Apr. 6, 2017).

A civil rights action under 28 U.S.C. § 1983 offers the capital litigant many advantages over a habeas corpus action. Among other things, it is not subject to the second-or-successive limitation or the limits on discovery in habeas corpus. Because it is forward looking instead of focused on what happened in the state courts, it is not limited in the introduction of evidence imposed in habeas by § 2254(d) as interpreted in *Cullen v. Pinholster*, 563 U.S. 170 (2011). On the other hand, introduction of evidence discovered in a § 1983 lethal injection case appears to be admissible in a habeas corpus lethal injection case, per *Adams III*, where that conclusion is assumed without any discussion of *Pinholster*.

5

Even before the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") vastly increased the procedural restrictions on habeas corpus, the Supreme Court held a district court could not grant release from confinement in a § 1983 action; to do so would frustrate the habeas exhaustion requirements. *Preiser v. Rodriguez*, 411 U.S. 475 (1973) (Notably, Justice Brennan, the major architect of expansion of habeas in the 1960's, dissented.) It was in *Nelson v. Campbell*, 541 U.S. 637 (2004), that the Supreme Court first held that a means or method of execution claim could be brought in a § 1983 case, over the objection of state officials who insisted that such a claim had to be brought in habeas corpus and would, in Nelson's case, have been subject to the second-or-successive requirement imposed by the AEDPA. The Court unanimously concluded that, because Nelson's challenge to the method of execution (a vein cut-down procedure) did not challenge his actual death sentence, it could be brought in a § 1983 action.

*Cooey v. Taft*, Case No. 2:04-cv-1156, a § 1983 action which is the direct predecessor of Case No. 2:11-cv-1016, was filed December 8, 2004, and references an earlier filing in Case No. 2:04-cv-532 on June 10, 2004, less than a month after *Nelson* was decided. As consolidated in 2:11-cv-1016, *Cooey* remains pending. The same organizations of attorneys who provide representation to plaintiffs in 2:11-cv-1016 – the Capital Habeas Units of the Offices of the Federal Public Defender for the Southern and Northern Districts of Ohio and the Ohio Public Defender's Office – also represent most of the capital habeas corpus petitioners in this Court. Thus the litigation context provides maximal opportunities for coordination of strategy. To this Court's eye, those opportunities are never missed; if there are internal disagreements among the capital petitioners' bar, they are not apparent to this Court.

Petitioners' bar has had an apparent strategy for some years to have parallel habeas and §

1983 actions pending simultaneously on behalf of the same inmate and raising substantively parallel claims. Implementation of this strategy has been supported by the series of decisions of the Sixth Circuit in Stanley Adams' habeas corpus case from the Northern District of Ohio, *Adams v. Bradshaw*, 644 F.3d 481, 483 (6th Cir. 2011); *Adams v. Bradshaw*, 817 F.3d 284 (6th Cir. March 15, 2016); and *Adams v. Bradshaw*, 826 F.3d 306 (6th Cir. June 13, 2016), referred to herein as *Adams I*, *Adams II*, and *Adams III* respectively.

In *Adams I* the circuit court held, over Ohio's objection, that a challenge to the method of lethal injection could be brought in habeas corpus as well as in a § 1983 action. That is to say, availability of the § 1983 cause of action did not logically imply the absence of a § 2254 cause of action. Attempting to obey *Adams I*, this Court permitted amendments of habeas petitions to add lethal injection claims and indeed treated those claims as newly arising whenever Ohio's lethal injection protocol was amended. This reading informed the Magistrate Judge's allowance of the Second Amended Petition as upheld by Judge Barrett, *supra*, at pages 2-3.

Then the Supreme Court appeared to call this Court's practice into question with its decision in *Glossip v. Gross*, 135 S.Ct. 2726 (2015):

> Petitioners contend that the requirement to identify an alternative method of execution contravenes our pre-*Baze* [*v. Rees*, 533 U.S. 35 (2008)] decision in *Hill v. McDonough*, 547 U. S. 573, 126 S. Ct. 2096, 165 L. Ed. 2d 44 (2006), but they misread that decision. The portion of the opinion in *Hill* on which they rely concerned a question of civil procedure, not a substantive Eighth Amendment question. In *Hill*, the issue was whether a challenge to a method of execution must be brought by means of an application for a writ of habeas corpus or a civil action under §1983. *Id.,* at 576, 126 S. Ct. 2096, 165 L. Ed. 2d 44. We held that **a method-of-execution claim must be brought under §1983** because such a claim does not attack the validity of the prisoner's conviction or death sentence. *Id*., at 579-580, 126 S. Ct. 2096, 165 L. Ed. 2d 44.

135 S.Ct. at 2738 (emphasis added). Changing course, this Court concluded the "must be

7

brought" language precluded what it had been doing under *Adams I*. Then, in *Adams II* as clarified by *Adams III*, the Sixth Circuit decided *Glossip* did not implicitly overrule *Adams I*:

> Adams challenged the constitutionality of lethal injection on direct appeal, asserting that "[d]eath by lethal injection constitutes cruel and unusual punishment and denies due process under the state and federal constitutions." The Ohio Supreme Court rejected this claim, explaining it had "previously rejected similar arguments." *Adams*, 817 N.E.2d at 56 (citing *State v. Carter*, 89 Ohio St. 3d 593, 2000 Ohio 172, 734 N.E.2d 345, 358 (Ohio 2000)). Adams again challenged the constitutionality of execution by lethal injection in his federal habeas corpus petition. The district court denied this claim, noting that "lethal injection is the law of the republic. No federal court has found the lethal injection protocol to be unconstitutional." *Adams*, 484 F. Supp. 2d at 796 (citation omitted).
>
> As an initial matter, we note our recent holding that lethal injection does not violate the Constitution. See *Scott v. Houk*, 760 F.3d 497, 512 (6th Cir. 2014) ("Simply put, lethal injection does not violate the Constitution per se . . . ."). In *Scott*, a similar challenge to the implementation of lethal injection was raised, as a panel of this court observed that "Scott's petition alleges that lethal injection 'inflicts torturous, gratuitous and inhumane pain, suffering and anguish upon the person executed.'" *Id*. at 511. Accordingly, the Ohio Supreme Court's denial of Adams's challenge to the constitutionality of lethal injection as a means of execution did not constitute an unreasonable application of Supreme Court precedent.
>
> The Supreme Court's decision in *Glossip* does not alter our precedent. *Glossip* concerned a [42 U.S.C. § 1983](#) action challenging Oklahoma's execution protocol. . . .
>
> Lastly, notwithstanding the warden's observation that a method-of-execution challenge can only be brought in a [§ 1983](#) action under [*Hill v. McDonough*, 547 U.S. 573 (2006)](#), Adams can bring this claim in a [§ 2254](#) proceeding. As the warden submits, *Glossip* stated that *Hill* "held that a method-of-execution claim must be brought under [§ 1983](#) because such a claim does not attack the validity of the prisoner's conviction or death sentence." [*Glossip*, 135 S. Ct. at 2738](#). As we observed in [*Adams*, 644 F.3d at 483](#), however, Adams's case is distinguishable from [*Hill*](#) because Adams argues that lethal injection cannot be administered in a constitutional manner, and his claim "could render his death

> sentence effectively invalid." *Cf. Hill*, 547 U.S. at 580. Our decision in *Adams* is consistent with the Supreme Court's reasoning in *Nelson*, which suggested that, under a statutory regime similar to Ohio's, "a constitutional challenge seeking to permanently enjoin the use of lethal injection may amount to a challenge to the fact of the sentence itself." 541 U.S. at 644. Thus, to the extent that Adams challenges the constitutionality of lethal injection in general and not a particular lethal-injection protocol, his claim is cognizable in habeas. *Adams*, 644 F.3d at 483. However, as the Supreme Court observed in *Glossip*, a challenge to a particular procedure that concedes the possibility of an acceptable alternative procedure is properly brought in a § 1983 action. *Glossip*, 135 S. Ct. at 2738.

*Adams v. Bradshaw*, 826 F.3d 306, 318-21 (6th Cir. 2016), *cert den. sub nom. Adams v. Jenkins*, 137 S. Ct. 814, 196 L. Ed. 2d 602 (2017). By denying certiorari, the Supreme Court passed up a chance to clarify the meaning of *Glossip*. Denial of certiorari triggered issuance of the mandate which then set the deadline for the instant Renewed Motion.

As this Magistrate Judge understands it, the current state of the law in the Sixth Circuit after *Adams III* is that habeas corpus will lie to challenge "the constitutionality of lethal injection in general" to wit, that "lethal injection cannot be administered in a constitutional manner, and [that] claim 'could render his death sentence effectively invalid.'" *Adams III*, *quoting Hill v. McDonough*, 547 U.S. 573, 580 (2006). Although the *Adams* court did not say so explicitly, it is obvious the same claim can also be made in a § 1983 action seeking permanent injunctive relief. Indeed Stanley Adams has done so and is a plaintiff in *In re: Ohio Execution Protocol Litig.*, Case No. 2:11-cv-1016. Of course as a § 1983 plaintiff, a death row inmate must plead a constitutional alternative method of execution. *Glossip*, *supra*.

The general standard for considering a motion to amend under Fed. R. Civ. P. 15(a) was enunciated by the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an

> opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of any allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

371 U.S. at 182. *See also Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997)(citing *Foman* standard).

In considering whether to grant motions to amend under Rule 15, a court should consider whether the amendment would be futile, i.e., if it could withstand a motion to dismiss under Rule 12(b)(6). *Hoover v. Langston Equip. Assocs.*, 958 F.2d 742, 745 (6th Cir. 1992); *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986); *Marx v. Centran Corp.*, 747 F.2d 1536 (6th Cir. 1984); *Communications Systems, Inc., v. City of Danville*, 880 F.2d 887 (6th Cir. 1989); *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983); *Neighborhood Development Corp. v. Advisory Council*, 632 F.2d 21, 23 (6th Cir. 1980); *United States ex rel. Antoon v. Cleveland Clinic Found.*, 978 F. Supp. 2d 880, 887 (S.D. Ohio 2013)(Rose, J.); *William F. Shea, LLC v. Bonutti Reseach Inc.*, 2011 U.S. Dist. LEXIS 39794, *28 (S.D. Ohio March 31, 2011) (Frost, J.).

Likewise, a motion to amend may be denied if it is brought after undue delay or with dilatory motive. *Foman v. Davis*, 371 U.S. 178 (1962); *Prather v. Dayton Power & Light Co.*, 918 F.2d 1255, 1259 (6th Cir. 1990); *Bach v. Drerup*, 2012 U.S. Dist. LEXIS 35574, *1 (Ovington, M.J.); *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), *cert denied*, 517 U.S. 112 (1996)(amendment should be denied if it "is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile."). In *Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994), the court repeated and explicated the *Foman* factors, noting that

"[d]elay by itself is not a sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted. *Id.* at 130, *quoting Head v. Jellico Housing Authority*, 870 F.2d 1117, 1123 (6th Cir. 1989). These considerations apply as well in capital habeas corpus cases. *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998), *quoting Brooks*.

A motion to amend under Fed. R. Civ. P. 15 is non-dispositive and thus within a Magistrate Judge's decisional authority. *Monroe v. Houk*, No. 2:07-cv-258, 2016 U.S. Dist. LEXIS 38999 (S.D. Ohio, Mar. 23, 2016)(Sargus, C.J.)

As proposed to be pled, Bays' four new lethal injection invalidity claims quoted above fit within the cognizability window recognized in *Adams III*. That is to say, they are not claims that lethal injection executions are per se unconstitutional; such a claim would be precluded by precedent. As this Court understands the Sixth Circuit's classification in *Adams I, II*, *and III*, a per se claim would read something like "It is unconstitutional for any American State to execute anyone by lethal injection." Instead, these claims are general in the sense that they assert "It is and will always be unconstitutional for the State of Ohio to execute Mr. Bays by any lethal injection procedure and because Ohio authorizes executions only by lethal injection, his death sentence is invalid."

The Warden's objection that these claims are not cognizable in habeas corpus is not well taken.

**The Statute of Limitations**

AEDPA imposed a one-year statute of limitations on habeas corpus claims. 28 U.S.C. §

2244(d). The Warden raises a statute of limitations defense here in very brief fashion:

> Second, to the extent the proposed amended claims are construed as a properly pled general challenge to lethal injection, the one year statute of limitations under 28 U.S.C. §2244(d) has long ago expired, where the state court judgment Bays attacks has been final for more than two decades. *Turner v. Hudson,* No. 2:07-cv-595, 2016 WL 212961, *8-10 (S.D. Ohio Jan. 19, 2016); *In re: Lawrence Landrum,* Case No. 16-3151, at pg. 2-3 (6th Cir. Feb. 13, 2017).

(Opposition, ECF No. 233, PageID 8703.)

**The Limitations Defense has not been Forfeited**

Bays begins by asserting that the limitations defense, being non-jurisdictional, is subject to forfeiture and claims the Warden has not sufficiently asserted such a defense, thereby forfeiting it. (Reply, ECF No. 234, PageID 8712). While the limitations defense in habeas can be forfeited, no case authority supports the proposition that failure to raise a limitations defense in objection to a motion to amend constitutes such a forfeiture. To put it another way, just because a defendant can raise any available Fed. R. Civ. P. 12(b) defense in opposing a motion to amend does not logically imply that the defendant has forfeited the defense by failing to raise it at that stage.

The statute of limitations is an affirmative defense which is forfeited if not pleaded as required by Fed. R. Civ. P. 8(c). A district court may dismiss a habeas petition *sua sponte* on limitations grounds when conducting an initial review under Rule 4 of the Rules Governing § 2254 Cases. *Day v. McDonough*, 547 U.S. 198 (2006)(upholding *sua sponte* raising of defense even after an answer which did not raise it); *Scott v. Collins*, 286 F.3d 923 (6th Cir. 2002). In *Wood v. Milyard*, 566 U.S. 463 (2012), the Supreme Court held that courts of appeals have

12

authority to consider a forfeited timeliness defense *sua sponte.*

Petitioner's objection that Respondent has forfeited a limitations defense is OVERRULED.


**Newly Discovered Evidence vs. Newly Arising Claims**


Next Bays asserts the authority cited by Respondent is inapposite (Reply, ECF No. 234, PageID 8712).

In *In re: Lawrence Landrum*, Case No. 16-3151 (6th Cir. Feb. 13, 2017)(unreported Order; copy at Case No. 1:00-cv-767, ECF No. 274-1, PageID 3961), the Sixth Circuit held that Landrum's proposed lethal injection habeas claim required permission to proceed under 28 U.S.C. § 2244(b) which the circuit court refused to give. Landrum had argued "that he could not have raised his lethal-injection challenge until after the state adopted a revised protocol on September 18, 2011." *Id.* at page 3. The circuit court rejected that argument, holding "Landrum has not identified practices or procedures from the September 2011 protocol that amount to a factual predicate that could not have been discovered previously. See 28 U.S.C. § 2244(b)(2)(B)."

> Bays asserts this statement implies that if a capital habeas petitioner does show
>
>> practices or procedures from the relevant amended protocol – here the October 7, 2016 execution protocol – that could not have been discovered previously, then claims brought within one year of those predicates are not time-barred. That is precisely what Bays has done in his renewed motion and grounds for relief.

(Reply, ECF No. 234, PageID 8713.) At ¶¶ 63-67 (ECF No. 232-1, PageID -8605-6) of his proposed third amended petition, Bays recites facts related to the October 7, 2016, protocol. At

13

¶¶ 78-100 (PageID 8608-15) Bays makes allegations about the use of the drug midazolam as the first drug in the alternative in the current protocol which Ohio intended to use to execute Ronald Phillips, Raymond Tibbetts, and Gary Otte. Among those allegations are asserted problems with the use of midazolam to execute Dennis McGuire. (*Id.* at ¶ 86-87), Clayton Lockett (¶¶ 88-89), and Joseph Wood (¶¶ 90-91). Dennis McGuire was executed January 16, 2014; Clayton Lockett was executed April 29, 2014; and Joseph Wood was executed July 23, 2014. None of these dates are mentioned in either the Renewed Motion or the proposed third amended petition. The relevant facts about use of midazolam in these executions were not newly discovered within one year before March 8, 2017. They have been thoroughly vetted in the § 1983 Protocol Litigation case.[1] But that is not enough for Petitioner's counsel who want these facts to count as newly discovered factual predicates for his habeas lethal injection claims, thus extending the start date for the statute of limitations under 28 U.S.C. § 2244(d)(1)(D). But wait. All of these facts had been discovered not later than July 23, 2014.[2] How can they be newly arising factual predicates for habeas lethal injection claims made in March 2017?

Part of the difficulty with Bays' position is that it seems to stem from the drive of his counsel to completely conflate habeas corpus and § 1983 procedure. But *Adams III* and *Landrum* do not do that. While those cases do support counsels' strategy to have substantively parallel habeas and § 1983 claims pending at the same time and to use evidence obtained in the § 1983 case in support of the habeas claims,[3] the Sixth Circuit has not elided the procedural differences between these two types of cases.

If Bays' cognizable-in-habeas general lethal injection invalidity claims did not arise when

---

[1] Or at least thoroughly enough for a preliminary injunction hearing.
[2] All three of these executions were widely covered in the press and thus would have come to counsels' attention quickly. McGuire was represented by Bays counsel.
[3] *Adams III* expressly says this may be done without discussing any possible impact of *Pinholster*.

his attorneys discovered the facts about midazolam sometime between January 2014 and March 8, 2017, when did they arise? Bays filed his original Petition in this case in 2008 after lethal injection became the exclusive method of execution in Ohio. It was the exclusive method in 2004 when the Supreme Court decided in *Nelson v. Campbell* that method of execution claims could be brought in a § 1983 case. Although Bays never became a plaintiff in *Cooey v. Taft*, 2:04-cv-1156, counsel who represent him here were counsel to other death row inmates in that case. He is a plaintiff in *In re: Ohio Execution Protocol Litig.*, and has been since November 14, 2011. The original Complaint in that case included claims of Eighth and Fourteenth Amendment violations (First Claim), due process violations (Second Claim), and equal protection violations (Fourth Claim). If those constitutional violations had arisen for § 1983 purposes by the time that Complaint was filed, why hadn't they also arisen for habeas corpus purposes?

Of course, the Complaint in 2:11-cv-1016 has been amended many times since 2011. It is perfectly appropriate for forward-looking civil rights litigation to be amended as the conduct sought to be enjoined changes.

In light of *Adams III*, it would apparently be appropriate for Bays to rely on new evidence gathered in the § 1983 litigation to prove his habeas corpus claim that Ohio can never constitutionally execute him by lethal injection. But gathering new evidence in support of a habeas claim is different from concluding that a new habeas claim "arises" for limitations purposes every time new evidence is discovered, even assuming due diligence in finding the new evidence.

Bays asserts that Ohio's adoption of a new lethal injection protocol starts the statute of limitations running anew (Reply, ECF No. 234, at PageID 8714). He asserts he could not have

15

raised these specific lethal-injection invalidity claims until the new protocol was adopted on October 7, 2016. *Id.* Yet he never explains how this focus on a newly arising claim related to a specific protocol is somehow consistent with his claims' being general Ohio-can-never-constitutionally-execute-me-by-lethal-injection claims. The Court has readily accepted the proposition that a new protocol can generate a new § 1983 claim, but such claims are specific to the particular protocol. No matter how many times Bays' counsel repeat the mantra, new facts are not the same as new habeas claims.

**Equitable Tolling**

Bays makes no claim that his delay in filing is excused under equitable tolling doctrine. However, the Court finds that his position is precisely parallel to that of capital habeas petitioner Walter Raglin. It is settled that equitable tolling applies in appropriate habeas corpus cases. *Holland v. Florida*, 560 U.S. 631 (2010).

Whether it fits the precise contours of that doctrine or not, Bays situation deserves the same equitable consideration given to Petitioner Raglin. The state of the law regarding pleading lethal injection claims in habeas has been confusing both to the Court and the parties. Until *Adams I* it was reasonable for counsel to understand that method of execution claims had to be brought in § 1983 proceedings. Following *Adams I*, this Court accepted the extension of the logic of that case and of *Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007), that not only did new § 1983 claims arise whenever the protocol was amended, but so did habeas claims on the same substantive basis. On that basis, counsel could reasonably have concluded they had a year from adoption of a new protocol to amend a client's habeas petition to add claims "newly arising"

16

under that new protocol. Although this Court has now concluded on the basis of *Adams III* and *Landrum* that the cognizability, second-or-successive, and limitations questions must be kept separate, capital habeas petitioners should not be penalized for following the Court's lead during that period between *Adams I* and *Adams III*. And the Court must take full responsibility for the delay between the *Adams III* decision and issuance of the mandate in that case, although it was urged to that position by Petitioner's counsel. The State of Ohio will not suffer any prejudice from adopting this approach since it will have to litigate the lethal injection invalidity question in the § 1983 case in any event.

Conclusion

Bays' Renewed Motion is GRANTED. He may, not later than April 24, 2017, file a Supplemental Petition including the four Grounds for Relief set forth in his proposed amendments (ECF No. 232-1). Those Grounds for Relief shall be numbered Sixteen, Seventeen, Eighteen, and Nineteen to distinguish them from Grounds for Relief previously filed in this case and to avoid confusion with those earlier grounds.

April 10, 2017.

s/ *Michael R. Merz*<br>
United States Magistrate Judge

.